**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH SKIRCHAK AND BARRY L. ALDRICH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>                              Plaintiffs,<br><br>v.<br><br>DYNAMICS RESEARCH CORPORATION, INC.<br><br>                              Defendant | CIVIL ACTION NO.: 05 11362 MEL |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO FACILITATE §216(b) NOTICE**

## I.    INTRODUCTION

At issue is whether Plaintiffs Joseph Skirchak and Barry L. Aldrich, on behalf of themselves and all others similarly situated ("Plaintiffs"), are entitled to issuance of a Court-approved notice of the pending litigation to those employees who were denied overtime wages. Plaintiffs are entitled to such a notice if they have shown a reasonable basis for their allegation that a class of similarly situated persons may exist. Plaintiffs can meet this burden by making a modest factual showing that Plaintiffs and the Potential Class Members were victims of a common policy or plan that violated the law. All that need be shown is that some identifiable factual or legal nexus binds together the various claims of the class members in such a way that

hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.

The merits of Plaintiffs' underlying claim for overtime wages are not at issue in this Motion.

## II.   FACTUAL BACKGROUND

Defendant Dynamics Research Corporation, Inc. ("Defendant"or DRC) is a publicly held company providing computer-based systems development, engineering management, and logistics support services to Federal, State and local government. Each plaintiff worked for DRC as an Exempt employee within the past three years. Complaint ¶¶ 9-10; Skirchak Aff., ¶ 2; Aldrich Aff., ¶ 2.  DRC required Plaintiffs to work a minimum of forty (40) hours in a work week. Complaint ¶ 15; Skirchak Aff., ¶ 4; Aldrich Aff., ¶ 5.  Defendants paid Plaintiffs on a salary basis and did not pay them overtime wages. Complaint, ¶ 13; Skirchak Aff., ¶ 5; Aldrich Aff., ¶ 7. Defendant as a matter of policy required payroll to automatically charge an exempt employee's Paid Time Away (PTA) bank of hours for either full or partial day deductions if the employee did not charge at least 40 hours of actual work. Complaint, ¶ 16; Skirchak Aff.,¶4; Aldrich Aff., ¶ 5.

Plaintiffs claim entitlement to overtime wages because at all relevant times the Defendant had a policy allowing for partial day deductions from exempt employees wages in violation of the Salary Basis test as described in the Fair Labor Standards Act. Such deductions from Plaintiffs were inconsistent with exempt status, and therefore such persons were and are not exempt from the overtime provisions of the FSLA. Specifically, Plaintiffs maintain that by their conduct Defendant violated 29 U.S.C. §207(a) by failing to pay Plaintiffs time and one-

2

half their hourly rates for hours worked in excess of 40 hours during a work week. Skirchak

Aff., ¶¶ 4-8; Aldrich Aff., ¶¶ 7-13.  Because DRC willfully violated the Salary Basis test by

making partial day deductions from exempt employees pay they lose the ability to classify

employees as exempt and therefore Plaintiffs must be reclassified as non-exempt and paid

earned overtime wages.

## A.     **Argument**

### 1.     **The District Court is Authorized to Issue Notice to the Potential Opt-Ins**

The FLSA allows an employee to bring an action on his or her own behalf and on behalf

of all others "similarly situated." 29 U.S.C. §216(b).  However, putative participants in the

FLSA collective action must affirmatively "opt-in" to be covered by the suit.  Id.; Kane v. Gage

Merchandising Services, Inc., 138 F.Supp.2d 212, 214 (D. Mass. 2001); Hipp v. Liberty National

Life insurance Co., 252 F.3d 1208, 1217 (11th Cir. 2001).  The statute of limitations for each

putative potential class member is not tolled until he or she individually opts into the litigation.

29 U.S.C. §216(b); Partlow v. Jewish Orphans' Home of Southern California, Inc., 645 F.2d 757,

759 (9th Cir. 1981) (abrogated on other grounds by Hoffman-La Roche Inc. v. Richard Sperling

et al., 493 U.S. 165 (1989)).  To address the problem of FLSA rights made stale through lack of

knowledge, the Supreme Court has held that courts may facilitate the issuance of a notice

informing potential opt-in plaintiffs of the pending FLSA collective action. Kane v. Gage, 138

F.Supp.2d at 214 (citing Hoffman La Roche Inc., 493 U.S. at 170).  Court approval and

facilitation of notice serve the goals of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Hoffman-La Roche, 493 U.S. at 171.[1]

## 2. Issuance of Notice Is Appropriate, As Plaintiffs Meet the Similarly Situated Standard

### a. Plaintiffs need only make a modest factual showing that similarly situated employees may exist.

For an opt-in class to be created under Section 216(b) and for notice to issue, Plaintiffs must demonstrate that similarly situated potential class members exist. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996), cert. denied, 519 U.S. 982 (1996); Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242 (D.R.I. 1999). Neither the FLSA nor the applicable regulations define the term "similarly situated." However, the majority of courts, as well as recent decisions in this circuit, agree that certification should be administered using the two-step approach articulated by the Fifth Circuit in Mooney v. Aramco, 54 F.3d 1207 (5th Cir. 1995). See Kane v. Gage, 138 F.Supp.2d at 214. Under this two-step approach, the court first preliminarily certifies a collective action, orders notice to the potential opt-ins based on a modest evidentiary showing, and permits an opt-in period. During this "'notice stage,' the court usually relies 'only on the pleadings and any affidavits which have been submitted' … [and] some courts have held that, at the 'notice' stage, plaintiffs need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law."

---

[1] In Pirrone v. North Hotel Associates, 108 F.R.D. 78, 82 (E.D. Pa. 1985), for example, the court held that notice to all similarly situated employees was appropriate "in light of the broad remedial purpose of the FLSA, the explicit provision in the Act for representative actions, the practical realities of management of class actions, and the courts' interest in avoiding multiplicity of lawsuits." In so holding, the court recognized that "the FLSA was enacted to protect employees . . . The class action procedure, however, would have little or no significance if notice was not permitted in some form." Id. 108 F.R.D. at 82. See also Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999), cert. denied, 528 U.S. 1116 (2000) (noting that "[t]he FLSA is remedial and humanitarian in purpose. . . Such a statute must not be interpreted or applied in a narrow, grudging manner") (citations omitted).

Id. (citing Mooney, 54 F.3d at 1214). Second, after discovery, the court reviews the preliminary certification and determines whether the case should proceed as a collective action. Id. At both stages, the court assesses whether plaintiffs and the potential opt-ins are similarly situated. At the first stage, however, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Mooney, 54 F.3d at 1213-14.[2] Plaintiffs need not be identical to the putative class members, but need only be similar. Grayson, 79 F.3d at 1097.[3] It is well-settled that the preliminary notice motion is not a ruling on the merits of the Plaintiffs' claims, and that courts should not inquire into the merits of the case at the "notice" stage. Grayson, 79 F.3d at 1099 n.17; Hyman v. First Union Corp., 982 F.Supp. 1, 3-5 (D.D.C. 1997); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

> b. *Plaintiffs have easily met their burden of establishing that similarly situated employees may exist, and are therefore entitled to collective action notice*

A plaintiff may demonstrate that similarly situated class members may exist by making a "modest factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were the victims of a common policy or plan that violated the law." Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997). All a plaintiff needs to show "is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad

---

[2] The standard at the 'notice' stage "is considerably 'less stringent' than the proof required pursuant to Fed. R. Civ. P. 20(a) for joinder or Fed. R. Civ. P. 23 for class certification." Grayson, 79 F.3d at 1096.

[3] Indeed, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." Sperling v. Hoffman-LaRoche, 118 F.R.D. 392, 406 (D.N.J. 1998). Once the notice and opt-in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action. Thus, early notice will help the court to manage the case because it can "ascertain the contours of the action at the outset." Hoffman-La Roche, 493 U.S. at 172-73.

remedial policies underlying the FLSA." Ballaris v. Wacker Siltronic Corp., 2001 U.S. Dist.
LEXIS 13354, 144 Lab. Case (CCH) P34351 (D. Or. Aug. 24, 2001) (citing Wertheim v. State of
Arizona, 1993 WL 603552 (D.Ariz. 1993)). Here, the alleged violations were suffered across the
board by DRC exempt employees who worked for DRC throughout the nation, regardless of
when and where employed. These violations arise from a company-wide policy or practice of
Defendants and, as such, establish a basic factual scenario experienced not only by the current
named Plaintiffs, but also by each Potential Class Member.

Specifically, Plaintiffs' Complaint and the attached affidavits (Exhibits 1-2) establish the
following:

- Defendant knowingly and willfully violated the Salary Basis test by maintaining a
  corporate policy signed by the CEO requiring that all designated exempt
  employees work a minimum of 40 hours per week. See Complaint ¶ 15; Skirchak
  Aff., ¶ 4; Aldrich Aff., ¶ 5;

- Exempt employees Paid Time Away (PTA) bank of hours were automatically
  charged for either full or partial day deductions if the employee did not charge at
  least 40 hours of actual work or other approved time category on their weekly
  timecard. See Complaint, ¶ 16; Skirchak Aff., ¶ 4; Aldrich Aff., ¶ 5;

- Defendant knew that charging the exempt employee with either full or partial day
  deductions often resulted in an employee's PTA bank containing negative hours
  that needed to be erased through future accruals. See Complaint, ¶ 17.

- Plaintiffs regularly worked in excess of 40 hour but did not receive overtime pay.
  See Skirchak Aff., ¶ 5; Aldrich Aff., ¶ 7

6

- Plaintiffs are familiar with other current and former employees of DRC who were classified as exempt employees who felt as though they were treated as non-exempt but were not paid overtime for hours worked in excess of forty (40) hours in a work week. Plaintiffs believe that many of these individuals would be interested in participating in this litigation because Plaintiffs frequently heard such employees complain that they were working too many hours without being sufficiently compensated. See Skirchak Aff., ¶ 5; Aldrich Aff., ¶ 14.

Collective action authorization and notice to the class is well warranted here, as Plaintiffs have more than demonstrated a "reasonable basis" for the class allegations. See Grayson, 79 F.3d at 1097. In the case of Kane v. Gage, this Court held that affidavits suggesting "that the Defendants had a policy of treating at least some of a discrete class of employees ... as exempt from the FLSA overtime requirements" was a sufficient showing "to determine that a 'similarly situated' group of potential plaintiffs exist[ed] given the adopted lenient standard for court-facilitated notice" and granted conditional certification. 138 F.Supp.2d at 215. In this case, Plaintiffs have provided detailed allegations in their Complaint and have amply supported them with affidavits from the named plaintiffs. Such a showing more than satisfies the "lenient" standard for collective action notice. Id.; see also Mooney, 54 F.3d at 1213-14. The pleadings and affidavits show that DRC had a policy of making partial day deductions from exempt employees but not paying those same employees overtime for hours worked in excess of 40 hours. Plaintiffs believe that DRC knowingly and willfully violated the Salary basis test thus Plaintiffs are not exempt from the FLSA overtime requirements and Plaintiffs believe that other similarly situated individuals exist who may be interested in participating in this litigation, and

these allegations suffice to establish a reasonable basis for the assertion that a class of similarly situated persons may exist. Id. See also Grayson, 79 F.3d at 1097; Zhao v. Benihana, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) (one affidavit based on plaintiff's "best knowledge" sufficient); Allen v. Marshall Field & Co., 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient for issuance of notice to putative class).

### 3. Notice Should Be Expedited Due to the Running of the Statute of Limitations

Notice to the putative class should be expedited in this action in order to prevent the wasting of the employees' claims due to the running of the FLSA statute of limitations. The employees' claims are governed by a two-year statute of limitations, or in the case of "willful" violations, a three-year limitations period. 29 U.S.C. §256(a). The statute of limitations is generally not tolled for any individual class member until that individual has filed a written consent form with the Court. 29 C.F.R. §790.21(b)(2); Grayson, 79 F.3d at 1105-06.

DRC has denied its exempt employees overtime compensation for well over three years. Consequently, the statute of limitations is potentially diminishing the value of the employees' claims with each day that passes. The information contained in the proposed notice (Exhibit 3) should therefore be issued as soon as possible to allow these non-exempt employees to act to protect their interests. Without notice, the Potential Class Members are unaware of the pendency of the action and their right to opt-in, and are powerless to prevent their claims from wasting away. Moreover, as many of the Potential Class Members no longer work for DRC, their whereabouts will be increasingly difficult to track, and evidence may be lost with the passing of time. Therefore, notice should be expedited in this action to the maximum extent feasible, and

should be sent to all employees classified as exempt employed by DRC during the three-year

potential liability period. See Belcher v. Shoney's, Inc, 927 F.Supp. 249, 252 (M.D. Tenn. 1996)

(ordering notice to all employees who were employed within three-year limitations period);

Herrera v. Unified Mgmt, 2000 U.S. Dist. LEXIS, 12406 (N.D. Ill. 2000).

### 4.    The Proposed Notice is Fair and Adequate

A collective action depends "on employees receiving accurate and timely notice

concerning the pendency of the collective action, so that they can make informed decisions about

whether to participate." Hoffman-La Roche Inc., 493 U.S. at 170. Use of a Court-approved

notice prevents "misleading communications." Id. at 172. Plaintiffs' proposed notice to

potential opt-ins is "timely, accurate and informative," as required. Id.; see the proposed notice

and opt-in form attached hereto as Exhibit 3. It provides notice of the pendency of the action and

of the opportunity to opt-in. Plaintiffs' legal claims are accurately described. The proposed

notice advises potential opt-ins that the Court has made no finding as to the merits of the case

and that they are not required to participate. The notice also provides clear instructions on how

to opt-in and accurately states the prohibitions against retaliation or discrimination for

participation in an FLSA action. See 29 U.S.C. §215(a)(3).

### 5.    The Proposed Limited Discovery is Essential to Ensure Timely Notice

Discovery of a mailing list for class members is a routine component of notice in

collective actions. Hoffman-LaRoche, 493 U.S. at 1470 ("District Court was correct to permit

discovery of the names and addresses…"); Grayson, 79 F.3d at 1111 (ordering production of

mailing list); Belcher, 927 F.Supp. at 252 (same). Indeed, such a mailing list is essential to

timely notice. Hoffman-LaRoche, 493 U.S. at 170 ("timely notice" required). Therefore, this

Court should order DRC to produce a computer-readable data file containing the names, last

known mailing and e-mail addresses, telephone numbers, and dates of employment for all

exempt employees employed anywhere in the United States within the three years preceding the

filing of this action.

## C.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion.

Dated:  July 27, 2005, 2005

Respectfully submitted,

Elayne N. Alanis, BBO #660365
LAW OFFICE OF ELAYNE N. ALANIS
10 Tremont Street,  Third Floor
Boston, MA 01208
(617) 263-1203

Shannon Liss-Riordan, BBO #640716
PYLE, ROME, LICHTEN, EHRENBERG
& LISS-RIORDAN, P.C.
18 Tremont Street, Ste. 500
Boston, MA 02108
(617) 367-7200

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2005, I caused a copy of this document to be served by
first class mail on all counsel of record.

Elayne N. Alanis, Esq.

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH SKIRCHAK AND BARRY L. )
ALDRICH, ON BEHALF OF )
THEMSELVES AND ALL OTHERS )
SIMILARLY SITUATED, )
                                 ) CIVIL ACTION NO.: 05 11362 MEL

Plaintiffs, )
            )
v. )
            )
DYNAMICS RESEARCH CORPORATION)
A Massachusetts Corporation )
            )
Defendant )
            )

### AFFIDAVIT OF JOSEPH SKIRCHAK

1.  My name is Joseph P. Skirchak. I reside at 1026 Route 12A, Plainfield, New Hampshire. I am over the age of eighteen (18) and otherwise competent to testify. All statements in this declaration are made solely for use in this litigation. Unless expressly stated otherwise, the statements made in this declaration are based upon my personal knowledge.
2.  I worked at the Andover, Massachusetts headquarters facility for Dynamics Research Corporation as their Director of Compensation & Retirement Programs from April, 2001 to October, 2004.
3.  I make this affidavit in support of Plaintiffs' Motion to Facilitate 216(b) Notice.
4.  The Defendants maintained a corporate policy (signed by the CEO) that required exempt employees to work a minimum of 40 hours per week. If less than forty hours were worked in a work week, employees, or DRC payroll by policy, charged their "paid time away" (PTA) bank of hours, or charged hours to Exempt Unpaid (EU), to have time cards for exempt employees total 40 in a week. This policy and practice resulted in DRC making improper partial day deductions from exempt employees' pay.
5.  Because of this policy, exempt employees felt that they were effectively treated like non-exempt employees, but did not receive overtime for hours worked in excess of 40 in a work week. Many exempt employees at the Andover facility regularly worked hours in excess of 40 in a work week.
6.  DRC management was repeated counseled that their policy and practices violated the Fair Labor Standards Act (FLSA), but they completely ignored this advice and

continued their practices of making impermissible deductions from exempts employees' pay.

7. In my role as Director of Compensation, the company's Payroll Department would refer complaints to me from supervisors or exempt employees regarding DRC's time recording policy for exempt employees. In these situations, I had the extremely difficult task of trying to explain the "appropriateness" of DRC's policy and practices, while at the same time, I was repeatedly attempting to have these changed by management because they violated the requirements of the FLSA. A typical example of this type of circumstance was a concern brought to my attention from Byron Nash, a site supervisor in DRC's San Antonio, TX office.

8. As a DRC manager, I have had difficult conversations with my exempt direct reports trying to explain and defend the DRC time recording policy (again, even though I was trying to get the policy changed during this period because it violated the FLSA). In fact, personally I struggled with compliance with the DRC time recording policy because of its requirements and restrictions.

9. Many other exempt employees at DRC would be very interested in joining this class action suit if they were aware of its existence.

Signed under the pains and penalties of perjury, this 25th day of July, 2005.

Joseph P. Skirchak

Signed under the pains and penalties of perjury, this 25th day of July, 2005.

Joseph P. Skirchak

# EXHIBIT 2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH SKIRCHAK AND BARRY L. ) <br> ALDRICH, ON BEHALF OF ) <br> THEMSELVES AND ALL ) <br> OTHERS SIMILARLY SITUATED, ) <br> ) <br> Plaintiffs, ) <br> ) CIVIL ACTION NO.: 05 11362 MEL <br> v. ) <br> ) <br> DYNAMICS RESEARCH CORPORATION ) <br> A Massachusetts Corporation ) <br> ) <br> Defendant ) <br> _____ ) | |

## AFFIDAVIT OF BARRY L.ALDRICH

Pursuant to 28 U.S.C. § 1746, I, Barry L. Aldrich, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. My name is Barry L. Aldrich. I reside at 4081 Judith's Fancy, Christiansted, VI. I am over the age of eighteen (18) and otherwise competent to testify. All statements in this declaration are made solely for use in this litigation. Unless expressly stated otherwise, the statements made in this declaration are based upon my personal knowledge.

2. I worked as Vice President of Contracts in Defendant's Andover, Massachusetts headquarters from December 2000 until November 2004. During all or part of that time, I was also a member of the corporation's Corporate Compliance Steering Group as well as an ombudsman in the company's ethics program.

3. I make this affidavit in support of Plaintiffs' Motion to facilitate 216(b) notice. We require release by Dynamics Research Corporation (DRC) of employee classification and timekeeping documentation. Said information is to be used to identify all those employees similarly situated with the Plaintiffs who were impacted by the written policies and mandated practices that brought rise to this litigation.

4. The Defendants classified employees as exempt employees based upon their job duties and the degree of process and decision-making autonomy required to perform those job duties. Employees classified by DRC as exempt were paid on a salary basis.

5. DRC required, by written policy signed by the President, that any employee classified by the company as full-time, including exempt-classified employees, work a minimum of forty (40) hours in a workweek. If fewer than forty hours were worked in a work week, employees, or DRC payroll by policy, charged their "paid time away" (PTA) bank of hours, or charged hours to Exempt Unpaid (EU), to have time cards for exempt employees total 40 hours in a

week. This policy and practice resulted in DRC making improper partial day deductions from exempt employees' pay.

6. As part of the timecard review and approval process, managers were tasked with instructing employees to comply with the policy by filling timecards with PTA as may have been necessary to reach a forty hour workweek.

7. As a practice, employees classified as exempt were not paid overtime, or in any other way compensated, for any hours worked in excess of forty hours per week.

8. Human Resources management and other functional and line management expressed to the CEO, CFO and corporate general counsel concern with the company's deliberate, dual interpretation of wage and hour laws. I.e., an employee could be treated as exempt and not paid overtime when more than forty hours per week were recorded; the same employee performing the same job could be treated as non-exempt (or hourly) when fewer than forty hours per week were recorded.

9. I was present and witness to such expressions of concern in senior management and other meetings with the CEO. The CEO was adamant and decided that he would make and enforce timekeeping rules for his company as he deemed appropriate and beneficial to the corporation's bottom line objectives.

10. As an employee, I was on occasion required to record partial days of PTA in order to reach a forty hour minimum.

11. As an employee, I was never paid overtime, or in any other way compensated, for times when I worked in excess of forty hours in a workweek.

12. As a manager of several dozen subordinates, I was required, nearly weekly, to enforce the written policy by requiring my staff, classified as exempt, to charge partial day PTA when they had worked fewer than forty hours during the week overall.

13. As an employee and as a manager, I knew that there were many other managers and employees who were similarly impacted by the same written policy.

14. I am familiar with other current and former employees of the Company who are not listed as named plaintiffs in this case but who have stated that they would be interested in participating in this litigation. These current and former employees work or worked in positions where they were forced to comply with and/or enforce the corporate timekeeping policy.

15. Throughout my employment with the Company, other employees in offices both at headquarters and across the country have stated to me their dissatisfaction with the inequitable timekeeping policies and practices.

16. I believe that many of these current and former employees of the Company would be interested in participating in this litigation.

Signed under pains and penalties of perjury, this 26th day of July, 2005.

Barry L. Aldrich

hours in a week. This policy and practice resulted in DRC making improper partial day deductions from exempt employees' pay.

6. As part of the timecard review and approval process, managers were tasked with instructing employees to comply with the policy by filling timecards with PTA as may have been necessary to reach a forty hour workweek.

7. As a practice, employees classified as exempt were not paid overtime, or in any other way compensated, for any hours worked in excess of forty hours per week.

8. Human Resources management and other functional and line management expressed to the CEO, CFO and corporate general counsel concern with the company's deliberate, dual interpretation of wage and hour laws. I.e., an employee could be treated as exempt and not paid overtime when more than forty hours per week were recorded; the same employee performing the same job could be treated as non-exempt (or hourly) when fewer than forty hours per week were recorded.

9. I was present and witness to such expressions of concern in senior management and other meetings with the CEO. The CEO was adamant and decided that he would make and enforce timekeeping rules for his company as he deemed appropriate and beneficial to the corporation's bottom line objectives.

10. As an employee, I was on occasion required to record partial days of PTA in order to reach a forty hour minimum.

11. As an employee, I was never paid overtime, or in any other way compensated, for times when I worked in excess of forty hours in a workweek.

12. As a manager of several dozen subordinates, I was required, nearly weekly, to enforce the written policy by requiring my staff, classified as exempt, to charge partial day PTA when they had worked fewer than forty hours during the week overall.

13. As an employee and as a manager, I knew that there were many other managers and employees who were similarly impacted by the same written policy.

14. I am familiar with other current and former employees of the Company who are not listed as named plaintiffs in this case but who have stated that they would be interested in participating in this litigation. These current and former employees work or worked in positions where they were forced to comply with and/or enforce the corporate timekeeping policy.

15. Throughout my employment with the Company, other employees in offices both at headquarters and across the country have stated to me their dissatisfaction with the inequitable timekeeping policies and practices.

16. I believe that many of these current and former employees of the Company would be interested in participating in this litigation.

Signed under pains and penalties of perjury, this $\underline{16}^{th}$ day
of July, 2005.

Barry L. Aldrich

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

This is a court-authorized notice and is not a solicitation from a lawyer.
The Court has made no finding as to the merits of the case at this time.

If you are or were employed by Dynamics Research Corporation, Inc. as an Exempt employee in any state, a collective action lawsuit may affect your rights.

Former employees (the "Plaintiffs") have sued Dynamics Research Corporation, Inc. (DRC) in federal court in Massachusetts, alleging that DRC improperly classified them as overtime-exempt employees and deprived them of overtime pay. The Plaintiffs claim that DRC owes them overtime pay at one and one-half times their normal hourly wage for all hours they worked in excess of forty (40) hours per week during their employment with DRC. The case name is Civil Action No. 05 11362 MEL.

The Court has permitted the Plaintiffs to send Notice to all similarly situated current and former employees so that they may be permitted to "opt in" to, or join, this lawsuit to assert their similar legal rights.

The Court has not yet decided whether DRC has done anything wrong. There is no money available now, and there are no guarantees that there will be. However, you have the choice to assert your legal rights in this case. If you do, federal law prohibits DRC from firing or discriminating against you for exercising your rights under the FLSA.

## YOUR LEGAL RIGHTS AND OPTIONS

<u>Do Nothing</u>: Do Nothing. Lose Nothing (except resulting from the passage of time). By doing nothing, you retain your legal rights to bring a separate suit against DRC for unlawful failure to pay overtime. If money or benefits are later awarded in this case, you will not share in them.

---

<u>Ask to Be Included</u>: Complete the Opt-In Consent Form. By "opting in," you gain the possibility of getting money or benefits that may result from a trial or settlement, but you give up the right to sue Robert Half separately for the same claims brought in this lawsuit.

---

Your options are included in this Notice. To opt-in, you must complete the Opt-In Consent Form and forward it to the attorneys designated in the Notice on or before _____. If you have any questions or concerns, please contact:

Elayne N. Alanis, Esq.
Law Office Of Elayne N. Alanis
10 Tremont Street  Third Floor
Boston MA 02108
(617) 263-1203
 ealanislaw@verizon.net

Shannon Liss-Riordan, Esq.
Prle, Rome,Lichten, Ehrenbe Liss-Riordan
18 Tremont Street, Suite 500
 Boston, MA 02108
sliss@prle.com

## OPT-IN CONSENT FORM
Joseph Skirchak, et al., v. Dynamics Research Corporation, Inc.,
Civil Action No. 05 11362 MEL

Complete and Mail to:    Elayne N. Alanis, Esq.
                         Law Office Of Elayne N. Alanis
                         10 Tremont Street, Third Floor
                         Boston, MA 02108

Name: _____S.S.# (optional): _____

Address: _____

Telephone: _____ (home) _____ (work) _____ (cell)

E-Mail: _____

## CONSENT TO JOIN COLLECTIVE ACTION
Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

1.    I consent and agree to pursue my claims arising out my employment at Dynamics Research Corporation, Inc. in connection with the above-referenced lawsuit.

2.    I work/worked in the position(s) of _____ from on or about _____ (month, year) to on or about _____ (month, year).

3.    During the above time period, Dynamics Research Corporation, Inc. paid me strictly on a salary basis and did not pay me overtime pay at one and one-half my usual hourly wage for my hours worked in excess of forty (40) hours per week.

4.    I understand that this lawsuit is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by any judgment by the Court or any settlement of this action.

5.    I hereby designate Elayne N. Alanis, Esq., 10 Tremont Street, Third Floor, Boston, MA 02108 and Shannon Liss-Riordan, Esq., of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108, to represent me for all purposes in this action.

6.    I also designate Joseph Skirchak and Barry L. Aldrich, the collective action representatives, as my agents to make decisions on my behalf concerning the litigation, including the method and manner of conducting this litigation, entering into settlement agreements, entering into an agreement with Plaintiffs' Counsel concerning attorneys' fees and costs (with the understanding that Plaintiffs' Counsel are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fees), and all other matters pertaining to this lawsuit.

Signature: _____ Date Signed: _____
Print Name: _____

**\*\*NOTE\*\***
Statute of limitations concerns mandate that you return this form
as soon as possible in order to preserve your rights.