## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOSEPH SKIRCHAK AND BARRY ALDRICH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,** | ) <br> ) <br> ) **Civil Action No.: 05-11362 MEL** |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **DYNAMICS RESEARCH CORPORATION** <br> A Massachusetts corporation, | ) <br> ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |
| | ) |

### AFFIDAVIT OF JOSEPH LEBLANC

Joseph LeBlanc on oath, deposes and says:

1. I have been an employee of Dynamics Research Corporation, Inc. ("DRC") for approximately 18 years. My current position at DRC is Director of Human Resources. As Director of Human Resources my primary responsibilities are drafting, implementing, and administering employee-related policies, employee retention, performance management, integration of employees acquired through mergers and acquisitions, new employee orientation, handling employee problems, termination matters, exit interviews, and other employee relations matters. This affidavit is submitted by me in support of Defendant's Motion to Dismiss Complaint and/or for Summary Judgment, and to Compel Plaintiffs' Compliance with the Dispute Resolution Program. The facts set forth in this affidavit are true to my knowledge based on conversations I had, events in which I participated, or the business records of DRC.

### **DRC's Dispute Resolution Program**

2. DRC utilizes a mandatory Dispute Resolution Program (the "Program"), which went into effect on December 1, 2003, to resolve all workplace employment issues. I was involved in the creation and implementation of the Program. The Program is a three-step process culminating in final and binding arbitration for any claims based on any legal right, including statutory claims. The Program, which all DRC employees are subject to, does not change any employees' substantive rights, but rather changes the forum in which such disputes must be adjudicated, from a court of law to the Program.

3. DRC gave ample notice of the Program's implementation to its employees using the same procedures (email and internal newsletters) it has used in the past to communicate with employees about new employment policies or changes in the terms and conditions of employment. As an employee of DRC in November, 2003 and thereafter, I became aware of the Program and its terms through the myriad of devices used by DRC to communicate this information to me and other employees.

4. On November 14, 2003, DRC sent an email to all of its General Managers, including both plaintiffs, attached to which was a copy of the new Program, a written explanation of the Program, and a memorandum further explaining the Program. The memorandum, from John Wilkinson (DRC's Vice President of Human Resources) and Richard Covel (DRC's Vice President and General Counsel), informed the managers that a **"mandatory" "multi-step"** Program would be going into effect on December 1, 2003, and that the program was "non-discretionary and applicable to all workplace disputes between DRC, applicants for employment at DRC, and DRC's employees, including DRC's officers and managers." The memorandum also urged the managers to become familiar with the Program and with their roles as managers in

resolving disputes within the Program. The authors asked the managers to contact them with any questions. A true an accurate copy of the memorandum is attached hereto as Exhibit 1.

5. DRC then sent an email to all employees, including both plaintiffs, on November 25, 2003, attached to which was a copy of the Program, the same written explanation of the Program, and also a memorandum from Mr. Wilkinson, which was very similar in content to the memorandum discussed above in paragraph 4, and which, in plain language, further explained the Program. A true and accurate copy of this memorandum is attached hereto as Exhibit 2. In addition, the memorandum informed employees that the Program would "be applicable to all workplace disputes between DRC…and all of [its] employees, including all officers and managers," and that the Program "require[s] that you seek resolution of such rights and complaints by following the procedures of the program." The memorandum also urged employees to contact their HR representative with any questions about the Program or email questions to an account created specifically for questions about the new program: askdrp@drc.com. Some employees took advantage of the email address to ask questions about the Program and to have these questions answered. DRC delivered hard copies of the Program, as well as the memorandum and written explanation detailing the Program, to all employees who did not have access to email.

6. The written explanation that was disseminated with each copy of the Program also fully explained the scope of the program and its binding nature. A true and accurate copy of the written explanation and the Program itself is attached hereto as Exhibit 3. In the section entitled "How It Works," the explanation stated **"You must use these procedures in order"** (emphasis included), before going on to explain the dispute resolution procedures of the Program. The written explanation, under the heading "Who Is Covered" also informed employees that **"All**

3

**employees of Dynamics Research Corporation...are automatically covered to the fullest extent provided under applicable law by continuing employment with DRC after the effective date of the Program."** Finally, in the section entitled "Frequently Asked Questions And Answers" the written explanation responded to the question, "Does having this Program mean I can't sue DRC?" by stating, "If you file a lawsuit, DRC's attorney will go before the judge, tell the judge of the DRC Dispute Resolution Program, and ask that the case be dismissed and sent back to the DRP Program."

7. In addition to the memoranda and written explanations that were disseminated with the Program, DRC also informed its employees of the new program through its internal newsletter entitled *Concerning You*, a hard copy of which is hand-delivered to all employees when it is published each month. The main article in the January, 2004 edition of *Concerning You* was entitled "Dispute Resolution Program (DRP)." A true and accurate copy of the first page of the January, 2004 edition of *Concerning You* is attached hereto as Exhibit 4. The article stated that the new program went into effect on December 1, 2003 and is applicable to "all workplace disputes between DRC...and all of its employees, including officers, managers, supervisors, applicants, and employees." The article went on to explain the procedures of the Program and stated that the Program "require[s] that you seek resolution of such rights and complaints by following the procedures of the program." The article also reiterated that questions should be directed to an HR Representative or askdrp@drc.com, and that the complete Program and a description of it could be found on DRC's Intranet.

8. DRC has often used *Concerning You* to inform employees about important new employment policies at DRC or other changes to the terms and conditions of their employment. In fact, below the article about the Program in the January, 2004 edition of *Concerning You*, was

4

an article entitled "New Compensation Program," informing employees that effective February 1, 2004, every employee would receive a new job title and a new salary grade. The author of that article was the plaintiff Joseph Skirchak.

9. DRC also included discussions about the Program in its February, 2004 edition of *Concerning You*, in which the main article of the edition answered a question received at the askdrp@drc.com email address, asking "What will happen to personnel that will not accept Arbitration?" A true and accurate copy of the first page of the February, 2004 edition of *Concerning You* is attached hereto as Exhibit 5. DRC's answer to the question included informing employees that, as stated in the Program,

**"a suit brought in court that should have been addressed under the [Program] will be subject to a motion to remove the dispute from the court and have it placed under the [Program] for resolution."**

10. DRC also used the November, 2004 edition of *Concerning You* to remind its employees once again that the Program was in effect. True and accurate copies of pages from the November, 2004 edition of *Concerning You* is attached hereto as Exhibit 6. In an article entitled "DRC's Dispute Resolution Program A Reminder," DRC wrote that the program is applicable to all employees and a copy of the program is available on DRC's Intranet. The article also stated that the Program requires employees to seek resolution of their rights and complaints by following the Program's procedures.

11. In addition to the written memoranda and written explanations of the Program which were disseminated to all employees, every employee received a copy the Program itself, which also describes its comprehensive nature and that it was the sole remedy available to employees for work-related disputes. (*See* Exhibit 3). It reads, in pertinent part, "The [Program] creates an exclusive procedural mechanism for the final resolution of all disputes falling within its terms."

5

The term "dispute," is defined to mean "any dispute or controversy including all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or at law or in equity, between persons and entities." The Program also states that it "applies to any dispute between an employee and the Company," and that the Program is the "exclusive, final, and binding method by which disputes are resolved."

## The Plaintiffs' Positions at DRC Afforded Them Ample Notice of the Program

12. DRC hired Joseph Skirchak in April, 2001 for the position of Director of Compensation. He resigned effective October 1, 2004. As Director of Compensation, Mr. Skirchak worked directly with Mr. Wilkinson, who authored the memos accompanying the dissemination of the Program to every employee, and who was directly involved in the development and implementation of the Program.

13. In his role as Director of Compensation, Mr. Skirchak was responsible for the development and implementation of the new compensation program discussed in the January, 2004 edition of *Concerning You*, as referenced in paragraph 8 above. Mr. Skirchak, as did the developers of the Program, communicated this change in the terms and conditions of employment to employees through the use of *Concerning You*.

14. DRC hired Barry Aldrich in February, 1987 for the position of Senior Contracts Administrator. When Mr. Aldrich resigned from DRC in November, 2004, he was working as DRC's Vice President and General Manager of Contracts. As Vice President and General Manager of Contracts, Mr. Aldrich received, reviewed, commented on, and proposed edits to a draft copy of the Program.

## Plaintiffs' Claims

15. Having read the complaint in this action, I understand that the plaintiffs base their claims, in part, on DRC's policy regarding employees' use of leave time, or "Paid Time Away," when taking leave. I also understand that the plaintiffs' claims are based in part on DRC's alleged use of an "Exempt Unpaid" pay code.

Signed under the pains penalties of perjury this    th day of August, 2005.

_____
Joseph LeBlanc

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each party
by mail/hand on _____

To:        General Managers
From:      John Wilkinson and Richard Covel
Subject:   Dispute Resolution Program
Date:      November 13, 2003

This is to inform you that effective December 1, 2003, DRC's existing Problem Resolution Policy will expand into a mandatory multi-step Dispute Resolution Program (DRP), which is attached for your review. The intent of this program is to provide proven, recommended, and rational processes for the timely and effective resolution of workplace disputes and complaints.

The intent of the enhanced program is to create improved, reasoned, predictable, and reliable processes to air and address almost every kind of workplace issue. The program offers many advantages; it is a defined process, encourages early communications and teamwork, accelerates resolutions, positive in its goals, confidential, realistic, cost effective, and offers an independent assessment of issues.

The DRP consists of three fully explained resolution processes. The first process, the Management Review Procedure, is a slightly enhanced version of DRC's existing Problem Resolution Policy (#2-115). It is expected, as is the process now, that most disputes can and probably will continue to be resolved through this process.

The revised DRP includes two additional and sequential external and more formal processes for resolving disputes that involve the protection of an employee's legal rights. These processes are the Mediation and Arbitration Processes. These processes are only available to employees if their dispute involves a legally protected right. This means that only claims involving issues governed by state or federal laws, such as protection against age, race or sex, discrimination or protection against sexual harassment could advance to the Mediation and/or Arbitration process.

These Dispute Resolution Program processes provide the same resolution as can be obtained through the court system but with less cost and complications for all parties. Once you become familiar with the program, we are confident that you will also agree that this program is a better solution to address problems and resolve disputes.

This program is non-discretionary and applicable to all workplace disputes between DRC, applicants for employment at DRC, and DRC's employees, including DRC's officers and managers. You will need to review and become familiar with the two new processes and how the entire program works and to understand your role, so that disputes and complaints can be resolved in a constructive and equitable manner. Your Human Resources personnel and DRC's Legal department are fully familiar with the program and, as you will see from the program, fully engaged from the initiation of a dispute. In addition, and as is currently the case, Human Resources and Legal will be available to advise and consult on any employee disputes. It is important for you to take the time to read the program, as its effective date is December 1, 2003, and as the program will be distributed to our employees on or before that date. Your reports may have questions, which if you or the materials can not answer, should be directed to John

Wilkinson, Joe LeBlanc, Gary Mackintosh, Pat Flanagan, Bridget Heekin, Kathi Hotz, or John Ricker in HR and/or Rich Covel or Nicandra Nassar, in Legal.

Your cooperation and support is appreciated.

If you have any questions about the DRP or need further information, contact either one of us.

® **DYNAMICS**
**DRC RESEARCH**
**CORPORATION**

**HUMAN RESOURCES DEPARTMENT**

# INTEROFFICE MEMORANDUM

**TO:**     All DRC, HJ Ford and Andrulis Employees

**FROM:**     John Wilkinson, Vice President, Human Resources

**DATE:**     November 25, 2003

**SUBJECT:**     Employee Dispute Resolution Program

On December 1, 2003, a new Policy entitled the "Dispute Resolution Program" will take effect. This program, which expands upon the current Problem Resolution Policy (#2-115), includes, through externally administered mediation and arbitration, two additional and more formal processes for resolving disputes between an employee and the company.

The intent of the enhanced program is to create improved, reasoned, predictable, and reliable processes to air and address almost every kind of workplace employment issue. The program offers many advantages: it is a defined process, encourages early communications and teamwork, accelerates resolutions, is positive in its goals, confidential, realistic, cost effective; and offers an independent assessment of issues.

The DRP consists of three fully explained resolution processes. The first process, the Management Review Procedure, is an enhanced version of DRC's existing Problem Resolution Policy (#2-115). It is expected, as is the process now, that most disputes can and probably will continue to be resolved through this initial process.

The revised DRP includes two additional and sequential external and more formal processes for resolving disputes that involve the protection of an employee's legal rights. These processes are Mediation and Arbitration. Mediation and Arbitration are only available to employees if their dispute involves a legally protected right. This means that only claims involving issues governed by state or federal laws, such as protection against age, race, or sex discrimination, or protection against sexual harassment can advance to the Mediation and then to Arbitration.

These Dispute Resolution Program processes provide the same resolution as can be obtained through the court system but with less cost and complications for all parties. Once you become familiar with the program, I am confident that you will also agree that this program is a better solution to address problems and resolve disputes.

I encourage you to carefully review the attached Dispute Resolution Program and understand how it will work. On its effective date this program will be applicable to all workplace disputes between DRC, HJ Ford, and Andrulis and all of their employees, including all officers and managers. The program does not limit or change any substantive legal rights of our employees, but it does require that you seek resolution of such rights and complaints by following the procedures of the program.

I believe that this program is another positive step in our continued commitment to DRC's goals, including respect for all DRC employees and continuous process improvement.

If you have questions about the DRP or need further information, please contact your HR Representative, or email us at: Askdrp@drc.com.

# Dispute
# Resolution
# Program

## TABLE OF CONTENTS

**A.**    **WHAT IS THIS PROGRAM ABOUT** .......................................................... **4**

**B.**    **WHY HAVE A DRP** ............................................................................ **4**

    A Better Way to Handle Disputes ................................................................. 4
    No Retaliation ............................................................................................... 5
    Protection of Your Legal Rights ................................................................... 5

**C.**    **HOW IT WORKS** ............................................................................... **5**

**D.**    **WHO IS COVERED** ........................................................................... **6**

**E.**    **MANAGEMENT REVIEW PROCEDURE** .................................................. **6**

    What Is the Management Review Procedure? .............................................. 7
    The Management Review Procedure Is Easy to Use .................................... 7
    How the Management Review Procedure Works .......................................... 7
    Key Advantages of the Management Review Procedure .............................. 8

**F.**    **THE MEDIATION PROCEDURE** .............................................................. **8**

    What is Mediation? ...................................................................................... 8
    Requesting Mediation .................................................................................. 9
    How Successful is Mediation? ..................................................................... 9
    Typical Mediation Steps .............................................................................. 9
    Key Advantages of Mediation .................................................................... 10

**G.**    **THE ARBITRATION PROCEDURE** ......................................................... **10**

    What is Arbitration? ................................................................................... 10
    Requesting Arbitration ............................................................................... 10
    Typical Arbitration Steps ............................................................................ 11
    Key Advantages of Arbitration ................................................................... 11

**H.**    **WHO ARE THE MEDIATORS AND ARBITRATORS?** ............................... **12**

**I.**    **FREQUENTLY ASKED QUESTIONS AND ANSWERS** .............................. **13**

**APPENDIX A – DISPUTE  RESOLUTION PROGRAM RULES............................. 16**

**APPENDIX B – DISPUTE  RESOLUTION PROGRAM ARBITRATION RULES... 22**

**APPENDIX C – FORMS 1, 2 AND 3....................................................................... 31**

## A.    WHAT IS THIS PROGRAM ABOUT?

If you had a work-related problem you could not resolve on your own, or if you were responsible for handling or responding to employee concerns, DRC has always encouraged you to use its Problem Resolution Policy and Procedures. Through this new Dispute Resolution Program (DRP) DRC is expanding its problem resolution procedures. The purpose is to create an improved process and flexible procedures for airing and settling almost every kind of workplace conflict. The Program offers many advantages. It allows you and DRC to resolve differences from minor everyday problems to large scale-legal issues, in ways that are:

- Constructive – minimizing impact on work relationships and reputations;
- Swift – taking days, weeks or months instead of years;
- Confidential – respecting your privacy and the privacy of others;
- Simple – resolving problems at the lowest possible level of involvement;
- Realistic – recognizing that different people and different problems require different solutions;
- Inexpensive – avoiding or holding down all parties' legal expenses; and
- Equitable – providing many procedures for resolving problems objectively, using an independent neutral third party – a professional independent mediator or arbitrator – if one is needed.

Dealing with conflicts quickly and appropriately, increases understanding among everyone involved, reduces workplace tension, opens up communication and enhances teamwork. DRC's goal is to resolve disagreements when they first occur, or as soon as possible after that. We believe the benefits of this Dispute Resolution Program are beneficial to all employees and DRC. The definitions, procedures and rules of the DRP are set forth in Appendix A.

## B.    WHY HAVE A DRP?

### A Better Way to Handle Disputes

DRC understands that trust in the system, protection against retaliation, protection of legal rights, and personal control over ways to resolve disputes are important concerns when addressing workplace disputes. DRC designed the DRP to address these concerns. DRC also established program features to make the resolution processes cost-effective and timely for employees and the Company.

11/11/03                                                                 4

## "No Retaliation"

It is good business to have an environment where people can resolve problems, and it is in this way that the DRP can be truly effective. If you use the DRP, retaliation is not allowed. You have every right to be heard and to expect that your issues will be properly and professionally addressed. To help ensure this, some procedures within the DRP are strictly confidential. Management fully supports the policy of "No Retaliation."

## Protection of Your Legal Rights

The DRP program provides protection of your legal rights – such as prohibitions against discrimination and sexual harassment – and protection of all other rights covered by federal or state law. DRC takes complaints about violations of your rights very seriously, so DRC has designed the DRP to allow such complaints to be resolved more quickly and at less expense than if you were to address them through the judicial system.

## C.    HOW IT WORKS

The DRP has three resolution procedures that range from an internal DRC procedure to resolve issues, if the matter in question involves a legal issue to two external methods that are more formal procedures. **You must use these procedures in order.** The Company may skip Steps 1 and 2 for applicants for employment. The brief descriptions of the procedures are:

Step 1.        The Management Review Procedure consists of our existing Problem Resolution Policy 2-115. We encourage people to use this procedure, because it is fast and may easily resolve your interpersonal issues. This procedure provides immediate access to the DRC chain of command – beginning with your supervisor and going to senior management. You may contact your Human Resources representative for advice or to request an initiation of this procedure.

Step 2.        The second procedure, the Mediation Procedure, gives you the opportunity to address your issues with assistance from a trained, independent professional "mediator" from outside the Company. The mediator, such as one from the American Arbitration Association, listens to the issues and makes suggestions for resolution, but does not dictate or decide how you will resolve the issues; that is up to you and the Company to negotiate. For some people, just presenting their case to someone outside the Company is what is needed to have them and the Company fully air out and understand the issues at hand and reach a resolution.

Step 3.        The third procedure, the Arbitration Procedure, is a procedure in which you and the Company present your issues to a neutral third party, an "arbitrator" such as one from the American Arbitration Association, for a final and binding decision on both you and the Company. In such case, the Company pays for the costs of arbitration

and certain legal costs of yours as explained in the DRP plan. The arbitrator makes a decision after both sides have presented their facts and arguments. The arbitrator can award any remedy you might receive in a court of law. Very few cases will require proceeding to this arbitration procedure to resolve your issues.

## D.    WHO IS COVERED

This Dispute Resolution Program covers all applicants for employment, employees and former employees employed by Dynamics Research Corporation or its subsidiaries and adopting affiliates anytime the DRP or any version of it was in effect. Employees that may be permanently working outside the United States and are not governed by United States or state laws are not subject to the DRP. Any employee not subject to the DRP must follow the applicable steps of the Program prior to filing a lawsuit in state or federal court.

All employees of Dynamics Research Corporation and its companies, subsidiaries and adopting affiliates are automatically covered (no signature is required) to the fullest extent provided under applicable law if you:

- Accept employment; or
- Continue your current employment after the effective date of the DRP

## E.    MANAGEMENT REVIEW PROCEDURE

The Company is concerned that when difficult situations develop at work, you, as an employee, may feel there is no person to whom you may go to, or procedure to follow to obtain full attention and resolution. How can you go to your supervisor if your supervisor is the problem? Where can you take your dispute so that you will not perceive it to be a threat to your job? You talk to your friends and family, who may offer sympathy and all kinds of advice, but no real path to results. Tensions can build at work, and the problem does not go away.

Even if you are a manager or supervisor, you may also want help responding to a workplace issue that is affecting you – a place to go for assistance in resolving any conflicts or issues.

Working out problems early when they are small is desired, more effective and prevents communications from breaking down. When people stop talking to each other, they may focus on their anger and what they imagine to be true, instead of on the facts and resolution. You and the Company stand the best chance of resolving problems by addressing them together and early through the Management Review Option… before they become big.

## What Is the Management Review Procedure?

This is essentially the same as the Problem Resolution policy that the Company has previously had in place, but with some new enhancements. The Management Review Procedure is an informal discussion type process with the rules being courtesy and professional conduct by all parties. The Management Review Procedure guarantees that *all* supervisors and management doors are open to you within the Company. It offers you a variety of ways in which you can have your issues heard and addressed or raised to the mediation or arbitration process. The Management Review Procedure is a voluntary process that allows you to talk to your immediate supervisor or to a higher level of management – without fear of retaliation. Although you are encouraged to solve your problem at the closest level to you, you may proceed to take it as far up the chain of command as is necessary.

## The Management Review Procedure Is Easy to Use

In DRP plans, this procedure is the one that is used most often. It is encouraged because it is fast, easy to use, it promotes faster resolution than the next and more formal procedures, and it reduces publicity and the risk of damaging relationships with other employees. Most companies and employees prefer to resolve issues using this procedure.

## How the Management Review Procedure Works

You are free to raise a concern or issue with any level of management. That is the Management Review procedure. The Human Resources' Department, supervisors and managers understand that:

- It is part of their job to help you solve workplace problems first through the Management Review Procedure; and

- DRC forbids retaliation against you for trying to solve a workplace issue by initiating a procedure under the Dispute Resolution Program.

Where to take your concerns:

*Immediate Supervisor* – DRC encourages attempting to discuss and resolve any problems at work with your immediate supervisor whenever possible. Because this person is trained in the DRP and is close to your situation, he or she may already be aware of the problem, or may be in a position to offer a new perspective or some new facts that may be helpful to the issue.

*Higher Level of Supervision* – Unfortunately, sometimes you view your supervisor as part of the issue. If you are unsatisfied with your immediate supervisor's response or if you feel you need to talk to someone other than your supervisor, you may discuss your issue with the next higher level of supervision, right up to your group Vice President.

*Human Resources* – At any time, you may also choose to contact your Human Resources representative for advice or assistance, or to conduct an investigation. They have many years of experience in helping employees deal with a variety of workplace problems.

**Only claims involving a legal right, obligation or matter may be pursued beyond Management Review to Mediation or Arbitration.** This means only claims that involve issues governed by state or federal laws, such as protection against age, race or sex discrimination or protection against sexual harassment.

### Key Advantages of the Management Review Procedure

- The Human Resources Staff is committed to and is expected to proactively pursue problem resolution through the DRP.
- It makes early on-site problem solving more likely.
- It encourages you to communicate early and openly with management.
- You get responses to your issues and discuss and explore your options.
- It is flexible.
- Retaliation is forbidden.
- It helps you help yourself.

The Company seeks to resolve matters submitted to Management Review promptly, within forty-five (45) days. If your problem concerns a legal right, obligation or matter and you are not satisfied with the result of the Management Review you may request mediation, but must do so within thirty (30) days of the conclusion of the Management Review or you will waive your claims. This is to encourage you to get issues resolved in the quickest fashion possible.

## F.   THE MEDIATION PROCEDURE

If your dispute is based on legally protected rights, you may believe that an external mediation process is necessary to resolve it. All external dispute resolution processes in this program use neutral parties provided through recognized and independent Dispute Resolution Service Providers, such as the American Arbitration Association (AAA), or Judicial Arbitration and Mediation Services (JAMS).

### What is Mediation

Mediation is often the most straightforward and time saving formal method of examining and resolving disputes. It is a meeting at which a neutral third party, called a mediator, helps you and the Company come to an agreement of your own, based on the needs

**11/11/03**                                        8

and interests of all concerned.    Mediation helps primarily by opening up communications and by exploring options. In mediation, there is no resolution unless all of the parties agree upon a solution. The mediator can make suggestions, but you and the Company are responsible for actually resolving your dispute.

### Requesting Mediation

To request mediation, after the completion of Management Review, simply request within thirty (30) days. If you are not satisfied with the result of Management Review, you must request mediation within thirty (30) days or you will lose the right to pursue the claims.

### How Successful is Mediation

While external mediation is used far less frequently than the Management Review Procedure, it is highly successful when it is used. Historically, in employment issues, over 80% of the cases that go to external mediation are resolved through the medication process.

### Typical Mediation Steps

When you or the Company requests mediation, and if you cannot agree on a mediator within fourteen (14) days, the Dispute Service Provider will select an independent and local professional mediator with your and the Company's input as described in the Program. A meeting is arranged after the mediator is selected. There are no formal rules to the mediation process, as there are with the arbitration process, however the following are typical mediation steps:

(a)    You and a Company representative will meet with the mediator, who will guide the discussions and help work out differences.

(b)    The mediator usually, as part of this process, meets separately and confidentially with you and later with the Company representative to develop a better understanding of each party's views of the issues. The mediator will discuss with both sides the advantages and disadvantages of their positions and may suggest middle or alternative grounds for consideration as a resolution to the issues.

The Company seeks to promptly complete the mediation phase within seventy-five (75) days, if possible.

If the mediation procedure is not successful and you wish to take your dispute to the arbitration procedure for a final and binding decision, you must file forms to request arbitration within thirty (30) days of the conclusion of the mediation or you will lose your right to pursue those claims.

## Key Advantages of Mediation

Mediation has proven highly successful in the majority of cases. It offers the following advantages:

- Provides the opportunity for both sides to share their views.
- Lets both sides have a third-party perspective.
- Helps manage any feelings of hostility.
- Helps identify and separate emotion from facts.
- Promotes the discussion of creative solutions.
- Offers an opportunity for win-win solutions – a solution that is good for both you and the Company.

## G.    THE ARBITRATION PROCEDURE

If the dispute involves a legally protected right, obligation or matter and has not been resolved in the Management Review or Mediation Procedures, you or the Company may then request arbitration. Because the Program focuses on resolving problems as early as possible, it is expected that, arbitration will be the least-used procedure in the program.    All external dispute resolution processes in this program use neutral arbitrators provided by recognized and independent dispute resolution service providers such as the American Arbitration Association (AAA), or Judicial Arbitration and Mediation Services (JAMS).

### WHAT IS ARBITRATION

Arbitration is a final and binding process in which a dispute is presented to a neutral third party, the arbitrator, for a final and binding decision. Arbitration is governed by specific arbitration rules, as set forth in Appendix B. The arbitrator makes this decision after both sides present their evidence and arguments at the arbitration hearing. There is no jury. If the decision is in your favor, you can be awarded the same individual relief that you could obtain through a court of law. The arbitrator runs hearing proceedings, which are held privately with you and the Company. Though arbitration is much less formal than a court trial, it is an orderly proceeding, governed by rules of procedures and legal standards of conduct.

## Requesting Arbitration

To request arbitration, simply contact the Program Administrator, the General Counsel, within thirty (30) days of the conclusion of the mediation. If you do not request arbitration within thirty (30) days you will waive your right to pursue the claims.

The Role of Lawyers

As part of the arbitration process, the Company has access to legal advice through its law department and outside lawyers. You may consult with a lawyer or any other advisor of your choice. Upon giving notice of your intent to retain a lawyer to the General Counsel and approval that it is covered by the Program, the Company will pay part of your legal fees, up to a maximum of $2,500 for the arbitration. The arbitrator may also award you legal fees as allowed under applicable law.

You are not required, however, to hire a lawyer to participate in arbitration.

## Typical Arbitration Steps

1.    Either you or the Company files a demand for arbitration with AAA, or JAMS.

2.    Any other parties involved are notified.

3.    You and the Company select an arbitrator or if you cannot agree, a recognized independent neutral service provider such as AAA, or JAMS, offer a list of professionally qualified arbitrator candidates and their credentials.

4.    Both you and the Company number the list of candidates in order of preference.

5.    An arbitrator is selected, based on mutual preferences.

6.    The independent neutral service provider or the arbitrator arranges a hearing date at a convenient location.

7.    Prior to the hearing, each party presents a written statement to the arbitrator setting forth their side of the facts and including any relevant documents.

8.    At the hearing, testimony is given and documents are reviewed.

9.    Witnesses are questioned and cross-examined.

10.   The arbitrator issues a final and binding decision.

11.   Copies of this decision are sent to both you and the Company.

## Key Advantages of Arbitration

- *Quick Resolution* – You can expect a timely resolution of your problem. That means months instead of years in the legal system.

- *Independent Third Party* – You can benefit from the objectivity and experience of an external, professional, and expert neutral arbitrator.

- Resolution/Restitution is the same as a court of law could award you.

- *Minimize Impact on Work Relationships* – A quick and impartial resolution through arbitration, rather than lengthy and costly, frustrating court battles, is mutually desirable.

## H.    WHO ARE THE MEDIATORS AND ARBITRATORS?

These people, often attorneys or retired judges, are highly skilled, professional third parties who are neutral and whose services are confidential. The DRP uses recognized and independent dispute resolution service providers, including the two leading professional organizations that provide mediators and arbitrators.

- The *American Arbitration Association (AAA)* is a nonprofit organization that offers a wide range of dispute resolution services to private individuals, businesses, associations, and all levels of government.    It handles approximately 60,000 cases each year and has access to over 50,000 neutral experts who can hear and decide cases. You may call either (800) 203-0016, or write the AAA.

- *Judicial Arbitration and Mediation Services (JAMS)* is an independent company with offices across the country which specialize in helping individuals and companies resolve all types of work-related disputes and claims.  For information about either organization, you can either call (617) 228-0200, or write JAMS at 73 Tremont Street, 4th Floor, Boston, MA 02108 for more information.

While the Company will pay the costs to initiate the mediation or arbitration, you are responsible for your legal expenses exceeding $2500, incurred during the arbitration process, subject to any award of legal fees the arbitrator may make under applicable law.

## I.   FREQUENTLY ASKED QUESTIONS AND ANSWERS

**Q1.   Why does the Company have the Dispute Resolutions Program (DRP)?**

    **A.**    The Company uses the DRP because it provides a cost-effective and timely process for resolving disputes. This process is good for employees and the Company. The more traditional approach of a lawsuit is expensive, time consuming, adversarial and destructive. Typically, lawsuits take years to run their course. The DRP saves everyone time and money, and is more likely to reach a win-win resolution

**Q2.   If the Company pays the fees of the mediators and arbitrators, how independent and impartial can these third parties be?**

    **A.**    Mediators and arbitrators are paid professional neutral parties, typically retired judges, human resources or employee relations' professionals, attorneys, or professors of labor law or a similar discipline. They take pride in their neutrality and are trained to be impartial. Also, you participate in choosing the mediator and arbitrator in the same manner as the Company. The Company pays the mediation and arbitration fees to insure everyone can pursue their claims. If you wish, you can pay for up to one-half of these costs.

**Q3.   Who uses the DRP and for what kinds of problems?**

    **A.**    All exempt and non-exempt employees alike may use the DRP. Assistance is available to resolve concerns about performance issues, conflicts with a co-worker, concerns about possible retaliation for raising a concern or compliant, disciplinary or supervisory issues, safety issues, discrimination, racial or sexual harassment, unfair treatment and morale on the job. The Program is designed for use by employees at every level of the Company, for almost any workplace-related issue.

**Q4.   Does having this Program mean I can't sue DRC?**

    **A.**    If you file a lawsuit, DRC's attorney will go before the judge, tell the judge of the DRC Dispute Resolution Program, and ask that the case be dismissed and sent back to the DRP Program.

**Q5.   What if my dispute concerns a benefit plan, or I'm injured on the job? Can I use the Program then?**

    **A.**    You can use the DRP for questions or concerns about benefit plans but there are plan-specific procedures in place, such as claims appeal processes, within each benefit plan to address your concerns, and you should use those methods prior to contacting the DRP.

Workers' Compensation Claims are handled by filing a claim for Workers' Compensation with the Benefits Manager. However, if you feel you have been unfairly treated because you filed a Workers' Compensation claim, you should utilize the DRP.

**Q6.    What if my supervisor makes work difficult for me after I bring my dispute to the Program?**

A.    The Company forbids retaliation for using the DRP. If you feel someone is retaliating against you for using any of the procedures of the Program, contact the Human Resources Department for independent and confidential assistance.    Retaliation, for utilizing this Program will be considered a very serious violation of Company policy and will not be tolerated.

**Q7.    Will I still be able to go to the Massachusetts Commission Against Discrimination (MCAD), the civil rights agency in my state if employed outside of Massachusetts, or the Equal Employment Opportunity Commission (EEOC)?**

A.    Yes.    The DRP applies to relief you may seek personally through the courts for a workplace dispute. It does not affect your right to contact a government agency only your right to pursue an action in court. You are still free to consult the appropriate state Human Rights Commission such as the MCAD, the EEOC, or any other government regulatory agency regarding your workplace issue. Of course, we hope you'll feel the DRP is effective and that you won't need to go anywhere else.

**Q8.    What's the difference between mediation and arbitration?**

A.    In mediation, there is a neutral person who acts as a go-between for you and the Company. This person works to keep communication open and tries to help everyone involved find a solution, but the mediator cannot force a solution. In arbitration, there is a neutral person who listens to both parties and then makes a final enforceable decision that binds both parties to his/her ruling.

**Q9.    How is arbitration different from a court trial?**

A.    With arbitration, the decision is final; and, except in rare circumstances, it may not be reversed by subsequent proceedings. With a trial court decision, an appeal to a higher court may be filed. There also is no jury in arbitration.    Additionally, an arbitration proceeding is somewhat more informal than a case in court. The arbitrator is a lawyer or former judge, or a person with employee relations or legal background, who serves as a neutral on a full-time or part-time basis. The arbitration proceeding is held in private offices instead of in a public courthouse.

## Q10. Does that mean I am limited in my recoveries by arbitration?

**A.** *No.* The arbitrator has the same authority as a judge or jury in making awards or granting relief to an individual employee.

## Appendix A

### Dynamics Research Corporation's
### Dispute Resolution Program Rules

1. **Purpose and Construction**

   The Program is designed to provide a program for the timely, fair, accessible, and inexpensive resolution of disputes between the Company and the Company's present and former Employees, related to or arising out of an employment relationship with the Company. The Program creates an exclusive procedural mechanism for the final resolution of all disputes falling within its terms. It is not intended either to abridge or enlarge substantive rights available under applicable law. The Program contractually modifies the "at-will" employment relationship between the Company and its Employees, but only to the extent expressly stated in this Program. The Program should be interpreted in accordance with these purposes.

2. **Definitions**

   A.    "Administrator" means Sponsor shall appoint one or more persons to administer the Program who shall be known as the "Dispute Resolution Program Administrator    The Dispute Resolution Program Administrator shall be responsible for the management and administration of the Program. The initial Program Administrator shall be the Office of General Counsel.

   B.    "AAA" means the American Arbitration Association.

   C.    "JAMS," means the Judicial Arbitration and Mediation Services.

   D.    The "Act" means the Federal Arbitration Act, 9 U.S.C.§ 1, *et seq.,* as amended from time to time.

   E.    "Company" means the Sponsor its companies, subsidiaries and adopting affiliates and all of their officers, directors, employees, and agents, every plan of benefits, whether or not tax exempt, established or maintained by any such entity, the fiduciaries, agents and employees of all such entities, and the successors and assigns of all such persons and entities.

   F.    "Dispute" means any dispute for controversy including all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or at law or in equity, between persons and entities bound by the Program or by an agreement to resolve Disputes under the Program, or between a person bound by the Program and a person or entity

otherwise entitled to its benefits, including, but not limited to, any matters with respect to:

1)   this Program;

2)   the employment discharge, layoff, or re-employment of an Employee, including the terms, conditions, or termination of such employment with the Company;

3)   employee benefits or incidents of employment with the Company;

4)   any other matter related to the relationship between the Employee and the Company including, but not limited to, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin, or disability; sexual harassment; workers' compensation retaliation; defamation; infliction of emotional distress' veteran status; or status, claim, or membership with regard to any employee benefit plan; or

5)   The Program shall apply to any claim by an employee against the Company, its subsidiaries and affiliates, officers, directors, managers or supervisors acting on its behalf in an employment related matter.

6)   Claims involving workers' compensation, benefit plans or other agreements containing their own dispute resolution procedure shall not be subject to the Program, except that an Arbitrator may grant benefits as part of the individual relief for a Dispute under the Program that is allowable under the terms of a benefit plan.

7)   Only claims concerning a legal right, obligation or remedy may be pursued beyond Management Review to Mediation or Arbitration.

G.   "Dispute Resolution Service Provider" means the independent third party such as AAA or JAMS that will serve as the neutral mediator or arbitrator under the Program.

H.   "Employee" means for purposes of this Program any person who applies for employment or is in the employment of the Company on or after the effective date of this Program, whether or not employed at the time a claim is brought with respect to a Dispute, residing in the United States, or otherwise subject to the laws of the United States or any state, municipality, or other political subdivision of the United States.

I.   "Party" means, with respect to a particular Dispute, affected persons and/or entities bound by this plan.

J.   "Program" means this Dynamics Research Corporation Dispute Resolution Program, as amended from time to time.

K.    "Rules" means the Dynamics Research Corporation Dispute Resolution Rules, as amended from time to time, which are applicable to mediation and arbitration.

L.    "Sponsor" means Dynamics Research Corporation, a Massachusetts corporation, and all of subsidiaries, affiliates and adopting entities.

## 3.    Name, Application and Coverage

A.    The Program shall be referred to as the "Dynamics Research Corporation Dispute Resolution Program." Alternatively, it may be referred to as the "Dynamics Research Corporation Dispute Resolution Program" or the "Dispute Resolution Program".

B.    Until revoked by Sponsor pursuant to this Program, this Program applies to and binds the Company, each Employee and the heirs, beneficiaries, successors, and assigns of any such person or entity.

C.    Except as otherwise provided herein, this Program applies to any Dispute between an employee and the Company.

D.    Notwithstanding anything to the contrary in this Program, the Program does not apply to claims for workers' compensation benefits or unemployment compensation benefits.

E.    Notwithstanding any other provision of the Program, any court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings under the Program.

## 4.    Resolution of Disputes

All Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Program and the Rules.

## 5.    Confidentiality and Non-retaliation

A.    No employee shall be subject to any form of discipline or retaliation for initiating or participating in good faith in any process or proceeding under this Program.

B.    The Dispute Resolution Program Administrator is authorized to conduct conferences for the purpose of assisting Parties in the process. The conferences conducted under this Program and all in-house Dispute resolution processes shall be conducted as confidential as possible under the facts and circumstances of the issues to be resolved.

C.     The procedure under the Program shall be held confidential to the full extent permitted by law and proceeding of Program and Parties under Steps One and Two. Management Review and Mediation shall be held confidential and not disclosed or offered into evidence in the Arbitration.

## 6.     Amendment

The Sponsor may amend this Program at any time and such amendment shall be effective by giving at least thirty (30) days notice to Employees. However, no amendment shall apply to a Dispute for which a proceeding has already been initiated pursuant to the Rules.

## 7.     Termination

The Sponsor may terminate this Program at any time by giving at least thirty (30) days notice of termination to Employees. However, termination shall not be effective as to Disputes for which a proceeding has already been initiated pursuant to the Rules prior to the effective date of termination.

## 8.     Applicable Law

A.     The Act shall apply to this Program, the Rules, and any proceeding under the Program or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator, or settlements under the Program or the Rules.

B.     Other than as expressly provided herein, the substantive legal rights, remedies, and defenses of all Parties are preserved. In the case of arbitration, the arbitrator shall have the authority to determine the applicable law and to order any and all individual relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in a proceeding.

C.     Other than as expressly provided in the Rules, the Program shall not be construed to grant additional substantive, legal equitable, or contractual rights, remedies, or defenses, which could not be applied by a court of competent jurisdiction in the absence of the Program.

D.     Notwithstanding the provisions of this section, in any proceeding before an arbitrator, the arbitrator, in his or her discretion, may allow a prevailing Employee reasonable attorney's fees as a part of the award. The discretion to allow an award of fees under this subsection is in addition to any discretion, right, or power, which the arbitrator may have under applicable law. However, any award of fees shall be reduced by any amount that has been or will be paid by the Company.

11/11/03                                    19

9.    **Administrative and Judicial Proceedings**

   A.    This Program shall apply to a Dispute brought after the issuance of the Program, which is brought or is pending before any local, state, or federal administrative body or court unless prohibited by law.

   B.    Participation in any administrative or judicial proceeding by the Company shall not act as an estoppel nor affect the applicability of the Program to any such Dispute upon termination or interruption, stay or dismissal of the administrative or judicial proceeding.    A finding, recommendation, or decision by an administrative body on the merits of a Dispute shall have the same legal weight or effect under the Program as it would in a court of competent jurisdiction.

10.    **Exclusive Remedy**

   Proceedings under the Program shall be the exclusive, final, and binding method by which Disputes are resolved; provided the parties may seek injunctive relief pending the outcome of any claim without waiver of the application of the Program.

11.    **Timing**

   The policy of the Company is to resolve problems as quickly as practicable and that claims should be filed within thirty (30) days of their occurrence.  This shall not preclude the submission of any claim under the applicable statute of limitations.  However, any Party initiating a claim under the Program must submit all disputes in existence covered by the Program or waive their rights to pursue other claims.

   The Company, in its sole discretion, may waive the requirements that all disputes be submitted at once or that requests for proceeding from Step 1 or Step 2 to Mediation or Arbitration be submitted in writing within thirty (30) days of the outcome of the prior step.

12.    **Authority**

   The Arbitrator shall have no authority to consider class claims or join different claimants or grant relief other than on an individual basis to the individual employee involved.  The right of any party to pursue a class action for any Dispute subject to the Program shall be waived to the fullest extent permitted by law.

13.    **Coordination with other Company Policies**

   The Program does not change or alter any other Company Policy.  In the event an issue is subject to more than one policy, the Employee should bring this to the attention of Human Resources and the Program Administrator to ensure coordination of the processes.

14.    **Effective Date**

The "Effective Date" of this Program means and shall be upon its issuance by the Company.

15.    **Severability**

The terms of this Program and the Rules are severable. The invalidity or unenforceability of any provision herein shall not affect the application of any other provision or any jurisdiction in which such a provision may be lawful. Where possible, consistent with the purpose of the Program, any otherwise invalid provision of the Program or the Rules may be reformed and, as reformed, enforced.

16.    **Applicability to Employees**

Employment on or continued employment after the "Effective Date" of this Program constitutes consent by both the Employee and the Company to be bound by this Program, both during employment and after termination of employment to the fullest extent permitted by applicable law.

## Appendix B

### Dynamics Research Corporation's
### Dispute Resolution Program Arbitration Rules

1.    **Definitions**

All definitions included in the Dynamics Research Corporation Dispute Resolution Program Appendix A apply to these Rules. Employees may communicate with the Dispute Resolution Service Provider used or the Program Administrator if they have questions about the arbitration procedures.

2.    **Application**

A.    If different rules are applicable to a specific class of Disputes, and have been adopted by Sponsor and the employees, these Rules shall not apply to such class of Disputes.

B.    These Rules apply in the form existing at the time proceedings are initiated under them.

C.    To the extent consistent with these Rules, the employment dispute resolutions rules of the Dispute Resolution Service Provider also apply to all proceedings governed by these Rules.

3.    **Initiation of the Arbitration Process**

A.    A Party may initiate proceedings under these Rules provided that the Party has complied with the provisions and steps of the Program and, subject to any defenses applicable to the timeliness of the claim, including limitations and laches.

B.    Parties against whom a claim is asserted shall file an answering statement within twenty-one (21) days of receiving notice of intent to arbitrate or a specification of claims, which shall include any counter-claims and any request that the arbitrator (if any) prepare a statement of reasons for the award.

4.    **Administrative Conference**

The Dispute Resolution Service Provider will convene an administrative conference as soon as possible after receipt of the answering statement or after expiration of the time for filing an answering statement if one has not been filed. The conference may be held in person or by telephone. At the conference, the Dispute Resolution Service Provider will determine whether the Parties are in agreement as to a method of resolving the Dispute. If the Parties are in agreement, the Dispute Resolution Service Provider will

implement the procedure in accordance with their rules. If the Parties cannot agree, or if the Parties have previously attempted and failed to resolve the Dispute by internal conferences or mediation, the Dispute shall be arbitrated under these Rules.

## 5.   Selection and Appointment of an Arbitrator

If the parties cannot agree on an arbitrator within fourteen (14) days of the submission to arbitration, the Dispute Resolution Service Provider will simultaneously send each Party an identical list of names of persons chosen from a panel of qualified arbitrators, which it shall select and maintain.   The Arbitrator shall be lawyer or former judge, have experience in the area of law involved and be available to hear the matter. Each Party to the Dispute shall have fourteen (14) days from the transmittal date to strike any names objected to, number the remaining names in order of preference, and return the list to the Dispute Resolution Service Provider. If a Party does not return the list within the time specified, all persons therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the order of mutual preference, the Dispute Resolution Service Provider shall invite the acceptance of that arbitrator to serve. Any Party shall have the right to strike one list of arbitrators in its entirety. When a Party exercises this right, the Dispute Resolution Service Provider shall issue a new list of arbitrator consistent with the above procedures.

## 6.   Qualification of the Arbitrator

No person shall serve as an arbitrator in any matter in which that person has any extraordinary financial or personal interest.   Prior to accepting appointment, the prospective arbitrator shall disclose any circumstance likely to prevent a prompt hearing or create even a presumption of bias. Upon receipt of such information of a bias from the arbitrator or any other source, the Dispute Resolution Service Provider will either replace that person or communicate the information to the Parties for comment. Thereafter, the Dispute Resolution Service Provider may disqualify that person, and its decision shall be conclusive.

## 7.   Vacancies

If an appointed arbitrator is unable to serve promptly, the appointment procedure in Section 5 shall apply to the selection of a substitute arbitrator.

## 8.   Date, Time, and Place of Proceedings

A.    The arbitrator shall set the date, time, and place of the proceedings.

B.    The Arbitrator shall be an attorney or former judge, have experience as a lawyer or neutral in the law applicable to the dispute and be available to serve as arbitrator.

C.     Notice of any proceeding shall be given at least ten (10) days in advance, unless the arbitrator determines or the Parties agree that a shorter time is necessary.

D.     The arbitrator shall make every reasonable effort, without unduly incurring expense, to accommodate the Employee in the selection of a proceeding location.

## 9.    Conferences

At the request of the Dispute Resolution Service Provider, or a Party, or on the initiative of the arbitrator, the arbitrator, AAA or JAMS may notice and hold conferences for the discussion and determination of any matter which will expedite the proceeding, including:

A.     the time and location of proceedings or conferences;

B.     identification and clarification of issues;

C.     determination of preliminary factual issues, and summary determination of dispositive legal issues;

D.     discovery of evidence;

E.     interim legal or equitable relief authorized by applicable law;

F.     pre or post-hearing summary memoranda from the parties;

G.     factual admissions or stipulations; and/or

H.     any other matter of substance or procedure to the process.

## 10.    Mode of Proceedings and Conferences

In the discretion of the arbitrator or by agreement of the Parties, conferences and proceedings may be conducted by telephone or by written submission, as well as in person.

## 11.    Pre-hearing

A.     On any schedule determined by the arbitrator, each Party shall submit in advance, the names and addresses of the witnesses it intends to produce and any documents it intends to present.

B.     The arbitrator shall have discretion regarding the form, amount and frequency of discovery by the Parties.

C. Discovery may take any form permitted by the Federal Rules of Civil Procedure, as amended from time to time, subject to any restrictions imposed by the arbitrator.

## 12. Representation

Any Party may be represented by counsel or by any other authorized representative.

## 13. Attendance at Proceedings

The arbitrator shall maintain the privacy of the proceedings to the extent permitted by law. Any person having a direct interest in the matter shall be entitled to attend the proceedings.

The arbitrator shall otherwise have the power to exclude any witness, other than a Party or other essential person, during the testimony of any other witness. The arbitrator shall determine whether any other person may attend the proceeding. Upon the request of any Party, the arbitrator may exclude any witness during the testimony of any other witness.

## 14. Postponement

A. The arbitrator, for good cause shown by a Party or on agreement of the Parties, may postpone any proceeding or conference.

B. The pendency of court proceedings related to the same matter is not good cause for postponement.

## 15. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if required by law or requested by any Party, shall do so.

## 16. Record of Proceedings

There shall be no stenographic, audio, or video record of the proceedings unless either requested by one of the Parties or specified by the arbitrator. The cost of such record shall be at the sole expense of the party requesting the record. The Party requesting the record shall bear the entire cost of producing the same. Copies of the record shall be furnished to all other Parties on request and payment of the cost of reproduction.

17.    **Procedure**

The proceedings shall be conducted by the arbitrator in whatever order and manner which will most expeditiously permit full presentation of the evidence and arguments of the Parties.

18.    **Arbitration in the Absence of a Party**

The arbitrator may proceed in the absence of Parties or representatives who, after due notice, fail to be present or fail to obtain a postponement. An award shall not be made solely on the unintentional or inadvertent default of a Party. The arbitrator shall require any Party who is present to submit such evidence as the arbitrator may require for making an award.

19.    **Evidence**

A.    The arbitrator shall be the sole judge of the relevancy, materiality, credibility and admissibility of evidence offered. Conformity to legal rules of evidence shall not be mandatory; provided that the arbitrator shall apply the law to preserve privileges such as the attorney-client, work-product or settlement negotiations.

B.    The arbitrator may subpoena witnesses or documents at the request of a Party or on the arbitrator's own initiative.

C.    The arbitrator may consider the evidence of witnesses by affidavit or declaration, but shall give it only such weight, as the arbitrator deems appropriate after consideration of any objection made to its admission.

20.    **Post-Hearing Submissions**

All documentary evidence to be considered by the arbitrator shall be filed during the hearing unless the arbitrator finds good cause to permit a post-hearing submission. All Parties shall be afforded an opportunity to examine and comment on any post-hearing evidence. The arbitrator shall permit the filing of post-hearing briefs at the request of a Party and shall determine the procedure and timing of such filings.

21.    **Closing and Reopening of Proceedings**

A.    When the arbitrator is satisfied that the record is complete, including the submission of any post-hearing briefs or documents permitted by the arbitrator, the arbitrator shall declare the proceeding closed.

B.    The proceedings may be reopened on the arbitrator's initiative or upon application, determined by the arbitrator to be with good cause, of a Party at any time before the award is made.

22.    **Waiver of Procedures**

Any Party who fails to timely object in writing to the arbitrator after knowledge that any provisions or requirements of these procedures and Rules have not been compiled with, shall be deemed to have waived the right to object.

23.    **Service of Notices and Papers**

Any papers, notices, or process necessary or proper for the initiation or continuation of any proceeding under these Rules (including the award of the arbitrator, any court action in connection therewith, or the entry of judgment on an award made under these procedures) may be served on a Party by mail addressed to the Party or his or her representative at the last know address. The Dispute Resolution Service Provider, the Parties, and the arbitrator may also use confirmed facsimile transmission, telex, telegram, or other written forms of electronic communication to give any notices required by these Rules.

24.    **Communications with AAA, JAMS, and the Company**

A.    Any Party may notice, serve, or communicate with the Company by contacting:

Dispute Resolution Program
Administrator
Dynamics Research Corporation
60 Frontage Road
Andover, MA 01810
Attn: General Counsel
Tel:  (978) 475-9090
Fax: (978) 474-9204

B.    Any Party may notice, serve, or communicate with AAA by contacting:
Regional Administrator
American Arbitration Association

C.    Any Party may notice, serve, or communicate with JAMS by contacting:
JAMS

25.    **Communication with the Arbitrator**

There shall be no communication between the Parties and the arbitrator other than at oral hearings or conferences.  Any other oral or written communications from the Parties to the arbitrator shall be directed to Dispute Resolution Service Provider assigned to the arbitrator (and copied to the Parties) for transmission to the arbitrator, unless the Parties and the arbitrator agree otherwise.

26.   **Time of the Decision**

The arbitration decision shall be promptly made by the arbitrator, unless otherwise agreed by the Parties or specified by applicable law, no later than thirty (30) days from the date of the closing of the proceeding, or, if applicable, the closing of a reopened proceeding.

27.   **Form of the Decision**

The decision shall be in writing and shall be signed by the arbitrator. The arbitrator shall write a statement of reasons for the award if requested to do so in the request to initiate proceedings or in the answering statement. The award shall be executed in any manner required by applicable law.

28.   **Modification of the Decision**

On order of a court of competent jurisdiction, or on agreement of the Parties, the arbitrator shall modify any decision. The arbitrator may also modify the decision and award on the motion of a Party if the arbitrator finds that the award, as rendered, is ambiguous or defective in form, or if the decision requires an illegal or impossible act. These are the only circumstances under which an arbitrator shall have jurisdiction to withdraw or modify a decision.

29.   **Settlement**

If the Parties settle their Dispute during the course of the arbitration, the arbitrator may set out the terms of the settlement in a consent decision.

30.   **Scope of the Arbitrator's Authority**

The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties and shall have no jurisdiction to grant class relief, consolidate claims or determine company business policies. As such, the arbitrator shall be bound by and shall apply applicable law including the allocation of the burden of proof as well as substantive law. The arbitrator shall not have the authority to either abridge or enlarge substantive rights available under existing law. The arbitrator may also grant emergency or temporary relief, which is or would be authorized by applicable law.

31.   **Judicial Proceedings and Exclusion of Liability**

A.   Neither the Dispute Resolution Service Provider, nor any arbitrator is a necessary Party in judicial proceedings relating to proceedings under these Rules.

B.   Neither the Dispute Resolution Service Provider, nor any arbitrator shall be liable to any Party for any act or omission in connection with any proceedings within the scope of these Rules.

C.   Any court with jurisdiction over the Parties may compel a Party to proceed under these rules at any place and may enforce any decision made.

D.   Parties shall be deemed to have consented that the judgment and decision of the arbitrator may be entered and enforced in any federal or state court having jurisdiction over the Parties.

E.   Initiation of, participation in, or removal of a legal proceeding shall not constitute waiver of the right to proceed under the rules.

F.   Any court with jurisdiction over the Parties may issue restraining or injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings under these Rules.

## 32.   Fees and Expenses

A.   The expenses of witnesses shall be borne by the Party producing such witnesses, except as otherwise provided by law or in the award of the arbitrator.

B.   After the Company's contribution of $2,500 to the employee's legal fees and costs, additional attorney's fees shall be borne by the Party incurring them except as otherwise provided by law, by the Program, or in the decision of the arbitrator.

C.   Employee Parties shall not be responsible for payment of fees and expenses of proceedings under these Rules including required travel of an arbitrator or a mediator, expenses of an arbitrator, mediator, the Dispute Resolution Service Provider, or representatives, and the cost of any proof produced at the discretion of an arbitrator.

D.   Except as otherwise provided by law or in the decision of the arbitrator, all other expenses, fees, and costs of proceedings under these Rules shall be borne equally by the Parties who are not Employees.

## 33.   Interpretation and Application of These Rules

The arbitrator shall interpret and apply these Rules to the greatest extent possible insofar as they relate to the arbitrator's powers and duties. Any procedure not covered by these rules shall be interpreted and applied by the Dispute Resolution Service Provider.

## 34.   Applicable Law

A.   Proceedings under these Rules and any judicial review of decisions shall be governed by the Act.

Except where otherwise expressly provided in these Rules, the substantive law applied shall be the state or federal substantive law which would be applied by a United States District Court sitting at the place of the proceeding.

## Appendix C - Forms 1, 2 and 3

> **Management Review Step 1**

**PART 1 – NOTICE OF DISPUTE**

Employee Name: _____

Employee Number: _____

Date of Incident: _____

Department
Work Location: _____

Immediate Supervisor: _____

Daytime Phone: _____

Position: _____

Describe the dispute or incident in detail: (use additional pages if necessary) _____

_____

_____

_____

Desired Resolution: _____

*I acknowledge that I am subject to the Company's Dispute Resolution Policy, which is the sole and exclusive remedy for all claims under the Policy. Only claims involving legal rights, obligations or issues may be pursued to the next steps. I understand that, should this dispute not be resolved and it involves legal claims or rights, I must file a Request for Mediation within thirty (30) days of the date of Final Determination or I will waive all rights to pursue my claims.*

Employee Signature: _____

Date: _____

Received By: _____

Date: _____

**Part II – Final Determination (Management Review)**

Date of Conclusion of Management Review: _____

0 Resolved          0 Not Resolved

Comments: _____

_____

_____

Human Resources' Signature: _____

Date: _____

If you do not agree with the determination and desire to pursue the dispute further, you must file a Request for Mediation Form within thirty (30) days of the date of this final determination or you will waive all rights regarding your claims.

| Date: | ☐ | _____<br>Mailed to Employee |
|---|---|---|
|  | ☐ | _____<br>Hand-Delivered to Employee |

**11/11/03**

Form 2

| **Request for Mediation Step 2** |
| **(For Legal Claims Only)** |

PART I – NATURE OF CLAIM

This request must be filed within thirty (30) days of the date of Step 1 Management Review Final Determination, or you will waive all rights to pursue your claims.

Date of Level 1 Final Determination: _____
(Attach a copy of Determinations)

Employee Name: _____     Employee Number: _____

Address (Home or Work): _____

Department/Work Location_____

Identification of Claim Category

| Discrimination (Check as many as apply) | __ Termination |
| __ Age          __ Sex |  |
| __ Disability    __ Religion | __ Other (Specify) _____ |
| __ Race         __ National Origin | _____ |
| Other (Specify): |  |

Details of Complaint: (Attach separate statement or relevant supporting documents as applicable)

_____
_____

Remedies Sought:_____
_____

*I hereby submit this claim(s) for Mediation under the Dispute Resolution Policy which is the sole and exclusive remedy for claims under the Policy. I understand that the mediator does not have authority to bind the parties. I understand that, should the dispute not be resolved, I must file a Request for Arbitration Step 3 within thirty (30) days of the date of the conclusion of the mediation or I will waive all rights to pursue my claims.*

Employee Signature: _____     Date: _____

Received by: _____     Date: _____

Part II – Final Determination (Mediation)

Date of Conclusion of the Mediation: _____

0  Resolved                          0  Not Resolved

Comments: _____
_____

DRP Administrator's Signature: _____     Date: _____

If you do not agree with the resolution or desire to pursue your claims, you must file a Request for Arbitration Step 3 within thirty (30) days of the date of the conclusion of the Mediation, listed above or you will waive all rights to pursue your claims.

| Date: | ☐ | _____ |
| | | Mailed to Employee |
| | ☐ | _____ |
| | | Hand-Delivered to Employee |

11/11/03

Form 3

| **Request for Arbitration Step 3** |
| **(For Legal Claims Only)** |

### PART I – NATURE OF CLAIM

This Request must be filed within thirty (30) days of the date of the Conclusion of the Mediation Step 2, or you will waive your rights to pursue your claims.

Date of Conclusion of the Mediation: _____

(Attach a copy of Levels 1 and 2 Final Determinations)

Employee Name: _____    Employee Number: _____

Address (Home or Work): _____

Department/Work Location_____

Identification of Claim Category

| Discrimination (Check as many as apply)<br>__ Age        __ Sex<br>__ Disability    __ Religion<br>__ Race         __ National Origin<br>__ Other (Specify): _____ | __ Termination<br><br>__ Other (Specify) _____<br>_____ |

Details of Complaint: (Attach separate statement or relevant supporting documents as applicable)

_____

_____

Remedies Sought:_____

_____

*I hereby submit this claim for Arbitration under the Dispute Resolution Policy which is the sole and exclusive remedy for claims under the Policy. I understand that the decision of the Arbitrator is binding in accordance with the Policy.*

Employee Signature: _____    Date: _____

Received by: _____    Date: _____

### Part II – Final Determination (Binding Arbitration)

Date of Arbitration Decision: _____

Final Determination (or attach Arbitrators Decision) _____

_____

_____

DRP Administrator's Signature: _____    Date: _____

| Date:   ☐ | _____<br>Mailed to Employee |
|   ☐ | _____<br>Hand-Delivered to Employee |

*Dynamics Research Corporation's*

# Concerning You



A Corporate Newsletter                                            January 2004



## In This Issue...

**FEATURE ARTICLES**

Dispute Resolution Program

New Compensation Program

**DEPARTMENTS**

Employee Recognition Awards

KUDOS

Compliance Update

New Microsoft Discount Purchase Program

EBS Training Update

Public Folders

Holiday Giving

Corporate Ski Passes

HJ Ford News

Welcome On Board

Anniversaries

Ethics Hotline

## Concerning You

**Publisher**
Communications
& Publications

**Editor**
Pat Flanagan

**Layout & Design**
Dotty Snook

**Photographer**
Laura Cantwell

# Dispute Resolution Program (DRP)

On December 1, 2003 the new DRC Dispute Resolution Program, (the DRP), took effect. This program is applicable to all workplace disputes between DRC, its companies, subsidiaries and adopting affiliates and all of their employees, including all officers, managers, supervisors, applicants, and employees. A description of the program was recently provided to all employees. Below is a summary of how the DRP works.



The DRP expands upon the current Problem Resolution Policy by including through externally administrated mediation and arbitration, two additional and more formal processes for addressing and resolving disputes between an employee and the company. The DRP is designed to provide improved, reasoned, predictable, and reliable processes to air and address almost every kind of workplace employment issue.

The DRP consists of three fully explained resolution processes. The first process, the Management Review Procedure, is an enhanced version of DRC's Problem Resolution Policy (#2-115). It is anticipated that most disputes can and probably will continue to be resolved to an acceptable conclusion through this first process.

The DRP also includes two additional and sequential external and more formal processes for resolving disputes that involve the protection of an employee's legal rights. These processes are Mediation and binding Arbitration. These processes are only available to employees if their dispute involves a legally protected right. This means that only claims involving issues governed by state or federal laws, such as protection against age, race or sex discrimination, or protection against sexual harassment can advance to Mediation and then, if necessary, to Arbitration.

The DRP does not limit or change any of your substantive legal rights, but it does require that you seek resolution of such rights and complaints by following the procedures of the program. The arbitration process provides the same resolutions as can be obtained through the court system, but with less cost and fewer complications for all parties.

You are encouraged to review the DRP description and become familiar with how the DRP works, if you have not already done so. The complete DRP and its description and rules can be found on DRC's Intranet. DRC's management believes that the DRP will directly benefit all of our employees. If you have questions about the DRP or need further information, please contact your HR Representative, or email askdrp@drc.com

# New Compensation Program

For some time now, the Compensation Department within Human Resources has been working with line managers to develop a new compensation program for the company. At this point, this program has been developed and approved by senior management, and is scheduled to be implemented on February 1, 2004.

With the implementation of the new program, every employee will receive a new job title based on assigned job duties and responsibilities and a new salary grade (an associated salary range) based on prevailing market rates. Additionally, the upcoming February merit increases will be determined within the framework of the new compensation program.

In preparation for the program's implementation, the vast majority of DRC's supervisors have already received training in the program. We are planning to schedule employee Compensation Program Orientation Sessions between the middle of

*continued on page 3*



One Small Step for EBS,
One Giant Leap for DRC.

# Dynamics Research Corporation's Concerning you



A Corporate Newsletter                                                    February, 2004



## In This Issue...

**FEATURE ARTICLES**

Dispute Resolution Program

DRC Holiday Schedule

**DEPARTMENTS**

Training & Development

Employee Recognition Awards

KUDOS

Compliance Update

Spotlight on...

Employee Referral Program

Library News

Corporate Ski Passes

HJ Ford News

Welcome On Board

Anniversaries

New Ombudsman

Ethics Hotline

---

## Concerning You

**Publisher**
Communications & Publications

**Editor**
Pat Flanagan

**Layout & Design**
Dotty Snook

**Photographer**
Laura Cantwell

# Dispute Resolution Program (DRP)

DRC's new Dispute Resolution Program went into effect December 1. We remind you that if you have any questions about how the program works, you can contact askdrp@drc.com . Here is a question recently asked online.

*Q:* *What will happen to personnel that will not accept Arbitration?*

*A:* The implementation of an Employee/Employer Dispute Resolution Program is not unique to DRC. Anheuser-Busch, Halliburton, TRW, Raytheon, and General Electric are among the many companies recognizing the importance of a non-litigation forum for the resolution of disputes. The

United States Supreme Court has ruled that mediation and arbitration dispute resolution plans are an acceptable alternative to litigation through the overburdened court systems.

Arbitration does require the application of the applicable state and federal laws. Arbitrators must be unbiased in their process and decisions and can award what any jury could award. Arbitrary and capricious arbitrator decisions are subject to court review.

As stated in the DRC Plan, a suit brought in court that should have been addressed under the Plan will be



subject to a motion to remove the dispute from the court and have it placed under the Plan for resolution.

Please remember that court litigation is neither inexpensive nor is it free. Unnecessary and expensive legal costs directly affect the company's ability to address more important company and employee workplace and benefit concerns.

## DRC HOLIDAY SCHEDULE

DRC observes ten and one-half Company-paid Holidays each year. If you are scheduled to work at least 20 hours a week, you are eligible for paid Holiday time.

| 2004 Official DRC Company Holiday Schedule | | | |
|---|---|---|---|
| New Year's Day | Thursday, January 1 | Columbus Day | Monday, October 11 |
| President's Day | Monday, February 16 | Thanksgiving Day | Thursday, November 25 |
| Patriot's Day | Monday, April 19 | Day after Thanksgiving | Friday, November 26 |
| Memorial Day | Monday, May 31 | Christmas Eve | Thursday, December 23 (1/2 day) |
| Independence Day | Monday, July 5 | Christmas Day* | Friday, December 24 |
| Labor Day | Monday, September 6 | | |

*Per DRC's Holiday Policy, Saturday Holidays will be observed on the preceding Friday.*

**Please note:** The majority of official DRC Company Holidays are observed at all Company locations, and you are expected to observe Holidays on the dates above. *However, customer requirements take precedence. Therefore, your manager reserves the right to make changes (in advance, whenever possible) to your Holiday schedule.*

This means, if you work at a customer site that is open on a DRC Company Holiday, you may be required by your manager to work that day and take an alternative day off charged to Holiday time. Or, if you work at a customer site that is closed for a Holiday on a day other than one listed above, your manager will instruct you on whether to take Holiday time that day, work at an alternate site, or take Holiday time on a substitute date.

For instance, Patriot's Day, April 19, is an official DRC Company Holiday, but will not be observed by some DRC organizations. (Most likely, you have already been notified by your manager if you will or will not be observing Patriot's Day.) Typically, employees who are not required to take Holiday time on Patriot's Day will observe a non-DRC Holiday, such as Veteran's Day. *If your manager has instructed you not to take Holiday time on Patriot's Day, he/she will also let you know which day to take as a substitute.*

In all cases, you must obtain advance approval from your manager before taking Holiday time on any day other than on an Official Company Holiday.

*continued on page 3*

Dynamics Research Corporation's
# Concerning You
DRC®
A Corporate Newsletter
November 2004

**In This Issue...**

**Feature Articles**

New EXPRESS Web Toolkit
Dispute Resolution Program
Compliance Update
Helpdesk Customer Satisfaction Survey
Performance Evaluation
Corporate Ski Passes
BD News
Employee Referral Program
Welcome On Board
Anniversaries
HJ Ford News
Ethics Hotline

**Concerning You**

**Publisher**
Communications & Publications

**Editor**
Pat Flanagan

**Layout & Design**
Dotty Snook

**Photographer**
Laura Cantwell

## New EXPRESS Web Toolkit Presented at ALCs

A new application software tool has been recently introduced to depot users at Air Force Logistics Centers in Ogden, UT, Oklahoma City, OK and Warner Robins, GA. The Execution and Prioritization of Repair Support System (EXPRESS) Web Toolkit (EWT) was designed and developed by the Logistics Programs Business Unit of SE&ITG. EXPRESS is a module of Weapon System Management Information System (WSMIS), managed by Materiel Systems Group at Air Force Headquarters AFMC.

From left to right: Tom Lewis, DRC, Tony Dowd WR-ALC , Bob Gassman, DRC WR-ALC (Express Office), Rene Nobles WR-ALC , Kevin Kratz, WR-ALC and Steve O'Meara, DRC.

EWT is a web application used by hundreds of maintenance personnel at the depots and by logistics and support personnel at Air Force bases worldwide. As the reporting tool associated with the EXPRESS execution system, EWT allows Air Force users to view reports containing base and depot asset data consolidated from Air Force legacy systems in the EXPRESS database. EWT is also a central point of access for all prioritized repair and distribution reports generated by the EXPRESS system. EWT is used daily by ALC personnel to set daily depot funding levels for repair at the ALC.

EWT development takes advantage of Global Command Support System – Air Force (GCSS – AF) tools and represents a significant step towards WSMIS migration to GCSS – AF compliance.

During August and September, Steve O'Meara, Manager, Software Development, traveled to Air Force Logistics Centers in Ogden, UT, Oklahoma City, OK, and Warner-Robins, GA, to introduce the new EWT application software to depot users.

Users, including schedulers and item managers, viewed an EWT demonstration and participated in hands-on training sessions.

On each of his trips, Steve was accompanied by Tom Lewis or Joe Casadone, who provided additional input and technical support.

George Zeck, Functional OPR (Office of Primary Responsibility) HQ AFMC/LGYR of Wright-Patterson AFB, wrote in a letter of commendation to the WSMIS Program Office "This effort has been very successful . . . due to the outstanding efforts of DRC and our ALC EXPRESS OPRs." OPRs were Kathleen Palmer (OO-ALC), Cate Gibbany (OC-ALC), and Pam Gay (WR-ALC).

Kathleen Palmer wrote to George Zeck to praise the training DRC provided, "We extend our appreciation and compliments for an outstanding EXPRESS EWT Training package and presentation by Steve O'Meara. We had excellent participation from the attendees and have received good, positive comments . . ."

Thanks also go to Don Ammon, of the WSMIS Program Management Office, for his efforts in coordinating the program.

Congratulations to the Logistics Programs Business Unit led by Pam Kelleher, Business Unit Director. Pam reports to Ellen Glover, System Development VP under Tom Kelly. Logistics Programs recently won the WSMIS re-compete as a sub to CSC.

# DRC'S DISPUTE RESOLUTION PROGRAM
## A Reminder

DRC would like to take another opportunity to remind all of our employees of the Dispute Resolution Program, (the DRP), in this issue of *Concerning You*. On December 1, 2003 DRC's DRP took effect. This program is applicable to all DRC, HJ Ford, Andrullis, and Impact Innovation employees, including all of their executive officers, officers, managers, and supervisors. A description of the program is on DRC's intranet and is available to all employees.

The DRP expanded upon the Problem Resolution Policy by including, through externally administrated mediation and arbitration, two additional and more formal processes for addressing and resolving disputes between an employee and the company, or between the company and the employee. The DRP is designed to provide improved, reasoned, predictable, and reliable processes to air and address almost every kind of workplace employment issue.

The DRP consists of three fully explained resolution processes. The first process, the Management Review Procedure is an enhanced version of DRC's Problem Resolution Policy (#2-115). It is anticipated that most disputes can and probably will continue to be resolved to an acceptable conclusion through this first process.



## Future Business Development Strategic Accounts and Solutions



*I will be taking several actions to establish regular meetings, communications, account teams, strategic account selection teams, etc. to build the teams, trust and communications we will all need to really coach and become world class. Help me! Help us perform so that your people succeed, helping us all succeed!* —Finley Foster

On October 19th and 20th approximately 30 members of the management team, including Bill Hoover, gathered in our Andover, MA office to address DRC's approach to future business development. This summit was an important step in establishing relationships between many participants who were new to DRC and some who were also new to their positions. The purpose was to discuss:

Information Sharing-Accounts, Solutions, Roles
Expectation Sharing- Progress, Future
Team Building- Training, Language, Purpose
Trust Building- Open, Questioning, Sharing

Finley Foster, Senior Vice President and General Manager of Business Development, said about the event:

*"This meeting allowed us, for the first time, to share the vision of how our vertically focused accounts and account managers, might work in a team with our horizontally focused profit and loss units, and how that team might support one another. It gave us a forum to learn and understand not only who the individual team members are, but what we are trying to sell, and where. It will be imperative that we ACT on these beginnings and continue to build relationships that will last, and support our achievement of building a 'world class BD team' that demonstrates through our performance that we are world class."*

At the Leadership Team meeting last December, BD presented its team building and business growth plan. Earlier in the year BD began to focus more heavily on processes/solutions and people/skills. Although those efforts are continuing, the BD Summit was the forum for shifting our focus to the next steps:

The DRP also includes two additional and sequential external and more formal processes for resolving disputes that involve the protection of an employee's legal rights. These processes are mediation and binding Arbitration. These processes are only available to employees if their dispute involves a legally protected right. This means that only claims involving issues governed by state or federal laws, such as protection against age, race or sex discrimination, or protection against sexual harassment can advance to Mediation and then, if necessary, to Arbitration.

The DRP does not limit or change any of your substantive legal rights, but it does require that that you seek resolution of such rights and complaints by following the procedures of the program. The arbitration process provides the same resolutions as can be obtained through the court system, but with less cost and fewer complications for all parties.

You are encouraged to review the DRP description and become familiar with how the DRP works, if you have not already done so. The complete DRP and its description and rules can be found on DRC's Intranet. DRC believes that the DRP will directly benefit all of our employees. If you have questions about the DRP or need further information, please contact your HR Representative, or email askdrp@drc.com

## Recent Wins!
### National Navy Medical Center's Navy Central HIV Program (NCHP)

DRC recently won a one-year contract with four option years worth $4.8 million to support the National Navy Medical Center's Navy Central HIV Progra (NCHP). DRC will provide network and database administration, system secu rity and other information technology services to support and maintain the Navy's HIV Management System (HMS).

The HMS supports clinical and patient management at field, hospital and branch clinical locations worldwide, and processes approximately 10,000 patie records each day. Additionally, DRC is responsible for ensuring the interoper-ability of HMS with the Navy's Composite Health Care System (CHCS) and SNAP Automated Medical System (SAMS), as well as the Department of Defense's (DoD) Theater Medicine Information Program (TMIP) and Headquarter level activities.

Ellen Vizzini, the Capture Manager for this effort, expended a great amount of time interviewing the lead developer for the NCHP project. From these inter views, Ellen was able to determine NCHP's current staffing requirements and also firmly grasp their daily project activities. As a result of these efforts, Ellen developed a winning capture plan.

### U.S. Army's Combined Arms Center, Collective Training Division

DRC also won a $2.3 million contract with the U.S. Army's Combined Arms Center, Collective Training Division in Fort Leavenworth, KS to provide training support to U.S. Army.

The contract includes optional tasks during the eight-month base period and two one-year renewal options. DRC estimates revenue for the initial base period to be approximately $400,000. DRC will provide training management support and quality control and analysis, and it will coordinate joint, collectiv and selected individual tasks.

This contract win can be attributed to three factors: the strong reputation of o Ft. Leavenworth field office; lessons-learned from past Combined Arms Cente (CAC) proposals; and a proposal that leveraged relevant past and present performance. DRC has been present at Ft. Leavenworth since the mid-90's, has seen steady growth in recent years under site manager Britt Bray, and has a excellent local reputation for contract performance. Based on lessons-learned