UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH SKIRCHAK AND BARRY ALDRICH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>     Plaintiffs,<br><br>v.<br><br>DYNAMICS RESEARCH CORPORATION, A Massachusetts corporation,<br><br>     Defendant. | Civil Action No.:  05-11362 MEL |

**DYNAMICS RESEARCH CORPORATION'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COMPLAINT AND COMPEL PLAINTIFFS' COMPLIANCE WITH THE DISPUTE RESOLUTION PROGRAM**

Dynamics Research Corporation ("DRC") submits this Reply Memorandum in Further Support of its Motion to Dismiss Complaint and Compel Plaintiffs' Compliance with the Dispute Resolution Program (the "Program").  The Plaintiffs assented to a valid agreement with DRC, which now requires both Plaintiffs (as well as DRC) to adjudicate any claims (including the instant claims) using the Program's procedures.  As further discussed below, the Plaintiffs' opposition brief failed to identify any legal principle or precedent which excuses the Plaintiffs' contractual obligations under the Program.  Moreover, based on the undisputed facts, including the Plaintiffs' own averments in their affidavits, it is undisputed that both plaintiffs had actual notice of the Program.  Pursuant to the Federal Arbitration Act, the Court must dismiss the

Complaint and order the Plaintiffs to comply with their contractual obligation to adjudicate their claims in accordance with the terms of the Program.

## Overview

As detailed in Defendant's Memorandum in Support of its Motion to Dismiss and Compel (the "Support Memo"), an individual employee must adhere to the terms of an employer's dispute resolution program as long as: 1) the claims fall within the scope of the dispute resolution program; 2) the dispute resolution program is a valid contract under state law; and 3) there is no legally recognized prohibition against waiving court adjudication of those claims. *See Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 26 (1991). Once a court determines that each of those three factors have been met, the court should dismiss the complaint and compel the parties to utilize the dispute resolution program.

The Plaintiffs, in their opposition brief, unsuccessfully refute DRC's position that each of these three requirements are met. First, the Plaintiffs do not dispute at all that the claims alleged in the Complaint (FLSA and Massachusetts Wage Act violations) fall within the scope of the dispute resolution program. As a result, the first consideration was unopposed and should be considered satisfied. The Plaintiffs argue that the second requirement of forming a valid contract under state law was not met. The Plaintiffs assert that the Program is not a valid contract because the Plaintiffs did not receive inquiry notice of the Program's implementation, the Program is written in a confusing manner, and the Program is oppressive. The Plaintiffs' challenge to the contract formation factor on the basis of inquiry notice is irrelevant because *both the Plaintiffs had actual notice of the Program.* As long as the Plaintiffs had actual notice,

which they did, the issue of whether they also had inquiry notice is irrelevant.[1] The Plaintiffs' next assertion, that the Program is written in a confusing manner, has no merit because the Plaintiffs' confusion argument is built entirely upon their misquoting the Program's language. The Program itself is clear, consistent, and easily understood. The Plaintiffs' argument that the Program is oppressive fails because the Plaintiffs misunderstand and misapply the First Circuit test for oppressiveness in contractual formation; under the correct test, the Program is clearly not oppressive. Because the Plaintiffs' arguments regarding the second requirement for enforcing a dispute resolution program fail, the second requirement for enforcing a dispute resolution program (that it is a valid contract) is satisfied.

The Plaintiffs' arguments opposing the third requirement for enforcing a dispute resolution program (that there is no prohibition on waiving access to the court system for adjudication of a particular claim) are equally flawed. The Plaintiffs argue, unpersuasively and without citing any controlling authority, that collective action rights and the FLSA right to a judicial forum may not be waived. To the contrary, case law establishes that collective action rights may be waived and significant circuit case law establishes that individual employees may waive their rights to an FLSA judicial forum in favor of arbitration. Because the Plaintiffs' opposition arguments regarding the third requirement fail, the third requirement for enforcing a dispute resolution program is satisfied.

Thus, all of the Plaintiffs' opposition arguments fail and, accordingly, the Complaint should be dismissed in its entirety and the Plaintiffs should be ordered to comply with the Program.

---

[1] Even if the Court were to perform an inquiry notice analysis, it is verifiably clear that the Plaintiffs, and all DRC employees, received ample notice that the Program was being implemented and of its terms. The Court is referred to the Support Memo for a detailed explanation of all the ways in which DRC informed its employees about the new Program. See pp. 5-7 of the Support Memo.

I.   **The Plaintiffs Entered Into a Valid Contract to Comply with the Program's Requirements.**

The Plaintiffs do not dispute the validity of the contract they entered into with DRC, except for two narrow arguments. The Plaintiffs claim that they did not receive sufficient inquiry notice regarding the Program to form a contract and that certain language within the Program is so confusing it renders unconscionable their contract with DRC to abide by the Program.

A.   **Both Plaintiffs Had Actual Notice of the Program**.

The Plaintiffs misunderstand the First Circuit and Massachusetts District Court decisions in *Campbell v. General Dynamics Sys. Corp.* 407 F.3d 546 (1st. Cir. 2005); 321 F. Supp. 142 (D. Mass. 2004). The Plaintiffs read those cases to require an employee to have sufficient inquiry notice of an employer's dispute resolution program for a contract to form. To the contrary, *Campbell* stands for the proposition that **absent actual notice** an employer must provide its employees with a minimal level of inquiry notice to fairly put them on notice that a dispute resolution program has been enacted. *Id.* at 548. An employee who receives actual notice of a dispute resolution program is bound by the terms of the program. *Id*. Both the Plaintiffs had actual notice of the Program, and admit to that in their affidavits submitted with the o*pposition brief*.

1.   **Plaintiff Skirchak Had Actual Notice of the Program.**

Plaintiff Joseph Skirchak has admitted receiving both of the e-mails distributed by DRC regarding the Program's mandatory implementation. Skirchak Aff. ¶ 4(e). He further admits to having reviewed the e-mails. Skirchak also does not dispute that he received the two "Concerning You" articles distributed to all DRC employees, which described the Program. Moreover, not only did Skirchak admit actual notice of the Program, he further admitted that he

attempted to utilize Step One of the Program to address the very issues contained within the Complaint.  *Skirchak* Aff. ¶ 5 (Stating that when he attempted to utilize the Program he was directed to the Assistant General Counsel and General Counsel of DRC to discuss his concerns and issues).

### 2.   Plaintiff Aldrich Had Actual Notice of the Program.

Plaintiff Barry Aldrich also had actual notice of the Program.  Mr. Aldrich admitted in his affidavit that he attended Executive Session meetings during which the roll-out of the Program was discussed.  Aldrich Aff. ¶ 4.  Mr. Aldrich even admitted that he "reviewed draft DRP documents and provided comments…"  Aldrich Aff. ¶ 7.  Importantly, Mr. Aldrich participated in the Program when he administered it for a subordinate.  Thus, there is no dispute that the Plaintiffs had actual knowledge of the Program at the time it was implemented and thereafter.

The Plaintiffs' arguments regarding lack of notice, and that the ample notice they received was somehow deficient, are belied by the fact that Mr. Aldrich utilized the Program as a manager a few months after it went into effect.  One of his subordinates, Judith Balestrieri, complained that DRC had discriminated against her on account of an alleged disability.  Her supervisor, Barry Aldrich, in accordance with the procedures of the Program, worked with Ms. Balestrieri in Step 1 of the Program to address her concerns and explained the terms of the Dispute Resolution Program to her.  In an email authored by Mr. Aldrich on July 1, 2004, he wrote:

> "DRC Policy 2-115, Problem Resolution, provides a 3-tier roadmap, through the Dispute Resolution Program, for discussion and hopefully resolution of all such issues.  The Dispute Resolution Program provides for escalation of employee issues through increasing levels of management and ultimately for external mediation and arbitration, if appropriate for any unresolved matters related to a legal right or obligation of the employee or company.  As employees of the company**, we have agreed to follow this policy**

> **and process so that issues can be resolved at the lowest level possible with minimal disruption or expense to either the employee or the company.** [emphasis added]. Please review the attached information on DRC's Problem Resolution Policy and Dispute Resolution Program."

E-mail Authored by Barry Aldrich to Judith Balestrieri dated July 1, 2004 attached to Affidavit of Attorney Carrie J. Campion as Exhibit 1 (Campion Aff."). Thus, it could not be clearer that Mr. Aldrich received notice of the Program, and that he understood that he, and other DRC employees, ("we have agreed…") were required to use the Program to resolve their claims against DRC.

      **3.    The Plaintiffs' Argument that they May Avoid the Program Because they Received Notice After the Effective Date is Without Merit.**

The Plaintiffs' distinction between notice before the effective date of the Program and after the effective date is irrelevant. Massachusetts law holds that an employee's continued employment after learning of a dispute resolution program constitutes an acceptance of the terms of the program and shows an intent to be bound by the program. *Hightower v. GMRI Incorporated*, 272 F.3d 239 (4th Cir. 2001) cited by *Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546 (1st. Cir. 2005); *O'Brien v. New England Telephone & Telegrah Company*, 422 Mass. 686, 688 (1996). Here, it is undisputed that both Plaintiffs had knowledge of the Program and continued their employment well after they learned about the Program. The Plaintiffs' continued employment, long after obtaining actual knowledge of the Program, constitutes acceptance of it and an agreement to be bound by it. Their argument, in any event, belies their own conduct in using the Program long after the implementation, as explained on pages 4 and 5, *supra*, showing that they clearly understood that they and other DRC employees were bound by the terms of the Program.

### 4. Employees Had Adequate Inquiry Notice Regarding the Program.

While it is clear that the Plaintiffs each had actual notice of the Program, and that such actual notice of the Program binds them to comply with the terms of the Program, even if they had not received actual notice, the Program is still enforceable because DRC provided its employees with adequate inquiry notice. *Campbell*, 407 F.3d at 547 (Dispute Resolution Policy enforceable where, despite no actual notice, the employer provided minimally sufficient notice of the contractual nature of the e-mailed policy).

DRC, like most other large companies, has an established procedure for implementing new policies. "Guidance for Writing and Implementing Policies" ("Policy Guide") (Attached Campion Aff. ex. 2).  Contrary to the Plaintiffs' assertions that DRC failed to follow its own procedure when implementing the Program, DRC followed its usual procedure for implementing new policies when it instituted the Program:  it distributed the policy via e-mail and posted it on the Intranet.  DRC went beyond its usual procedure by also distributing articles in the company newsletter which included detailed explanations of the policy; by providing employees with an e-mail address designated to specifically answer questions regarding the new policy; and by providing eight human resources professionals as contact people regarding the policy.

Plaintiffs attempt a strained comparison between the notice DRC gave its employees regarding the Program, and General Dynamics' bare bones notice to its employees, as described in *Campbell v. General Dynamics*.  Unlike General Dynamics, DRC has a history and established procedure for disseminating new policies via e-mail and the Intranet.  And unlike the employees in *General Dynamics*, Plaintiffs here had **actual notice** of the Program, as supervisors who were responsible for knowing and enforcing the Program.  They each received two e-mails,

sent with a "high importance" demarcation, which explained the Program[2], received a newsletter detailing the Program, were alerted to eight human resources professionals that could answer questions, and received a dedicated e-mail address available for Program related questions. DRC's notice to its employees was thus substantially greater than the notice given by General Dynamics to its employees.

It is clear that the Plaintiffs had actual and inquiry notice regarding the Program. As a result, a contract was formed between the Plaintiffs and DRC wherein both were bound to adjudicate any claims through the Program, and not before this Court.

**B.      The Program is Not Oppressive and, Therefore, Not Unconscionable.**

The Program is not oppressive. Plaintiffs incorrectly cite the test for a contract's oppressive nature as delineated in *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc.*. 170 F.3d 1 (1st Cir. 1999). As a result, their oppressiveness argument fails.

The Plaintiffs incorrectly assert that *Rosenberg* holds that arbitration agreements are unenforceable on grounds of unconscionability if the employee can show a lack of meaningful choice about whether or not to accept the agreement and that the agreement was so one-sided it was oppressive. *opposition brief*, p. 13. The Plaintiffs then apply their misunderstood holding of *Rosenberg* (the two part test requiring lack of meaningful choice and one-sidedness) and cite a plethora of California and Ninth Circuit case law in support of their analysis of the case at bar.

---

[2]  Despite Mr. Skirchak's averment that he did not receive the November 14, 2003 e-mail, he was, in fact, on the distribution list. *See* e-mail attached to Campion Aff. Ex. 3 dated November 14, 2003 from John Wilkinson to, *inter alia*, Joseph Skirchak and Barry Aldrich. That e-mail was sent with a "high importance" flag, and read as follows: "Please read the letter and plan document attached thoroughly and thoughtfully. Your involvement in the launch of this new policy/practice is vital to its success." Attached to the e-mail was a memorandum that began, "This is to inform you that effective December 1, 2003, DRC's existing Problem Resolution Policy will expand into a mandatory multi-step Dispute Resolution Program (DRP), which is attached for your review."

The second email, dated November 25, 2003 was entitled, "Dispute Resolution Program," and the body read, "Please read the three attachments carefully and thoroughly. The first is a memo describing our new Dispute Resolution Program. The second is the DRC policy that covers the process for internal problem resolution. The third is the actual plan document." *See* e-mail attached to Campion Aff. Ex. 4.

Interestingly, what the Plaintiffs do not expand upon, is that in *Rosenberg*, the First Circuit provided further guidance regarding the test for unconscionability, explaining the two-part test the Plaintiffs' erroneously applied in this case. *Id*. at 17.  In *Rosenberg,* after mentioning the two-part test, the Court cites a variety of sources to explain just how to apply this two-part test, finally citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), and stating that "Absent a showing of *fraud* or *oppressive conduct*…the contract is not unenforceable on these (unconscionability) grounds." *Rosenberg*, 170 F.3d at 17 (emphasis and parenthetical added). Thus, the ultimate test set forth by the First Circuit is not the test the Plaintiffs misapply, but rather, a far more rigid standard:  the employee must show that the employer engaged in fraudulent or oppressive conduct *Id.*

The First Circuit also states that the test for unconscionability "must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise." *Id*. quoting *Waters v. Min. Ltd.*, 412 Mass. 64, 68 (Mass. 1992). Thus, the Plaintiffs' attempts to apply Ninth Circuit law here as a blanket rule that class action prohibitions are *per se* unconscionable is misplaced and contrary to the First Circuit's guidance that unconscionability must be determined on a "case-by-case basis." *Id.*

There is simply no evidence suggesting that DRC acted fraudulently or oppressively when instituting and informing its employees about the Program or that enforcement of the Program would cause employees to be oppressed or unfairly surprised.  How can one be "oppressed" when one is receiving every substantive legal right afforded under the law?  Further there can be no reasonable claim of "unfair surprise" because DRC notified its employees of the new Program in accordance with its Guidance for Writing and Implementing Policies Procedure. In instituting the Program, DRC, through 1) the emails explaining the Program, 2) the cover

memorandum introducing the Program, 3) the detailed explanation of the Program, 4) the articles in *Concerning You*, and 4) the terms of the Program itself, clearly conveyed the details of the Program to all its employees.  The Question and Answer section of *Concerning You* explained to employees that if an employee filed a lawsuit, DRC would ask the judge to dismiss the case because the employee was bound by the Program.  There is no evidence that DRC acted fraudulently by misleading or tricking its employees into agreeing to the terms of the Program; DRC is now simply trying to enforce those terms, exactly as they are written, and exactly as agreed to by the Plaintiffs.

The Plaintiffs cannot credibly make an unconscionability argument.  Mr. Aldrich, given his own participation in the Program with one of his subordinates, is particularly unable to argue unconscionability.  In his email, Mr. Aldrich extolled the benefits of the Program for DRC employees.  Given his own views of the Program and its many benefits for employees, Mr. Aldrich simply cannot now be allowed to credibly argue that the Program is unconscionably oppressive.

        **C.**        **The Program is Not Confusing or Contradictory.**

The Plaintiffs' assertion that the Program is confusing and contradictory is baseless and a product of their repeated mischaracterizations of the Program.  The notice DRC sent to all employees introducing the Program, which both Plaintiffs received, clearly states that "[t]he program does not limit or change any *substantive* legal rights of our employees, but it does require that you seek resolution of such rights and complaints by following the *procedures* of the program." LeBlanc Aff., Ex. 2 (emphasis added).  Further, the Program itself clearly distinguishes between substantive legal rights (which are not affected by the Program) and procedural rights (which are impacted by the Program), informing employees that:

> [t]he Program creates an exclusive *procedural* mechanism for the final resolution of all disputes…" but that the Program "is not intended either to abridge or enlarge *substantive* rights available under applicable law." LeBlanc Aff., Ex. 3, p.16 (emphasis added).

The Program then explicitly states that the arbitrator "shall have no jurisdiction to grant class relief…" *Id*., p.28. Then, in the same paragraph, the Program states, "[t]he arbitrator shall not have the authority to either abridge or enlarge substantive rights available under existing law." *Id*.

Despite the Program's clear distinction between procedural and substantive rights, the Plaintiffs attempt to blur this distinction by consolidating substantive and procedural rights into one, all-encompassing term, "employee rights," and by claiming that the Program is contradictory because it impacts "employees' rights," when, in fact, it does not. (*See opposition brief*, pp. 11-13). The Plaintiffs' clever attempt to confuse the issue cannot withstand an analysis of the actual language used in the Program. Indeed, their attempt to confuse the issue reflects their understanding that the Program itself is not confusing.

The Plaintiffs attempt to blur the clear distinction in the Program between substantive and procedural rights. The Plaintiffs argue that the Program claims not to impact substantive rights, yet does affect substantive rights because it waives rights to a collective action. Unfortunately for the Plaintiffs, it is well settled law that pursuing a claim as a class action is not a substantive right, but rather a procedural right. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 331-2 (1980) (stating "the right of a litigant to employ Rule 23 (of the Federal Rules of Civil Procedure) is a procedural right only, ancillary to the litigation of substantive claims" and "…the procedural device of a Rule 23 class action…"); *Glover v. McFaddin*, 81 F. Supp. 426, 428 (E.D. Tex. 1948) ("I do not think that Rule 23, which is wholly procedural, has the effect of changing such substantive law"); *Sperry Prods., Inc. v. Ass'n of American R.R.s*, 44 F. Supp. 660, 664

(S.D.N.Y. 1942) *rev'd on other grounds* ("Rule 23, F.R.C.P. which applies to "class actions" is only a rule of procedure for the enforcement of substantive rights"); *Carpenter v. Suffolk Franklin Sav. Bank*, 370 Mass. 314, 322 (1976) (affirming Superior Court's denial of a request to certify a class and stating that the Superior Court's ruling was based in part on the finding that there were "alternative *procedural* devices and methods" available other than class actions) (emphasis added).

The Program's language is neither contradictory nor confusing. Rather, it clearly supports the promises made to employees: employees' **substantive** rights are not impacted by the Program (the Program provides each individual employee with the same protections and remedies available in the court system or other adjudicatory body), but the **procedures** available to employees for adjudicating those substantive rights have been altered by the Program. Plaintiffs' argument that the Program is unconscionable because it is confusing and contradictory is without merit.

> II. **Case Law Establishes that FLSA Claims Can Be Arbitrated, and that Collective Action Rights May Be Waived.**
>
> A. **The Program's Waiver of Collective Action Rights is Not Unconscionable.**

Again, in Plaintiffs' zeal to avoid dismissal of their Complaint, their legal analysis misses the mark. Plaintiffs assert that the waiver of collective action rights is unconscionable because it is in the public's interest to allow collective actions. Plaintiffs assert that the FLSA and Massachusetts wage law allow for class actions so that plaintiffs' attorneys may act as private attorneys' general in vindicating the rights of aggrieved employees unwilling or financially unable to prosecute their claims individually.[3] Unfortunately for the Plaintiffs, this area of law is

---

[3]   Plaintiffs Skirchak and Aldrich who both earned well over $100,000 per year, are certainly not the plaintiffs to claim that they would be financially unable to litigate these matters but for their ability to bring a collective
*(Footnote continued on next page)*

settled.  Case law has already established that FLSA collective actions may be waived.  *Adkins v. Labor Ready, Inc*., 303 F.3d 496, 503 (4th Cir. 2002) (Enforcing arbitration provision's prohibition on class actions); *See Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) ("having found the Arbitration Agreement enforceable, we must give full force to its terms . . . the Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing class action arbitration; so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class action basis").  In fact, the Plaintiffs do not refute this line of cases, originally raised in Defendant's Motion to Dismiss and Compel, nor do they attempt to distinguish this case from the cases cited in the Support Memo.  Indeed, they apparently want the Court to ignore this precedent.

### B.  FLSA Rights are Properly Subject to the Program.

FLSA rights are arbitrable.  The Plaintiffs nearly concede the point in their *opposition brief*.  The Plaintiffs do not even attempt to distinguish their case from the long line of circuit court cases holding that FLSA claims may be arbitrated.  Defendant's brief cited *Kuehner v. Dickinson & Co*., 84 F.3d 316, 319-20 (9th Cir. 1996) (finding no evidence that Congress intended to preclude arbitration of FLSA claims in the text or legislative history of the statute); *Adkins,* 303 F.3d at 506 (holding that FLSA claims are arbitrable); and *Floss v. Ryan's Family Steak Houses*, 6 Wage & Hour Cas. 2d (BNA) 17 (6th Cir. 2000) (Noting that FLSA claims could be compelled to arbitration pursuant to an arbitration agreement because broader public policies furthered by such a claim are not hindered when that claim is resolved through

---

*(Footnote continued from previous page)*
    action.  Moreover, the DRP provides for $2,500.00 in attorneys' fees for any employee who adjudicates a legal issue before an arbitrator under the Program.  In addition, the Program provides that DRC pays the arbitrator's fees.

arbitration). The Plaintiffs choose to not challenge DRC's position on this point because of this clear case law.

The Plaintiffs simply restate the rationale in *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981), without explaining why the Plaintiffs, individual employees subject to an individual contract (not a collective bargaining agreement), fit within the holding in *Barrentine*. 450 U.S. 728 (1981). Jurisprudence subsequent to the 1980 decision in *Barrentine* makes clear that the Federal Circuit Courts recognize the distinction between waivers contained in collectively bargained agreements and individual employee agreements. *See* Support Memo at pp. 15-16. Since the Plaintiffs have individually waived their FLSA rights, they must now comply with the Program.

      **C.**      **The Court Should Enforce the Program in its Entirety, and Not Sever the Collective Action Restriction.**

The Program is a valid contract to adjudicate claims in a forum other than this Court. The Court should not sever any provision of the Program but should give full force to all of its terms. *See Livingston*, 339 F.3d at 559 ("having found the Arbitration Agreement enforceable, we must give full force to its terms . . . the Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing class action arbitration; so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class action basis"). *See* Support Memo at p. 17.

## Conclusion

The Program was implemented to facilitate quick, efficient, and cost-effective adjudications of employee claims. In Plaintiff Aldrich's own words, "**As employees of the company, we have agreed to follow this policy and process so that issues can be resolved at the lowest level possible with minimal disruption or expense to either the employee or the**

**company."** *See Aldrich* e-mail dated July 1, 2004, [emphasis added]. The Plaintiffs entered into an enforceable contract to utilize the Program. This Court should dismiss their Complaint in its entirety and order the Plaintiffs to comply with all of the terms of the Program.

    Respectfully submitted,

    DYNAMICS RESEARCH CORPORATION

    By its attorneys,

    /s/ Carrie J. Campion
    David Rosenthal, BBO. No. 429260
    Carrie J. Campion, BBO No. 656451
    Jeffrey B. Gilbreth, BBO No. 661496
    NIXON PEABODY LLP
    100 Summer Street
    Boston, MA 02110-1832
    (617) 345-1000

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney of record for each party by hand on September 19, 2005.

    /s/ Carrie J. Campion