**PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.**
Attorneys at Law
18 Tremont Street, Suite 500
Boston, MA 02108
-----------
Telephone (617) 367-7200
Fax (617) 367-4820

Warren H. Pyle
David B. Rome
Harold L. Lichten*
Betsy Ehrenberg
Shannon Liss-Riordan**
Terence E. Coles
Katherine D. Shea
Alfred Gordon

Nicole Horberg Decter**
Rebecca G. Pontikes
Leah M. Barrault
Stephen Young
David Conforto
Hillary Schwab**

*Also admitted in Maine
**Also admitted in New York

Tod A. Cochran
OF COUNSEL

April 5, 2006

***BY ELECTRONIC FILING***
The Honorable Morris E. Lasker
United States District Court
One Courthouse Way
Boston, MA 02210

RE: Joseph Skirchak et al. v. Dynamics Research Corporation
USDC Civil Action No. 05-11362 MEL

Dear Judge Lasker:

I am writing to bring to the Court's attention another recent decision that just came to counsel's attention in which a court held that a class action waiver in an adhesive arbitration clause is unconscionable. In *Thibodeau v. Comcast*, 2006 WL 416863 (Pa.Com.Pl. Jan. 27, 2006) (attached hereto), the court, after surveying federal as well as state law regarding the purpose of class actions and the advantages of arbitration, affirmed a decision invalidating a class action waiver in an arbitration agreement. Noting that the preclusion of class actions would effectively allow the defendant to evade the law with little fear of ever being challenged in such a way as to cause it to change its potentially unlawful business practices, the court held that "[i]t is clearly contrary to public policy to immunize large corporations from liability by allowing them to preclude all class action litigation or in arbitration." *Id.* at *9. Although the case addressed a putative consumer class action, the reasoning applies with equal force to an employment class action, as argued at the hearing in October, given the unlikeliness of employees bringing individual wage claims against their current or former employers (due to fear of reprisal in the industry, costs, etc.) and the small impact such individual claims would have.

74

We look forward to your ruling on the pending motion and the ruling on the timeframe for the tolling of the statute of limitations for potential opt-in plaintiffs should this case remain in court.

Thank you very much for your attention to this matter.

Sincerely,

Shannon Liss-Riordan

cc: David S. Rosenthal, Esq.
Elayne N. Alanis, Esq.

Only the Westlaw citation is currently available.

Court of Common Pleas of Pennsylvania, Philadelphia County.
THIBODEAU
v.
COMCAST
AFROILAN
v.
AT & T WIRELESS, et al.
No. 4526 MARCH TERM 2004, 0469 AUG. TERM 2002.

Jan. 27, 2006.

Background: Customer brought class action lawsuit against cellular phone company and manufacturer, claiming that phone contained a locking device which prevented him from using the phone on other cellular networks. Manufacturer and phone company filed preliminary objections, asserting that phone's "Welcome Guide" prohibited the class action claims because it required all dissatisfied customers to arbitrate all claims individually. The Court of Common Pleas, Philadelphia County, dismissed three counts of the complaint and overruled the remainder of the objections, and manufacturer and phone company appealed. In a separate action, a customer brought a class action lawsuit against a cable company, arguing that the company overcharged for cable converter boxes and remote control devices. Cable company filed preliminary objections, arguing that cable company's customer agreement, which included a mandatory individual arbitration clause and a class action preclusion clause, barred the class action lawsuit. The Court of Common Pleas, Philadelphia County, denied the objections, and cable company appealed.

Holding: The Court of Common Pleas, March Term 2004 No. 4526 and August Term 2002 No. 0469, Bernstein, J., held that agreement provisions which explicitly precluded class action arbitration were contrary to public policy and therefore invalid.

Affirmed.

Contracts 🔑1

95k1

Contracts 🔑108(2)
95k108(2)

Contracts of adhesion between cellular phone companies and customer, and between cable company and customer, which explicitly precluded class action arbitration, were contrary to public policy and therefore invalid.

BERNSTEIN, J.

*1 "The law in its majesty prohibits rich and poor alike from sleeping under bridges."--Anatole France

*AMENDED OPINION*

Defendants in *Thibodeau v. Comcast,* April Term, 2003 No. 4526, and *Afroilan v. AT & T Wireless,* August Term, 2002 No. 0469, raise the issue of whether class actions may be precluded in consumer contracts of adhesion. In the interest of judicial economy, this Court addresses this issue in one opinion.

*Afroilan v. AT & T Wireless*

On August 7, 2002, Brandon Beckmeyer filed this class action lawsuit against AT & T Wireless and Panasonic Corporation, alleging that his Panasonic cellular phone contained a locking device which prevented him from using it on networks other than AT & T. On March 4, 2005, this Court granted Lorena Afroilan's motion to replace Mr. Beckermeyer as class representative, and ordered her to file an amended complaint raising personal factual allegations. Ms. Afroilan complied with this Court's order, filed a Fifth Amended Complaint on March 24, 2005, and was substituted as class representative.

Defendants filed preliminary objections to Ms. Afroilan's Fifth Amended Complaint, asserting that her class action claims were barred by the phone's "Welcome Guide," given to Ms. Afroilan with her phone after purchase. The "Welcome Guide" required all dissatisfied customers to arbitrate all claims individually, and precluded class action litigation. On July 12, 2005, this Court dismissed three counts of the complaint, finding that The Honorable C. Darnell Jones had previously decided these issues, and overruled the remainder of the defendants' objections.

Defendants Panasonic and AT & T Wireless now appeal this Court's July 12, 2005 order. Specifically, defendants allege this Court abused its discretion in overruling defendant's first objection which sought to preclude class action litigation by compelling

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

individual arbitration.

*Thibodeau v. Comcast*

On March, 19, 2004, plaintiff Philip Thibodeau filed this class action lawsuit against Comcast Corporation, alleging that his cable television provider overcharged its subscribers for cable converter boxes and remote control devices. On April 23, 2004, Mr. Thibodeau's case was removed to the U.S. District Court for the Eastern District of Pennsylvania. On October 25, 2004, his case was remanded to the Court of Common Pleas. On December 17, 2004, defendants filed a motion to dismiss all class allegations and compel individual arbitration. On December 23, 2004, defendants filed Preliminary Objections to plaintiff's complaint. In their preliminary objections, defendants argued that Comcast's customer agreement, which included a mandatory individual arbitration clause and a class action preclusion clause, barred plaintiffs from pursuing a class action lawsuit. On June 10, 2005, this Court denied Comcast's objections to plaintiff's class action allegations and representative claims, and their motions to compel individual arbitration. Defendants now appeal this Court's order denying their motions to preclude class action litigation by compelling individual arbitration.

*Afroilan v. AT & T Wireless*

***2** Plaintiff Lorena Afroilan purchased a Panasonic cell phone which contained a locking device which prevented its use on any network other than AT & T. In her complaint, Ms. Afroilan claimed that the defendants failed to disclose the presence of the locking device in the phone's accompanying documentation, and failed to inform customers that the phone would only work with AT & T's service, even though the phone is otherwise compatible with other networks. When Ms. Afroilan became dissatisfied with AT & T's cellular service and wanted to switch cellular phone providers, she could not use the phone on another network because of the locking device.

Ms. Afroilan was first notified of binding, mandatory individual arbitration and the bar of class action litigation in the AT & T Wireless "Welcome Guide." The "Welcome Guide" is a document not seen before purchase, but is included with the phone's packaging. On the 24th page of the 25 page document, the pamphlet reads: [FN1]

FN1. The relevant sections of the AT & T Wireless customer agreement are reproduced precisely as attached to Defendant's Preliminary Objections of Defendant AT & T Wireless Services, Inc. to Plaintiff's Fifth Amended Class Action Complaint, August Term, 2002 No. 0469.

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE

*Thibodeau v. Comcast*

Plaintiff Philip Thibodeau has been a Comcast cable television subscriber since 1983. As part of his subscription, Mr. Thibodeau rented two cable converter boxes and two remote controls which he believed were necessary to receive cable television. In his complaint, Mr. Thibodeau alleged that Comcast failed to inform customers that basic-level cable, "Expanded Basic" (also called "Standard") cable, and other non-premium programming could be viewed without renting these converter boxes. Mr. Thibodeau also contended that Comcast failed to inform customers that it was unnecessary to rent remote controls, because third-party remote controls were available for all levels of cable service. Comcast continued to charge Mr. Thibodeau monthly rental fees for the unnecessary converter boxes and remote controls. Mr. Thibodeau alleged that this practice violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, and constituted common law fraud, negligent misrepresentation, and unjust enrichment.

Mr. Thibodeau was originally a customer of AT & T Broadband. In 2002, Comcast acquired AT & T Broadband. After the acquisition, AT & T customers were mailed a new Comcast customer agreement which contained new terms unilaterally imposed by Comcast. The new customer agreement mandated individual arbitration and precluded class actions by aggrieved customers. The old AT & T and new Comcast agreements were visually identical in terms of style, font size, type and layout. The only aesthetic difference between them was a small icon on the first page. The image was originally the AT & T logo which was replaced by the Comcast logo.

There were, however, significant substantive differences. On the 8th page of the 10 page document, the Comcast agreement reads: [FN2]

FN2. The relevant sections of the Comcast customer agreement are reproduced precisely as attached to Defendant's Petition to Compel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Arbitration in *Thibodeau v. Comcast,* March Term, 2004 No. 4526.

10. MANDATORY AND BINDING ARBITRATION
IF WE ARE UNABLE TO RESOLVE INFORMALLY ANY CLAIM OR DISPUTE RELATED TO OR ARISING OUT OF THIS AGREEMENT OR THE SERVICES PROVIDED, WE HAVE AGREED TO BINDING ARBITRATION EXCEPT AS PROVIDED BELOW, YOU MUST CONTACT U.S. WITHIN ONE (1) TEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE (EXCEPT FOR BILLING DISPUTES WHICH ARE SUBJECT TO PARAGRAPH 3. RATES AND CHARGES ABOVE), OR YOU WAIVE THE RIGHT TO PURSUE A CLAIM BASED UPON SUCH EVENT, FACTS OR DISPUTE.
*3 THERE SHALL BE NO PUGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL (SUCH AS A PRIVATE ATTORNEY GENERAL). OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED UNLESS YOUR STATES LAWS PROVIDE OTHERWISE.

Business regularly uses binding arbitration as a mechanism for alternate dispute resolution. [FN3] The prevalence of arbitration is evidenced by the ever-increasing number of private arbitrations conducted annually, in the many excellent firms doing arbitration and other forms of ADR, and in the proliferation of mandatory binding arbitration clauses in consumer and business contracts. In virtually every jurisdiction in the United States, the judiciary encourages arbitration as an alternative to the potential delay, costs and unpredictability of litigation.

FN3. Murray S. Levin, *The Role of Substantive Law in Business Arbitration and Importance of Volition,* 35 Am. Bus. L.J. 105, 105 (Fall 1997).

Arbitration usually provides a quicker, less expensive, and always a more private alternative to traditional litigation. Arbitration typically involves simplified procedures, a less formal setting, and often more technically experienced and knowledgeable decision-makers. Although arbitration is similar to traditional litigation in that it requires the presentation of proofs, arguments and neutral decision-making, parties can often tailor arbitration processes to the dispute involved. The less formal nature of arbitration proceedings can minimize hostility between parties, thus facilitating ongoing and future business relationships. Arbitration is justifiably favored by the law.

The organized bar officially recognized Alternative Dispute Resolution thirty years ago, when in 1976 the American Bar Association established a Special Committee on Minor Disputes, now called the ABA Section of Dispute Resolution. [FN4] Virtually all state and federal bar associations now have ADR committees. The United States Supreme Court views arbitration as a viable alternative to traditional litigation. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the United States Supreme Court held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Pennsylvania law also encourages arbitration. As early as 1968, the Pennsylvania Supreme Court stated that "[Pennsylvania] statutes encourage arbitration and with our dockets crowded and in some jurisdictions con[g]ested arbitration is favored by the courts." [FN5] Arbitration is considered a "necessary tool for relieving crowded dockets and ensuring the swift and orderly settlement of disputes." [FN6]

FN4. The ABA Section of Dispute Resolution can be found on the internet at http://www.abanet.org/dispute/home.html.

FN5. *Mendelson v. Shrager,* 432 Pa. 383, 248 A.2d 234, 235 (Pa.1968).

FN6. *Langston v. Nat'l Media Corp.,* 420 Pa.Super. 611, 617 A.2d 354 (Pa.Super.1992).

Pennsylvania law also regulates class action consumer litigation and encourages class action arbitration. In *Dickler v. Shearson Lehman Hutton,* 408 Pa.Super. 286, 596 A.2d 860, 866 (Pa.Super.1991), the Superior Court affirmed Pennsylvania's longstanding policy favoring classwide arbitration. Defendant Shearson Lehman's customer agreement was silent as to whether plaintiffs could pursue a class arbitration. Holding that explicit language permitting class action arbitrations was unnecessary, the Superior Court enforced the agreement's "any controversy" language:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***4** "Given the three paths down which this litigation can be directed-- compelled individual arbitration, class action in a court of law, or compelled classwide arbitration--the last choice best serves the dual interest of respecting and advancing contractually agreed upon arbitration agreements while allowing individuals who believe they have been wronged to have an economically feasible route to get injunctive relief from large institutions employing adhesion contracts."

The Superior Court reasoned that if the agreement *sub silentio* compelled individual arbitration and precluded class actions, the effect was against public policy because it would force consumers:

"... already straghtjacketed by an industry-wide practice of arbitration agreements to fight alleged improprieties at an exorbitant cost. Individual arbitration would be a small deterrent to companies certain that few proceedings will be instituted against them. Because the principles of *res judicata* and collateral estoppel are not applicable to arbitration proceedings, each plaintiff would be forced to fully litigate his complaint."

The Superior Court held that in Pennsylvania, consumer class action litigation is of such public importance that public policy considerations allow class action arbitration even if an arbitration agreement does not explicitly so provide. [FN7] Nonetheless, control of class action litigation is also of such public importance that the proper referral to class arbitration occurs only after a Court determines whether certification is proper.

FN7. Federal court decisions have held contra, precluding class action arbitration unless specifically provided in the agreement. *See Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269 (7th Cir.1995); *Gray v. Conseco, Inc.*, 2001 U.S. Dist. LEXIS 21696 (D.Cal.2001); *Bischoff v. DirecTV*, 180 F.Supp.2d at 1108.

In the cases presently before this Court, the agreements explicitly preclude class action arbitration, and the issue presented is whether such preclusion is permissible under Pennsylvania law. Before addressing this question directly, the Court must dispose of the claim that Federal law preempts any Pennsylvania public policy prohibiting the exclusion of consumer class litigation. The interrelationship and compatibility between Federal and Pennsylvania law regarding arbitration was fully explained in *Lytle v. Citifinancial Services,* 810 A.2d 643, 656-657 (Pa.Super.2002):

"... Pennsylvania law on the enforceability of agreements to arbitrate is in accord with federal law and requires enforcement of arbitration provisions as written, permitting such provisions to be set aside only for generally recognized contract defenses such as duress, illegality, fraud, unconscionability. *See Carll v. The Terminix International Company, L. P.,* 2002 PA Super 44, 793 A.2d 921 (Pa.Super.2002). Since there is no appreciable difference between Pennsylvania law and the provisions of the FAA on the enforceability of agreements to arbitrate, we will presume, solely for purposes of this appeal, that the contract between the parties is one involving interstate commerce, thus rendering the FAA controlling upon the issue of the enforceability of the arbitration agreement.

The standard of review which the United States Supreme Court has prescribed for a state court determination of whether there is a valid agreement to arbitrate has been keenly described as directing that a state court

***5** 'must look to the body of federal arbitration law,' *Bhatia v. [Johnston],* 818 F.2d 418, 421, which recognizes that 'the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration, with doubts regarding the scope of the agreement resolved in favor of arbitration. id. (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765). As to the more specific issue of whether there is a valid agreement to arbitrate, " 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts'," *Webb v. Investacorp,* 89 F.3d 252, 257 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)), but in doing so, must give "due regard ... to the federal policy favoring arbitration," *Id.* (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1253-54, 103 L.Ed.2d 488 (1989); *McKee v. Home Buyers Warranty Corp. II,* 45 F.3d 981, 984 (5th Cir.1995) ("In construing an arbitration agreement within the scope of the FAA, 'as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability'.") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). At the same time, however, the court may grant relief to a party opposing arbitration where he presents "well

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract'," *Mitsubishi Motors,* 473 U.S. at 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (quoting 9 U.S.C. § 2); see also *Bhatia,* 818 F.2d at 421 (court should at all times "remain keenly attuned to well-grounded claims that 'the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract." " ' (quoting 9 U.S.C. § 2); *Rhode v. E & T Investments, Inc.,* 6 F.Supp.2d 1322, 1326 (M.D.Ala.1998) ("[Section] 2 'gives States ... methods for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision' both in equity and under principles of contract law." (quoting *Allied-Bruce Terminix v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).'

The *Lytle* opinion continued, quoting Justice Stephen G. Breyer who was writing for the majority of the U.S. Supreme Court in *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995):

"Section 2 [of the FAA] gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit) but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing', directly contrary to the Act's language and Congress' intent."

***6** The *Lytle* court concluded:

"Thus, appellants may avoid being compelled to arbitrate their claims if they produce evidence of such "grounds as exist at law or in equity for the revocation of any contract." 9 U.S. C § 2. "Generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening" the enforcement provisions of the Federal Arbitration Act. *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902, 909 (1996)."

Accordingly, this Court has analyzed the Comcast and AT & T agreements in light of common law contract defenses including unconscionability.

Contracts of adhesion are standardized form contracts presented to consumers without negotiation or any option for modification. In *Robinson v. E.M.C. Insurance,* 785 A.2d 507, 510 (Pa.Super.2001), the Superior Court defined a contract of adhesion as one "prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who has little choice about the terms." The Comcast and AT & T customer agreements received by the plaintiffs and all other class members are clearly contracts of adhesion. They were sent without any opportunity for customers to negotiate and even without any requirement of assent to the mandated individual arbitration and preclusion of class action litigation.

There is nothing *per se* wrong with a contract of adhesion. Not every contract of adhesion contains unconscionable provisions. A contract of adhesion is only unconscionable if it unreasonably favors the drafter. In *Jim Dan, Inc. v. O.M. Scott & Sons Co.,* 735 F.Supp. 1196, 1200, the United States District Court for the Eastern District of Pennsylvania interpreted Pennsylvania State law, holding:

"In determining whether a clause is unconscionable, the court should consider whether, in light of the general commercial background and the commercial needs of a particular trade, the clause is so one-sided that it is unconscionable under the circumstances."

In *Zak v. Prudential Property and Insurance Co.,* 713 A.2d 681 (Pa.Super.1998), the Superior Court found that provisions of an insurance policy, while facially equal, were factually "completely unconscionable." The policy required that any arbitration award under $15,000 was binding on the parties, but either party was entitled to a trial *de novo* if an award was greater than $15,000. Although the provision was facially equal because either party could appeal a large award, the clause was unconscionable because the *effect* of the clause was clearly unequal:

"[The policy] allows the insurance company the unfettered right to a trial whenever an award is made in favor of a claimant or insured while a losing claimant or insured is bound by the award. The clause so clearly favors the insurer over the claimant or insured that it is repugnant to notions of due process, equal protection, justice, and fair play."

***7** The Superior Court found the clause void because unconscionable. The *Zak* decision instructs that even

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

language which appears to be facially neutral can nonetheless be unconscionable if its effect is one-sided.

In *Lytle v. Citifinancial Services,* [FN8] plaintiffs were required to pay unearned finance charges and prepayment penalties when they refinanced their mortgage. The refinancing agreement had a mandatory arbitration clause requiring all controversies over $15,000 to be arbitrated individually, and precluded class litigation or arbitration. On appeal, plaintiffs who had lost below, argued that the arbitration agreement was unconscionable, against public policy, and unenforceable because it effectively, factually reserved the right of access to the courts to the mortagee alone. While remanding the case to the lower court for further factual findings of costs associated with individual arbitration, the Superior Court held mandatory individual arbitration unconscionable when it actually prohibits consumer claims. The court said:

FN8. 810 A.2d 643 (Pa.Super.2002)

"... the reservation by [the defendant] of access to the courts for itself to the exclusion of the consumer creates a presumption of unconscionability, which in the absence of "business realities" that *compel* inclusion of such a provision in an arbitration provision, renders the arbitration provision unconscionable and unenforceable under Pennsylvania law."

The *Lytle* Court held that if the costs associated with arbitrating a single claim effectively deny consumer redress, prohibiting class action litigation or class action arbitration is unconscionable.

Two years later, in *McNulty v. H & R Block,* 843 A.2d 1267, 1268 (Pa.Super.2004), the Superior Court reaffirmed this principle, holding that it was unconscionable to require individual arbitration and preclude class action litigation if the costs of arbitration effectively prevented an individual from pursuing a claim. The court said:

"While there may be a select few who are so incensed by the notion of the e-filing fee they would spend significant time and $50 .00 for the possibility of a $30.00 award, this is a situation where the costs of arbitration, minimal though they may seem, work to preclude the individual presentation of claims."

The court held:

"As applied to the facts of this case, the enforcement of the arbitration provision would work to deny the allegedly injured parties' access to justice and is therefore unconscionable."

The high cost of arbitration compared with the minimal potential value of individual damages individual denied every plaintiff a meaningful remedy. If class action litigation is the only effective remedy, a contract of adhesion cannot preclude such litigation.

Pennsylvania is not the only state which has addressed the preclusion of class action litigation in consumer contracts of adhesion. The California Court of Appeal recently ruled on the identical issue presented in these cases, finding that forced individual arbitration by precluding class actions is so one-sided as to be "blindingly obvious" and violated "fundamental notions of fairness." The plaintiff in *Szetela v. Discover Bank,* 97 Cal. App 4th 1094, 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (2002), challenged the mandatory individual arbitration and class action preclusion provisions of his customer agreement. The court found that because the effect of enforcement agreement was corporate immunity, preclusion of class action litigation was unconscionable:

***8** "This provision is clearly meant to prevent customers, such as Mr. Szetela and those he seeks to represent, from seeking redress for relatively small amounts of money, such as the $29 sought by Mr. Szetela. Fully aware that few customers will go to the time and trouble of suing in small claims court, [the defendant] has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights."

The California court continued:

"The clause is not only harsh and unfair to Discover customers who might be owed a relatively small sum of money, but also serves as a disincentive for Discover to avoid the type of conduct that might lead to class action litigation in the first place. By imposing this clause on its customers, Discover has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies, and that remedies obtained will only pertain to that single customer without collateral estoppel effect. The potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored."

Class actions were created in response to public

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

need. As early as 1854, the United States Supreme Court recognized that the representative nature of class action litigation serves a unique function in our judicial system. In *Smith v. Swormstedt,* 16 How. 288, 303, 14 L.Ed. 942 (1854), the Court wrote:

> "Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court."

Class actions are still of great public importance. Class action lawsuits are an remain the essential vehicle by which consumers may vindicate their lawful rights. The average consumer, having limited and financial resources and time, cannot individually present minor claims in court or in an arbitration. Our justice system resolves this inherent inequality by creating the procedural device which allows consumers to join together and seek redress for claims which would otherwise be impossible to pursue. Both the Federal and Pennsylvania Rules of Civil Procedure delineate specific rules for publicly selected trial court judges to actively manage class action lawsuits through the public judicial system. Accordingly, under Pennsylvania law, the trial court judge remains responsible for all of the key procedural decisions that ensure fairness for named and unnamed plaintiffs in the class, even in a class action removed to class arbitration.

***9** Federal Rule of Civil Procedure 23(g) and Pennsylvania Rule 1709 mandate that trial court judges ensure that the rights of all class members are adequately represented by counsel. Federal Rule 23(c)(2) and Pennsylvania Rule 1712 mandate that trial court judges approve class notification to ensure that absent plaintiffs receive adequate notice of class actions. Federal Rule 23(c)(2) and Pennsylvania Rule 1711 mandate that trial court judges ensure that class members who elect not to participate in the class action understand their rights. Federal Rule 23(e) and Pennsylvania Rule 1714 mandate that trial court judges approve of the terms of any settlement agreement. Federal Rule 23(e) and Pennsylvania Rule 1714 mandate that trial court approval is required before discontinuance. *Lytle v. Citifinancial Services* mandates that state court judges determine the procedural setting within which trial court judges send cases to arbitration.

A fundamental principle of justice is "everyone should have a day in court." The Pennsylvania Constitution, Section 11, proclaims: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law ..." Most consumer complaints involve miniscule claims. No individual consumer possibly could or ever will individually litigate most consumer claims. The cost of lawyers, fees, and expert witnesses makes individual lawsuit or arbitration so completely impractical as to be fairly and properly characterized as impossible.

It is only the class action vehicle which makes small consumer litigation possible. Consumers joining together as a class pool their resources, share the costs and efforts of litigation and make redress possible. Should the law require consumers to litigate or arbitrate individually, defendant corporations are effectively immunized from redress of grievances.

Both the Comcast and AT & T customer agreements attempt to preclude all class action litigation in court or in arbitration, and attempt to mandate that all customers arbitrate all claims as individuals. The Comcast and AT & T customer agreements are contracts of adhesion unilaterally imposed on all consumers. Consumers including Ms. Afroilan and Mr. Thibodeau are subject to every term without choice. Ms. Afroilan was forced to accept every word of all 25 pages of the mass-delivered AT & T customer agreement, or her cellular phone was useless. Mr. Thibodeau was forced to accept every word of all 10 pages of the mass-delivered Comcast customer agreement or have no cable television service whatsoever, since Comcast holds a government-authorized geographic monopoly.

Ms. Afroilan, Mr. Thibodeau and their class members are claiming minimal damages. Ms. Afroilan and each of the class members allege the cellular phones they purchased for $50 are unusable. Mr. Thibodeau and each of his class members allege they were unlawfully overcharged $9.60 per month. Everyone knows that these claims will never be arbitrated on an individual basis, either by the named plaintiffs or by any other of the millions of class members they represent. No individual will expend the time, fees, coasts and or other expenses necessary for individual litigation or individual arbitration for this small potential recovery. If the mandatory

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

individual arbitration and preclusion of class action provisions are valid, Comcast and AT & T are immunized from the challenges brought by Ms. A froilan, Mr. Thibodeau, brought by any class member, or effectively from any minor consumer claims. It is clearly contrary to public policy to immunize large corporations from liability by allowing them preclude all class action litigation or in arbitration.

***10** The preclusion of classwide litigation or claswide arbitration of consumer claims, imposed in a contract of adhesion, is unconscionable and unenforceable. For the reasons set forth above, the decision of the Court should be affirmed.

Not Reported in A.2d, 2006 WL 416863 (Pa.Com.Pl.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.