# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____ )

JOSEPH SKIRCHAK and BARRY L.                    )
ALDRICH, on behalf of themselves and            )
all others similarly situated,                  )          Civil Action No.
                                                )          05-11362-MEL
                                                )
                      Plaintiffs,               )
v.                                              )
                                                )
DYNAMICS RESEARCH CORPORATION,                  )
                                                )
                      Defendant.                )
_____ )

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION FOR RECONSIDERATION

In its decision dated April 6, 2006, this Court properly concluded that the

provision of Defendant DRC's arbitration agreement that bans class actions is

unenforceable and must be stricken from the agreement.  In its motion for

reconsideration of that decision, DRC has offered no valid basis for the Court to

reverse itself.  To the contrary, not only was the Court's decision proper on its

face, it is further supported by the First Circuit's recent decision in *Kristian v.*

*Comcast Corporation*, __ F.3d __, 2006 WL 1028758 (Apr. 20, 2006), in which

the court clarified the standard to be applied in determining whether an arbitration

provision that curtails parties' statutory rights is enforceable and struck down a

class action waiver in an arbitration agreement because it prevented the plaintiffs

from vindicating their statutory rights.

DRC argues that the Court relied on disputed facts in reaching its

decision, that the Court applied the incorrect legal standard to the issue, and that

the Court's decision is not supported by existing precedent.  DRC is incorrect on

all counts.  First, the facts essential to the Court's decision are not disputed, and

the extraneous facts set forth in DRC's reconsideration motion do nothing more

than cloud the straightforward issues in this case.  Second, the Court did

correctly apply the common law unconscionability analysis to the arbitration

agreement.  Moreover, in the weeks since the Court made its decision, the First

Circuit has clarified the standard to be applied to arbitration agreements, making

clear that courts may overturn arbitration agreements that prevent the vindication

of statutory rights even without applying unconscionability principles.  Finally, the

Court's decision to strike the class action waiver is supported by this recent First

Circuit decision, which applied its newly articulated standard to strike down a

class action waiver in an arbitration agreement.

Because the Court got it right the first time, Plaintiffs respectfully request

that the Court deny DRC's motion for reconsideration.

ARGUMENT

**I.    MOTIONS FOR RECONSIDERATION ARE RARELY ALLOWED, AND RECONSIDERATION IS NOT APPROPRIATE HERE.**

It is well settled that "[i]t is rare for this court to allow motions to

reconsider."  *Pye v. Young Women's Christian Ass'n of Western Mass.*, __ F.

Supp. 2d __, 2006 WL 592935, at *1 (D. Mass. Mar. 10, 2006).  A motion for

reconsideration "is not a proper mechanism to advance arguments that should

have been presented before judgment was entered, but were not."  *Storie v.*

*Household Intern., Inc.*, 2005 WL 3728718, at *4 (D. Mass. Sept. 22, 2005).

Instead, a motion for reconsideration should be granted only "if the movant

presents (1) new evidence not previously available; (2) an intervening change in controlling law; or (3) the need to correct a clear error of law or to prevent manifest injustice." *Id.*

Here, there can be no question that the reconsideration standard has not been met. First, the only evidence on which DRC relies in its reconsideration motion concerns events in late 2003 and early 2004, all of which was available to DRC when it originally filed its motion to dismiss in August 2005. Second, there has been no intervening change of law that would support reconsideration. To the contrary, as discussed above, the only intervening change of law—a First Circuit decision from two weeks ago—provides further support for the Court's decision and offers yet another legal theory justifying the decision. In light of this recent decision reaffirming the principles on which this Court relied in its decision, it is clear that there was no error of law here. Accordingly, this is not one of those "rare" cases in which reconsideration is appropriate, and DRC's motion must be denied.

**II. THE COURT PROPERLY HELD THAT THE CLASS ACTION WAIVER WAS UNENFORCEABLE AS A MATTER OF LAW, REGARDLESS OF THE EVIDENCE IN THIS CASE.**

As the First Circuit has recently held, a court need not engage in an unconscionability analysis in evaluating whether provisions of an arbitration agreement are unenforceable. *Kristian v. Comcast Corp.*, __ F.3d __, 2006 WL 1028758, at *32 (1st Cir. Apr. 20, 2006). Instead, courts may apply "a vindication of statutory rights analysis" to this question. *Id.* Such an analysis challenges "'the presumption that the arbitration provides a fair and adequate mechanism for

enforcing statutory rights.'" *Id.* at \*7 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)). As the First Circuit explained: "Unless the arbitral forum provided by a given agreement provides for the fair and adequate enforcement of a party's statutory rights, the arbitral forum runs afoul of this presumption and loses it claim as a valid alternative to traditional litigation." *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991).

Under the "vindication of statutory rights analysis," a court may strike down a provision of an arbitration agreement if the provision effectively prevents parties from exercising their statutory rights. In *Kristian*, the First Circuit explicitly applied this analysis to strike down a class action waiver.[1] The court noted that the class action "bar has substantial implications for the enforceability of the arbitration agreements," observing that "[t]he bar on class arbitration threatens the premise that arbitration can be 'a fair and adequate mechanism for enforcing statutory rights.'" 2006 WL 1028758, at \*24. Concluding that the class action waiver would prevent individual plaintiffs from seeking redress for antitrust violations and thereby "essentially shield[]" Comcast from liability, the court struck down the class action waiver at issue in *Kristian*. *Id.* at 30.

This Court properly applied almost identical reasoning in its decision on DRC's class action waiver. Specifically, this Court concluded:

---

[1]    Even the Supreme Court in *Gilmer* appeared to recognize that an arbitration agreement must allow for class actions in order to be valid. 500 U.S. 20 (1991). One of the arguments advanced by the petitioner in *Gilmer* as to why the arbitration policy challenged there was not valid was that it did not allow for class actions. *Id.* at 32. The Court implicitly credited that argument, concluding that the arbitration agreement at issue in that case was not unenforceable for that reason because the applicable arbitration rules did allow for class proceedings and because the petitioner in that case had not attempted to bring a class action. *Id.*

> In this case, the imposition of a waiver of class actions may
> effectively prevent DRC employees from seeking redress of FLSA
> violations.  The class action provision thereby circumscribes the
> legal options of these employees, who may be unable to incur the
> expense of individually pursuing their claims.  In this respect, the
> class action waiver is not only unfair to DRC employees, but also
> removes any incentive for DRC to avoid the type of conduct that
> might lead to class action litigation in the first instance.

Mem. & Op. at 10-11.  The Court's decision to strike down the class action

waiver was proper on that basis alone.[2]

Striking down class action waivers and other arbitration provisions

because of their chilling effect on potential plaintiffs' statutory rights is consistent

with holdings in other circuits as well.  Applying the *Gilmer* "vindication of

statutory rights" analysis recently endorsed by the First Circuit in *Kristian*, the

Sixth, Ninth, Tenth, Eleventh, and D.C. Circuits have recognized that provisions

in arbitration agreements that deny parties the benefits of proceeding in court are

unenforceable.  *See Morrison v. Circuit City Stores, Inc.* 317 F.3d 646, 663 (6th

Cir. 2003) (looking at arbitration provision's effect on actual plaintiffs *and*

---

[2]    In its brief, DRC goes to great lengths to differentiate the facts of *Kristian* from this case.
DRC's arguments miss the mark for two reasons.  First, what is most significant about *Kristian* is
not its underlying facts but that the First Circuit has recognized that the enforceability of
arbitration agreements may be analyzed without applying the common law of unconscionability.
As discussed above, this Court has already properly recognized that DRC's class action waiver
prevents the vindication of statutory rights, and, under *Kristian*, nothing more is needed to support
this Court's decision to strike down that provision of the arbitration agreement.
    Second, the *Kristian* court's decision striking down the class action waiver in the
arbitration agreement at issue there does have bearing here.  The First Circuit based its decision
not just on the particular facts of that case but on a general recognition of the "substantive
implications" of banning class arbitration, namely that such a ban "threatens the premise that
arbitration can be 'a fair and adequate mechanism for enforcing statutory rights.'"  2006 WL
1028758, at *24.  This threat is just as significant with respect to the FLSA claims at issue here as
it was in connection with the antitrust claims in *Kristian.*  Indeed, in this case, the "substantive
implication[]" of DRC's class action waiver is that DRC has no incentive to change its unlawful
wage-related practices—it can simply settle individual claims as they arise without facing any real
risk and without changing its practices as to other affected employees.  This Court recognized
this implication, noting that "the class action waiver . . . removes any incentive for DRC to avoid
the type of conduct that might lead to class action litigation in the first instance."  Mem. & Ord. at
11.

"similarly situated potential litigants," arbitration provision "should be held unenforceable whenever it would have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights"); *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999) (under *Gilmer*, "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum"); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (Cox, J., concurring) ("When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable."); *Cole v. Burns Intern. Sec. Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) (Because "arbitration is supposed to be a reasonable substitute for a judicial forum, it would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court."); *Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1993) ("[T]he fact that franchisees may agree to an arbitral forum for the resolution of statutory disputes in no way suggests that they may be forced by those with dominant economic power to surrender the statutorily-mandated rights and benefits that Congress intended them to possess.").

To the extent that other courts have differed in their interpretation of class action waivers in arbitration agreements, the *Kristian* court explicitly rejected the reasoning of those circuit courts that had enforced arbitration agreements with

class action waivers and endorsed the state and federal decisions holding that such waivers are unenforceable.  2006 WL 1028758, at *25-27, 29-30.  *Kristian* is now the law of this Circuit, and DRC's arguments based on contrary holdings in other circuits are no longer applicable.

Moreover, all of the cases cited by DRC as permitting class action waivers, DRC's Reconsid. Mem. at 12-14, are distinguishable from this case for one or more of the following reasons.  First, many of the cases apply state common law contract principles to reach their decisions.  Accordingly, they lack relevance here both because they apply the law of another state and because they do not apply the "vindication of statutory rights" analysis recently endorsed by the First Circuit.  Second, relevant to many of the decisions was the fact that the plaintiffs knowingly signed and consented to the arbitration agreements in question, whereas it cannot be disputed that Plaintiffs here did not consent to enter into the arbitration agreement and did not even know about it until after it became binding.  *See* Section III, *infra*.  Finally, in some of the cases cited by DRC, there was no explicit class action waiver in the arbitration agreements at issue.

Because all of the cases cited by DRC can be distinguished for one or more of the reasons set forth above, they are irrelevant to this Court's analysis here.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) (applying Georgia contract law of offer, acceptance, consideration, and unconscionability); *JLM Indus. v. Stolt-Nielson S.A.*, 387 F.3d 163, 180 n.9 (2d Cir. 2004) (plaintiff did not argue that arbitration agreement was unenforceable

because it prohibited class actions); *Carter v. Countrywide Credit Indust., Inc.*, 362 F.3d 294 (5th Cir. 2004) (plaintiffs knowingly signed arbitration agreements); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502-03 (4th Cir. 2002) (applying common law contract defenses, including unconscionability, lack of consideration, and mutual mistake, all grounded in West Virginia law); *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (reasoning explicitly rejected by the First Circuit in *Kristian*; plaintiffs knowingly signed arbitration agreement; applying Maryland common law of unconscionability); *Burden v. Check into Cash of Kentucky, LLC*, 267 F.3d 483 (6th Cir. 2001) (court did not hold that the arbitration agreement was enforceable but remanded to district court to consider that issue); *Horenstein v. Mortgage Market, Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001) (unpublished decision based on the fact that plaintiffs "knowingly signed an agreement to arbitrate their statutory claims"); *Caudle v. American Arbitration Association*, 230 F.3d 920, 921 (7th Cir. 2000) (dismissed for jurisdictional reasons; plaintiff knowingly agreed to arbitrate; unclear whether agreement itself prohibited class arbitration); *Johnson v. West Suburban Bank*, 225 F.3d 366, 371 (3d Cir. 2000) (reasoning explicitly rejected by the First Circuit in *Kristian*; plaintiffs knowingly signed arbitration agreement); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019, 1025 (Fla. Ct. App. 4th Dist. June 15, 2005) (plaintiffs signed contract knowingly and willingly; applying Florida law on unconscionability and voidability of contracts); *Strand v. U.S. Nat'l Bank, N.A.*, 693 N.W.2d 918, 926 (N.D. 2005) (applying North Dakota law on unconscionability and concluding that the agreement was procedurally

unconscionable); *Ranieri v. Bell Atlantic Mobile*, 304 A.D.2d 353, 354 (N.Y. App. Div. 1st Dept. 2003) (plaintiff signed agreements that "gave clear notice that he was agreeing to the arbitration clause"; applying New York unconscionability law); *Rosen v. SCIL, LLC and Saks Inc.*, 799 N.E.2d 488, 494-95 (Ill. App. 2003) (applying Illinois common law on unconscionability); *Gras v. Assocs. First Capital Corp.*, 786 A.2d 886, 893 (N.J. App. Div. 2001) (plaintiffs signed arbitration agreements; applying New Jersey law on adhesion contracts); *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1253 (Ct. App. Colo. 2001) (no explicit class action waiver in arbitration agreement; applying Colorado contract law); *Brown v. FRC Nat'l Mgmt. Co.*, 921 P.2d 146, 166 (Haw. 1996) (no explicit class action waiver in arbitration agreement; plaintiffs signed arbitration agreement; applying Hawai'i law).

This Court properly analyzed the impact of the class action waiver in DRC's arbitration program on employees' statutory rights under FLSA, and its decision must be upheld under the First Circuit's "vindication of statutory rights" analysis. Because DRC's class action waiver "threatens the premise that arbitration can be 'a fair and adequate mechanism for enforcing statutory rights,'" *Kristian,* 2006 WL 1028758, at *24, the Court's decision is proper as a matter of law, regardless of the individualized evidence in this case.[3] Accordingly, DRC has not established that this is a case appropriate for reconsideration, and its motion should be denied.

---

[3]    Significantly, the *Kristian* court rejected the defendant's request that the case be remanded to the district court for development of the factual record in light of the sufficiency of the affidavits and other documentary evidence, noting: "We are not required to close our eyes to the overwhelming weight of facts already in the record." 2006 WL 1028758, at *22.

III.    **THE COURT'S DECISION WAS ALSO PROPER IN LIGHT OF THE INSUFFICIENCY OF THE NOTICE TO EMPLOYEES REGARDING THE CLASS ACTION WAIVER.**

First Circuit precedent provides yet another basis to uphold this Court's decision as a matter of law, without considering state unconscionability principles or conducting an in-depth analysis of the evidence here.  Namely, the Court's holding is consistent with the standard established by the First Circuit in *Campbell v. General Dynamics Government Systems Corporation* as to the level of notice necessary to bind employees to an arbitration program.  407 F.3d 546 (1st Cir. 2005).  In *Campbell*, the First Circuit refused to enforce an arbitration policy that had been imposed on the defendant's employees in a manner remarkably similar to that used by DRC in this case.  *Id.*  Like Plaintiffs here, the plaintiff in *Campbell* did not have actual notice of the arbitration policy until after it took effect.[4]  407 F.3d at 555.  Accordingly, the First Circuit applied an objective "reasonably prudent employee" standard to determine the sufficiency of the notice, looking at "the method of communication, the workplace context, and the content of the communication."  407 F.3d at 555.  The *Campbell* court concluded that the notice was insufficient and, accordingly, declined to enforce the employer's arbitration policy.  407 F.3d at 559.

---

[4]    In *Campbell*, the plaintiff maintained that he was unaware of the arbitration policy until he brought a claim against the defendant, and the defendant attempted to compel arbitration under the policy.  407 F.3d at 555.  Here, Plaintiffs were unaware of the arbitration policy until after that policy had become binding on them.  Accordingly, in both cases, the employees were bound to adhere to the policy before they had knowledge of it.

Because what is significant is that Plaintiffs were bound by the arbitration policy before they received notice of it, not whether they ever received notice of the policy, DRC's extensive discussion of evidence that Plaintiffs did receive notice of the policy at some point, DRC's Reconsid. Mem. at 6-10, is nothing more than a red herring.

The *Campbell* court reached this conclusion for four reasons. First, the defendant communicated the arbitration policy through a mass email, which the court deemed to be inadequate "to introduce a *contractual* term that was to become a condition of continued employment." 407 F.3d at 556. Second, the mass email announcing the policy did not require a response, which "disguised the import of the communication." 407 F.3d at 557. Third, the email did not "suggest that arbitration was to become mandatory and thereby extinguish an employee's access to a judicial forum as a means for dispute resolution." 407 F.3d at 557-58. Finally, the email did not state "that the employer would treat continued employment as acceptance" of the arbitration policy. 407 F.3d at 557-58. Because "the e-mail announcement undersold the significance of the Policy" in these ways, the court concluded that it failed to provide employees with sufficient notice of the binding arbitration policy. 407 F.3d at 558. Accordingly, the court declined to enforce the arbitration policy and allowed the plaintiff's claims to proceed in court. 407 F.3d at 559.

This Court cited precisely these four reasons from *Campbell* in concluding that DRC's arbitration policy was procedurally unconscionable, all of which are amply supported by the evidence. First, the Court observed that, in notifying its employees of this policy by mass email, "DRC failed to follow its usual procedure for implementing personnel changes, which often included holding meetings with employees, conducting manager training about the new policy, requiring employees to acknowledge their awareness and understanding of a new policy,

or sending information to employees' homes."  Mem. & Ord. at 8.  This statement

is supported by the affidavits of the Plaintiffs.  Skirchak Aff. ¶ 6; Aldrich Aff. ¶ 5.

DRC's efforts to contradict this evidence are unavailing.  First, DRC points

to a document entitled "Guidance for Writing and Implementing Policies" that it

claims "makes clear that DRC followed its written policies in providing notice of

the implementation of the DRP to its employees."  DRC's Reconsid. Mem. at 4.

The "Guidance" does no such thing.  First, the Guidance appears inapplicable to

substantial, contractual personnel changes such as the arbitration program, in

that it states that it "applies to the core support processes of the company" and to

policies designed "to process improvement."  Campion Aff., Ex. 2, ¶¶ A, B.

Moreover, the Guidance does *not* endorse mass email as the preferred method

of notifying employees of new policies, as DRC claims.  DRC's Reconsid. Mem.

at 4.  Instead, the Guidance specifies that "policies having broad impact

(affecting the majority of employees) must be reviewed . . . by the

Communications Committee for . . . advice *on the best dissemination method(s)*

*for communicating the policy to affected employees*."   Campion Aff., Ex. 2, ¶ 3.d

(emphasis added).  The clear implication is that special consideration is to be

given to ensure that companywide policies are appropriately disseminated.

DRC's next effort to contradict the evidence that a mass email was

insufficient to communicate the significance of the arbitration policy is its citation

to the affidavit of Joseph LeBlanc, which states that *Concerning You* and email

are standard methods for DRC to communicate important employment policies to

employees.  DRC's Reconsid. Mem. at 4-5; LeBlanc Aff. ¶¶ 3, 8.  However,

LeBlanc's affidavit only supports the conclusion that mass email and *Concerning You* articles, without more, were not sufficient to notify DRC employees about significant personnel changes.  Specifically, LeBlanc points to an article in *Concerning You* about changes in employee compensation.  LeBlanc Aff. ¶ 8. However, this article states that "[w]e are planning to schedule employee Compensation Program Orientation Sessions," LeBlanc Aff., Ex. 4, suggesting that DRC recognized that employee orientation sessions were necessary to notify employees properly about compensation changes.  It is undisputed that no such orientation sessions were held regarding the arbitration policy.

The Court also pointed out the following additional inadequacies of the mass emails sent by DRC, which were precisely the inadequacies noted by the *Campbell* court:  (1) "DRC [did not] request a signature or even an email reply to verify consent to be bound by the Program"; (2) "[t]he emails did not state that acceptance of the Program was a condition of continued employment"; and (3) "[t]he emails did not state that . . . by returning to work on December 1, 2003, an employee thereby accepted the terms of the DRP and waived his rights to pursue class actions."[5]  Mem. & Ord. at 8.  DRC does not dispute any of these points, nor could it.  On their face, the emails sent by DRC do not require a response and do nothing more than identify the existence of a new policy.  *See* Campion Aff., Exs. 3, 4.  Moreover, in burying the class action waiver twenty pages into the

---

[5]     DRC's assertion that "[t]he Court's conclusion regarding the inefficacy of the email communications appears rooted in a fundamental misunderstanding of the central role of email as the preferred means of communication in most workplaces, and this workplace in particular" is, at best, entirely off base and, at worst, insulting.  DRC's Reconsid. Mem. at 4.  It is clear from the Court's decision that the concern is not with the choice of email as the method of communication but with DRC's failure to make any effort to inform employees that the particular email contained important information that would alter their rights.

arbitration policy in a misleadingly titled section and avoiding all other mention of the waiver, DRC clearly did everything it could to "disguise[] the import" of the waiver.[6]

The undisputed evidence demonstrates that DRC chose to communicate its arbitration policy containing a class action waiver by the exact method that the First Circuit held to be inadequate in *Campbell*. Under *Campbell*, the Court's decision to strike down the class action waiver is proper on this basis alone, even without consideration of Massachusetts unconscionability principles.[7] Accordingly, the insufficiency of the notice afforded to DRC employees regarding the arbitration policy's class action waiver provides another basis for denying DRC's motion for reconsideration.

## IV.    THE COURT'S DECISION WAS ALSO PROPER UNDER STATE LAW UNCONSCIONABILITY PRINCIPLES.

---

[6]    In this way, the obscuring of the salient information is even more stark in this case than in *Campbell.* In *Campbell*, the issue was whether the mass email afforded sufficient notice about the requirement to arbitration disputes, when the email in question included a link to a mandatory arbitration policy that "itself spoke in clear, contractual language." 407 F.3d at 557. Here, the question is whether DRC's email properly notified employees that they waived their right *to proceed as a class* as part of the arbitration policy. Not only do the emails from DRC not give any indication of the class action waiver, but that waiver is not mentioned in the memoranda attached to the emails describing the arbitration policy and is buried in the arbitration policy itself, appearing for the first time in Appendix A on page 20, under the misleading title "Authority." LeBlanc Aff., Ex. 3 at 20. As such, the fact that Plaintiffs here may have used DRC's arbitration program previously as to other individual claims is irrelevant to whether they had sufficient notice of the class action waiver within the arbitration policy.

    Significantly, in the pages preceding this first mention of the class action waiver, DRC's policy assures employees that its arbitration program provides "protection of your legal rights – such as prohibitions against discrimination and sexual harassment – and *protection of all other rights covered by federal and state law.*" LeBlanc Aff., Ex. 3 at 5 (emphasis added). In the policy, DRC also claims that the "[r]esolution/[r]estitution [from arbitration] is the same as a court of law could award you" and does not mention the class action waiver in response to the "frequently asked" question:  "How is arbitration different from a court trial?"  LeBlanc Aff., Ex. 3 at 11, 14.

[7]    The court in *Campbell* based its decision on affidavits alone, and no evidentiary hearing was conducted on the issue of notice. *See* 407 F.3d at 549-50. Similarly, it is unnecessary to conduct an evidentiary hearing here.

As discussed above, this Court's decision was proper under either the "vindication of statutory rights" analysis recently endorsed by the First Circuit in *Kristian* or the *Campbell* court's analysis concerning inadequacy of notice, neither of which requires a showing of unconscionability. DRC's motion should be denied for those reasons alone. Moreover, the Court's decision is also proper under Massachusetts unconscionability law, which was the legal framework that the Court applied in reaching its decision.

### A. The Court properly concluded that the class action waiver is procedurally unconscionable.

The Court appeared to rely on three main facts in concluding that the class action waiver in the arbitration agreement was procedurally unconscionable: (1) the arbitration program was implemented on December 1, 2003, and employees accepted the program and waived their rights to pursue class actions by returning to work on that date; (2) Plaintiffs "were not aware of the DRP's implementation on December 1, 2003, and therefore had no meaningful choice as to whether to accept the waiver of class actions"; and (3) the arbitration provision was written in a "confusing and technical style," such that "a reasonable or average employee would not have been able to understand the significance of its terms."[8] Mem. & Dec. at 8-10.

There is no dispute in the record as to any of these three facts. First, DRC conceded in its motion to dismiss that the arbitration program went into effect on

---

[8]    DRC points to the Court's statement that "[t]here is evidence that DRC management was aware that it was in violation of the wage laws and rushed to implement the Program in an attempt to protect itself from potential liabilities" as an example on an unsupported fact on which the Court relied in finding procedural unconscionability. DRC's Reconsid. Mem. at 2-3. While there is support for this conclusion in the evidence, because this fact does not appear to be central to the Court's procedural unconscionability finding in any event.

December 1, 2003, and that "continued employment after the Program's implementation . . . constituted assent to be bound by the Program." *See* Def.'s Mot. to Dismiss at 6-7, and attached exhibits. Second, though DRC asserts that Plaintiffs received the emails about the arbitration program that were sent on November 14 and November 25, 2003, both Plaintiffs submitted affidavits attesting that they did not know about the implementation of the arbitration program or its binding nature until after its implementation. Pls.' Resp. to Def.'s Mot. to Dismiss, Skirchak Aff. ¶ 4; Aldrich Aff. ¶ 8. DRC does not dispute this fact; it simply argues in its reply brief that "Plaintiffs' distinction between notice before the effective date of the Program and after the effective date is irrelevant."[9] Def.'s Reply Br. at 6.

Finally, as to the "confusing and technical style" in which the arbitration provision is written, the arbitration provision speaks for itself, and the Court's interpretation is undoubtedly correct. DRC attempts to obscure the confusing nature of the arbitration program by isolating the "27 words" that make up the

---

[9] DRC attempts to backtrack from this position in its reconsideration motion, asking with apparent incredulity: "How can Mr. Skirchak's failure to read his work-related email, from his boss, on a subject related to his duties as a human resources professional, or his decision to take a day off, possibly excuse his compliance with a company rule or policy?" Def.'s Reconsid. Mem. at 8. DRC fails to mention that the email notifying employees of the arbitration program was sent on the Tuesday before Thanksgiving and went into effect on the Monday after Thanksgiving, *less than two business days later*. Perhaps it is appropriate to pose a question to DRC in response to its indignant string of rhetorical questions about Plaintiff Skirchak's delinquency in reading his email: Why would DRC choose the Tuesday before Thanksgiving to inform employees of an important and significant policy change that drastically affected employees' rights unless it intended to sneak the arbitration program through with minimal employee notice and reaction?

Similarly, as to Plaintiff Aldrich, DRC offers no evidence to contradict Aldrich's statement in his affidavit that he did not know about the policy until after it became effective. In lieu of presenting concrete facts in opposition to Aldrich's sworn statement, DRC impugns his credibility by calling his statement "simply ludicrous." Def.'s Reconsid. Mem. at 9. Once again, this rhetoric does not create a dispute of fact any more than, for example, an inference that DRC intentionally timed its implementation of the arbitration policy to coincide with the Thanksgiving holiday to discourage employees from fully considering its implications constitutes firm proof that DRC acted in bad faith in sending its email notification on November 25, 2003.

class action waiver.  Def.'s Reconsid. Mem. at 9.  However, what DRC fails to

mention is that the Dispute Resolution Program containing the class action

waiver is a 33-page document and the first mention of the supposedly "clear and

simple" class action waiver appears on page 20, in Appendix A, under the

misleading heading "Authority."  This "Authority" section consists of two

sentences, the second of which is the sentence that DRC has chosen to isolate

to present the clarity of the waiver.  The first sentence is not so clear:  "The

Arbitrator shall have no authority to consider class claims or join different

claimants or grant relief other than on an individual basis to the individual

employee involved."[10]  LeBlanc Aff., Ex. 3 at 20.  Also indicative of the lack of

clarity in the class action waiver are the steps that DRC did *not* take to ensure

that employees knew that they were waiving their class action rights:  the section

of the document initially describing arbitration does *not* mention the class action

waiver and assures employees that the arbitration program provides "protection

of your legal rights – such as prohibitions against discrimination and sexual

harassment – and *protection of all other rights covered by federal and state law*,"

LeBlanc Aff., Ex. 3 at 5 (emphasis added); the response to the "frequently asked

question" "[h]ow is arbitration different from court trial?" explains the lack of jury

and appeal rights in arbitration and the comparative informality of arbitration but

does *not* mention the class action waiver, *id.* at 14; even the section in the

appendix that finally mentions the class action waiver does *not* do so in bold

---

[10]    The only other reference to the class action waiver, appearing in Appendix B as one of
DRC's "Dispute Resolution Program Arbitration Rules," is even more unclear:  "The arbitrator
shall be limited to the resolution of legal Disputes between the Parties and shall have no
jurisdiction to grant class relief, consolidate claims or determine company business policies."
LeBlanc Aff., Ex. 3 at 28.

letters and it does so under the nondescriptive heading "Authority," not "Class Action Waiver" or some other heading that would suggest the significance of the waiver.  *Id.* at 20.

It is clear from the record that all of the facts on which this Court relied in finding procedural unconscionability are undisputed and were properly considered by the Court.  Any argument to the contrary by DRC represents an attempt to cloud the issue with unnecessary and irrelevant information in hopes of bogging the Court and Plaintiffs down in needless fact-finding.  The Court should decline to entertain this effort by DRC.

### B.    The Court properly concluded that the class action waiver is substantively unconscionable.

Finally, this Court did apply the correct standard to analyze substantive unconscionability, and its decision is supported by federal appellate decisions on the same issue.  As the Court recognized, a contract provision is substantively unconscionable if it is "so one-sided as to be oppressive."  Mem. & Ord. at 10. This is the standard for substantive unconscionability applied by Massachusetts courts.[11]  *See Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 293 n.13 (1980).

The Court properly concluded that the class action waiver in this case is substantively unconscionable because it is "so one-sided as to be oppressive." Mem. & Ord. at 10.  This decision is supported by the nearly identical conclusion

---

[11]    DRC's suggestion that substantive unconscionability requires a showing of "fraud or oppressive conduct," Defs.' Reconsid. Mem. at 18-19, derives from a blatant misreading of the First Circuit's decision in *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*  In *Rosenberg*, the court discussed when "inequality of bargaining power" would suffice to hold that an arbitration agreement is unenforceable and concluded that "[a]bsent a showing of fraud or oppressive conduct . . . the contract is not unenforceable on these grounds [*i.e.*, grounds of unequal bargaining power]."  170 F.3d 1, 17 (1st Cir. 1999).  That statement was *not* an indication by the *Rosenberg* court that any finding of substantive unconscionability must be premised on a "showing of fraud or oppressive conduct."

reached by the Ninth Circuit in *Ingle v. Circuit City Stores, Inc.*, in which the court found the employer's ban on class arbitration to be unconscionably one-sided because "[w]e cannot conceive of any circumstances under which an employer would bring a class proceeding against an employee."[12]  328 F.3d 1165, 1176 (9th Cir. 2003).

        In finding substantive unconscionability, this Court properly considered the class action waiver's effect not just on Plaintiffs but on other DRC employees as well.  Specifically, the Court recognized that "[a]n arbitration agreement that eliminates the right to a class-wide proceeding may have 'the substantial effect of contravening the principle behind class action policies and chilling the effective protection of interests common to a group.'"  Mem. & Ord. at 10 (quoting *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 n.13 (9th Cir. 2003)).  The Court went on to note that the class action waiver both is "unfair to DRC employees" and "removes any incentive for DRC to avoid the type of conduct that might lead to class action litigation in the first instance."  Mem. & Ord. at 11.  Because the provision at issue is one that impacts not just the named plaintiffs but also potential class members, the Court was correct to consider the effect of the class action waiver on other DRC employees whose rights would be impacted by the inability of the named plaintiffs to pursue classwide relief.

---

[12]        In light of this rationale of the Ninth Circuit, it is hard to conceive how DRC could claim that "[t]he mere fact that an employer is unlikely to bring a class action against its employees cannot be a basis for concluding that the DRP is so one-sided as to be unconscionable."  DRC's Reconsid. Mem. at 18.  As the court explained in *Ingle*, that is most certainly a basis for finding substantively unconscionability.  Notably, the Ninth Circuit also articulated this principle in *Ting v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003) ("It is . . . difficult to imagine AT&T bringing a class action against its own customers. . ."), a decision that the First Circuit explicitly endorsed in *Kristian.*  2006 WL 1028758, at *29-30.

Significantly, in *Morrison v. Circuit City Stores, Inc.*, the Sixth Circuit endorsed precisely this sort of approach in analyzing the enforceability of arbitration provisions.  317 F.3d 646 (6th Cir. 2003).  Specifically, the court in *Morrison* held that courts must "look[] to the possible 'chilling effect' of [an arbitration provision] on similarly situated potential litigants, as opposed to its effect merely on the actual plaintiff in any given case."  317 F.3d at 663.  In the context of an employment discrimination claim, the court explained the reason that courts must consider a provision's effect on "similarly situated potential litigants" as follows:

> The deterrent function of the laws in question is, in part, that employers who engage in discriminatory practices are aware that they may incur liability in more than one case.  If, however, [an arbitration] provision would deter a substantial number of potential litigants, then that provision undermines the deterrent effect of the anti-discrimination statutes.  Thus, in order to protect the statutory rights at issue, the reviewing court must look to more than just the interests and conduct of a particular plaintiff.

317 F.3d at 663.

As in *Morrison*, the deterrent function of the FLSA is undermined by DRC's class action waiver because it removes the risk that DRC will be liable for wage law violations on a class-wide basis.  Accordingly, the Court properly considered the class action waiver's effect on DRC employees in reaching the conclusion that the provision was substantively unconscionable.

Although the First Circuit has made clear in *Kristian* and *Campbell* that unconscionability is not required, this Court properly found that DRC's class action waiver was both procedurally and substantively unconscionable, relying on

20

undisputed facts and consistent with the relevant law on this issue.  Accordingly, the Court's decision should stand.

CONCLUSION

This Court reached the thoughtful and well-reasoned conclusion that the class action waiver in DRC's arbitration policy was unenforceable.  Though the Court decided the case on common law unconscionability principles, its decision is also supported by the First Circuit's recent decision in *Kristian* that arbitration provisions may be stricken if they prevent the vindication of statutory rights and that a class action waiver may be unenforceable under this analysis.  The Court's decision is also supported by the First Circuit's *Campbell* decision, which struck down an arbitration policy that had been disseminated to employees in a manner almost eerily similar to the distribution method chosen by DRC.  None of the facts central to the Court's decision is disputed, and DRC's reconsideration motion does nothing but rehash its former arguments and reframe previously presented facts.  Accordingly, DRC has failed to present any valid basis for reversal of the Court's original decision, and Plaintiffs respectfully request that the Court deny DRC's motion.

Respectfully submitted,
JOSEPH SKIRCHAK and BARRY L.
ALDRICH, on behalf of themselves and
all others similarly situated,
By their attorneys,


__s/Shannon Liss-Riordan_____
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #(pending)
Pyle, Rome, Lichten, Ehrenberg &
Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Elayne N. Alanis, BBO #660365
Law Firm of Elayne N. Alanis
10 Tremont Street, Third Floor
Boston, MA 02108
(617) 263-1203

Dated:       May 8, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2006, I caused a copy of this document to be served by electronic filing on David S. Rosenthal, Carrie J. Campion, and Jeffrey B. Gilbreth, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110.




__s/Shannon Liss-Riordan_____
Shannon Liss-Riordan, Esq.