**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION TRIBUNAL**
**Before Arbitrator Mark Irvings**

|  |  |  |
|---|---|---|
| JOSEPH SKIRCHAK and BARRY ALDRICH, on behalf of themselves and on behalf of a nationwide class of all others similarly situated, | ) ) ) ) ) ) | |
| Claimants, | ) ) | AAA Case No.: 11 160 01218 06 |
| v. | ) ) ) | |
| DYNAMICS RESEARCH CORPORATION, | ) ) | |
| Respondent. | ) ) ) | |

## CLAIMANTS' MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT

Claimants brought this case on behalf of a national class of employees who worked at Dynamics Research Corporation ("DRC") and were classified as exempt from overtime, asserting that DRC had violated the "salary basis test", thereby rendering exempt employees eligible for overtime pay under the Fair Labor Standards Act, 29 U.S.C. §216. *et seq.* and Massachusetts General Laws, c. 151, § 1B.  After five years of litigation, the parties reached a proposed settlement of this case.  As described below, the settlement amount is fair, reasonable, and adequate remedy, given the continued hurdles the Claimants faced in pressing forward with their claims.  The settlement resulted from an arm's length negotiation between experienced counsel that took place over many months.  A copy of the settlement agreement is attached here as Exhibit 1.

On October 1, 2010, Plaintiffs' counsel mailed notices to the class informing them of the settlement, describing their right to submit claim forms to receive a distribution

1

from the settlement, or to object to the settlement or opt-out of the case. A copy of the notice is attached here as Exhibit 2 and the claim form is attached as Exhibit 3.[1] To date, claim forms have been submitted by approximately 711 employees, accounting for approximately half of the class settlement proceeds. No class members have objected to the settlement.[2]

The Arbitrator has scheduled an approval hearing for November 1, 2010, at which time the Claimants will request that the Arbitrator grant approval of this settlement pursuant to AAA Supplementary Rules for Class Arbitration, Rule 8(a)(3).

## I.   BACKGROUND OF THE ACTION

On June 28, 2005, this case was filed in federal district court, *Skirchak et al. v. Dynamics Research Corp.,* D.Mass. 05-11362-MEL. DRC moved to dismiss and compel arbitration based upon a mandatory arbitration provision the company had implemented. The parties spent the next two years litigating the enforceability of a class action waiver included in the arbitration agreement. The district court ruled that the class action waiver was not enforceable, a decision that was affirmed by the First Circuit Court of Appeals. Meanwhile, Claimants also filed this arbitration case, and the parties agreed to the appointment of Mark Irvings to serve as Arbitrator. In the arbitration, as in the lawsuit, the claimants contended that DRC had violated the "salary basis" test of the FLSA, thus rendering its exempt employees to be non-exempt and entitled to overtime

---

1       Plaintiffs' counsel has followed up with notices returned by the post office to find new addresses and have forwarded notices to updated addresses whenever possible.

2       At the hearing scheduled for November 1, 2010, Claimants' counsel will provide a spreadsheet showing claims received by that date. Under the agreement, class members have until October 29, 2010, to opt out of the settlement or object to the settlement. Class members were notified that if they submitted claims by that date, they would receive settlement payments this year, assuming prompt arbitrator and court approval, though late claims will still be accepted for six months.

pay for work performed beyond 40 per week.

Prior to a ruling on class certification, the parties reached this proposed settlement.[3]  In negotiating the settlement, Claimants' counsel had the benefit of calculations from DRC's payroll system of the amount of overtime pay that would have been owed to class members had they been non-exempt during the relevant period. For the period June 28, 2003 until October 1, 2004 that amount equaled approximately $2.3 million.  As explained further below, this settlement, which comprises approximately 80% of the damages for this time period, represents a fair result for the class, given the costs and uncertainties of continued litigation, including likely appeals. The finality of a settlement provides the class an ensured payment and removes the risks of continued litigation and further delay in recovery.

For the purpose of effectuating the settlement, the parties have agreed to certification of a settlement class comprised of all individuals who worked for DRC between June 28, 2003, and October 1, 2004, and were classified as exempt from overtime pay requirements under federal and state law.  The parties have agreed to the appointment of Joseph Skirchak and Barry Aldrich as class representatives and Lichten & Liss-Riordan, P.C. and the Law Offices of Elayne Alanis as class counsel.

## II.    THE PROPOSED PLAN OF DISTRIBUTION OF THE SETTLEMENT FUNDS

The settlement amount is $1,850,000.  As described further in the settlement agreement, the settlement fund in this case will be distributed as follows.  Class counsel have mailed notices to class members, informing them of their right to participate in the settlement by returning a simple claim form.  Class members were notified that those who submit claims by October 29, 2010, may receive their payments by the end of the

---

3    Previously, the parties had engaged in two unsuccessful mediation sessions.

3

year, assuming prompt arbitrator and court approval.  However, unclaimed funds will be

held for an additional six months to allow for late-submitted claims.  At that time,

remaining unclaimed funds will be donated to an agreed upon *cy pres* charity, the New

England Center for Homeless Veterans.

Class counsel has calculated settlement shares based upon data set forth in a

DRC time keeping spreadsheet, entitled "Exempt Overtime From 7/14/02 to 7/31/04" in

Claimant's possession and other subsequent materials provided by DRC.[4]  All

settlement class members who timely submit a claim form shall receive a minimum

payment of $50.[5]

In addition to these payments to participating class members, the proposed

settlement includes incentive payments of $30,000 for lead claimant Joseph Skirchak

and $20,000 for lead claimant Barry Aldrich.  Incentive payments have been routinely

approved by the courts in class action settlements as a way of compensating class

representatives who have lent their names and efforts to the prosecution of litigation on

behalf of others.  Courts have also recognized that such payments can serve an

important function in promoting class action settlements.  *See Sheppard v.*

*Consolidated Edison Company of New York, Inc.*, 2002 WL 2003206, *5-6 (E.D. N.Y.

2002) (collecting cases approving incentive payments).  In this case, the lead claimants

put themselves on the line for the benefit of their co-workers, at substantial personal risk

---

4      Data have been used from this spreadsheet beginning June 2003, in accordance with the class
period agreed to under the settlement agreement.  For the period 7/14/04 – 10/1/04, Class counsel has
extrapolated the amount of overtime calculated for each class member employed at the end of the period
designated on the spreadsheet for the additional months.

5      If any disputes arise regarding the calculation of the amount to be paid to any class members,
Class Counsel is authorized under the agreement to resolve the dispute and may use unclaimed funds as
necessary to resolve such disputes.

to themselves, as their names became attached to a widely publicized case. The incentive payments requested here are in line with payments approved by courts in other cases.[6]

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

It is well-established that settlements of lawsuits are favored over continued litigation. *See, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Durett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp.*, 614 F.2d 11, 15 (1st Cir. 1980). Before granting approval of a proposed class action settlement, the Arbitrator must find that the settlement is fair, reasonable, and adequate. See AAA Supplementary Rules for Class Arbitration, Rule 8(a)(3).

A presumption of fairness of a settlement is established where the parties can show that: (1) the settlement was the product of arms-length bargaining; (2) sufficient discovery and investigation has been taken to enable counsel and the court to act intelligently; (3) the proponents of the settlement are counsel experienced in similar litigation; and (4) the number of objectors or interests they represent is not large when compared to the class as a whole. 4 Herbert B. Newburg and Alba Conte, *Newburg on*

---

6        *See, e.g., Hayes et al. v. Aramark Sports, LLC*, C.A. No. 08-10700-RWZ (D. Mass. 2009) (approving $25,000 incentive payments for lead plaintiffs); *Trujillo v. City of Ontario*, 2009 WL 2632723, at *5 (C.D. Cal. 2009) (approving $10,000 and $30,000 incentive payments for sixteen named plaintiffs); *Godt et al. v. Anthony's Pier Four, Inc.*, C.A. No. 07-3919-BLS1 (Suffolk Superior Ct. 2009) ($25,000 incentive payment for lead plaintiff); *Shea et al. v. Weston Golf Club*, C.A. No. 02-1826 (Middlesex Superior Ct. 2009) ($25,000 incentive payments for lead plaintiffs); *Fernandez et al. v. Four Seasons Hotel*, C.A. No. 02-4689 (Suffolk Superior Ct. 2008) ($25,000 incentive payments for lead plaintiffs); *Banks et al. v. SBH Corp. (Grill 23)*, C.A. No. 04-3515 (Suffolk Superior Ct. 2007) ($25,000 incentive payments for lead plaintiffs); *Meimaridis, et al. v. Brae Burn Country Club*, C.A. No. 04-3769 (Middlesex Superior Ct. 2006) ($25,000 incentive payments for lead plaintiffs); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *13 (W.D. Wash. 2001) (approving $25,000 incentive payments to named plaintiffs); *Presley v. Carter Hawley Hale Profit Sharing Plan*, 2000 WL 16437, at *2 (N.D. Cal. 2000) (approving $25,000 incentive payments to each of the two named plaintiffs); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases in support of enhancement payments and awarding payments ranging from $35,000 to $50,000 for named plaintiffs); *Yap v. Sumintomo Corp. of Am.*, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs).

*Class Actions* § 11:41 (3rd ed. 1992-2002).  In addition, courts consider the amount of

the settlement compared to the amount at issue in the case and the plaintiffs' likelihood

of succeeding on the merits and recovering damages on their claims.  *See, e.g., M.*

*Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-23 (D. Mass.

1987).

In the case at bar, an examination of each of these factors demonstrates that the

proposed settlement is fair, reasonable, and adequate to the members of the class, and

should be approved by the Arbitrator.

After more than five years of litigation, the parties ultimately engaged in further

negotiations over a period of months just prior to a ruling on class certification.  The

negotiated settlement amount accounts for a substantial portion of the recovery that

Claimants alleged they could have obtained had they continued with the litigation and

ultimately been successful.[7]  This case was rigorously defended by DRC and zealously

pursued by Claimants' counsel.  The settlement was clearly reached as a result of

arm's-length negotiations.

When sufficient discovery has been provided and the parties have bargained at

arm's-length, there is a presumption in favor of the settlement.  *See City Partnership*

*Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996); *United States v.*

*Cannons Engineering Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989); *Berenson*, 671

F. Supp. at 822 (where a proposed class settlement has been reached after meaningful

discovery, after arm's length negotiation, conducted by capable counsel, it is

presumptively fair).

---

7       The negotiated settlement provides for a two-year statute of limitations based upon the date the
case was filed in court.

6

Moreover, Claimants' counsel is highly experienced in similar litigation. Over the last decade, Claimants' lead counsel, Attorney Shannon Liss-Riordan, has litigated dozens of class action wage and hour cases on behalf of employees under state and federal law, many of which have resulted in significant court rulings and substantial favorable settlements for the plaintiff classes.[8] Attorney Liss-Riordan is a frequent invited speaker at local and national conferences as an expert on class actions and wage and hour litigation. Her co-counsel Hillary Schwab and Elayne Alanis are both well versed and highly experienced in wage and hour law. Claimants' counsel are thus experts of the law in this area. Their experience in this area provided the class with a high degree of expertise.

Finally, no class members have objected to the settlement, and approximately half of the settlement fund has been claimed already. A lack of objections, and high participation rate in the settlement, is a relevant factor the Arbitrator may consider in determining the adequacy of a settlement.

## IV. THE REQUESTED ATTORNEYS' FEE IS FAIR AND REASONABLE AND SUPPORTED BY THE APPLICABLE PRECEDENT

The proposed distribution of the settlement proceeds provides for one-third of the settlement to pay for attorneys' fees and expenses. The named claimants support this

---

8    Recent appellate rulings include *DiFiore v. American Airlines, Inc.,* 454 Mass. 486 (2009) (affirming jury verdict in favor of skycap employees although defendant did not employ skycaps), and *Cooney et al. v. Compass Group Foodservice,* 69 Mass. App. Ct. 632 (2007) (reversing trial court's denial of summary judgment for plaintiff servers, holding that Massachusetts Tips Law should be strictly construed against establishment that did not distribute proceeds of "service charges" to waitstaff employees). Along with her co-counsel Attorney Schwab, Attorney Liss-Riordan has also taken three class action cases to trial and has won them all: *Calcagno et al. v. High Country Investor, Inc., d/b/a Hilltop Steak House,* C.A. No. 03-0707, Mass. Sup. Ct. (Essex 2006) (banquet coordinators not entitled to share in gratuities); *Benoit et al. v. The Federalist, Inc.,* C.A. No. 04-3516, Mass. Sup. Ct. (Suffolk 2007) (same); and *DiFiore et al. v. American Airlines, Inc.,* C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass. 2008) (airline's policy of collecting $2 per bag charge for curbside check-in that was not distributed to skycaps violated Mass. Tips Law and rendered airline liable for tortious interference with advantageous relations) (companion case, *Overka et al v. American Airlines, Inc.* certified as national class action).

payment, and the proposed notice of settlement informed class members that one-third

of the settlement proceeds would be used to pay for attorneys' fees.  Claimants' counsel

accepted this case on a contingent arrangement, and the proposed fee is the same

standard one-third share that has been approved by the judges who have ruled on the

fairness of the other settlements achieved by Claimants' counsel in dozens of other

class action cases, including the Massachusetts cases listed above in note 6.  The

Arbitrator should approve this fee as fair and reasonable.

Claimants' counsel has been a leader in plaintiff-side wage and hour class action

law and has received national news coverage for her work in this area.  Having handled

more than fifty class cases, including three that resulted in successful jury verdicts, two

favorable appellate rulings, more than a dozen that have been heard on summary

judgment, and more than two dozen that have settled, counsel was able in this case to

draw from the benefit of this experience.  This experience provided the class a high

degree of expertise in this area.

Courts generally favor awarding fees from a common fund based upon the

percentage of the fund method.  As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer
> who recovers a common fund for the benefit of persons other than
> himself or his client is entitled to a reasonable attorneys' fee from
> the fund as a whole. . . . Jurisdiction over the fund involved in the
> litigation allows a Court to prevent . . . inequity by assessing
> attorney's fees against the entire fund, thus spreading fees
> proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980 (Citations omitted.)  *See also Blum*

*v. Stenson*, 465 U.S 886, 900 n.16 (1984); *In re Thirteen Appeals Arising Out of the San*

*Juan Dupont Plaza Hotel Fire Lit.*, 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million settlement fund).[9]

A one-third attorney's fee in a common fund case has been consistently approved as reasonable.  Examples of cases in which a one-third fee was approved include *Chalverus v. Pegasystems, Inc.*, C.A. No. 97-12570-WGY (December 19, 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); *In re: Peritus Software Services, Inc. Sec. Litig.*, C.A. No. 98-10578-WGY (February 28, 2000); *In re: Copley Pharmaceutical, Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (awarding one-third of a $6.3 million settlement fund); *Morton v. Kurzweil Applied Intelligence, Inc.*, C.A. No. 10829-REK (D. Mass. Feb. 4, 1998); *In re Gillette Securities Litigation*,  C. A. No. 88-1858-REK (D. Mass. Mar. 30, 1994); *Wilensky v. Digital Equipment Corporation*, C.A. No. 94-10752-JLT (July 11, 2001); *In re Picturetel Corporation Sec. Litig.*, C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); *Zeid v. Open Environment Corp.*, C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding a fee of one-third of a $6 million settlement).[10]  Given this precedent approving one-third recovery for attorneys'

---

[9]    Among the advantages recognized by the First Circuit in *Thirteen Appeals*, was the fact that the percentage method is less burdensome to administer than the lodestar method.  *See id.* at 307.  The court also endorsed the percentage of recovery approach because it is result-oriented, and hence it promotes the more efficient use of attorney time, and because the percentage method also better reflects the market value of counsel's services.  In *Thirteen Appeals*, the First Circuit noted that other Courts of Appeals have *required* the use of percentage awards in common fund cases.  *See, e.g., Camden Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  *See also* Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (1985) and Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994).

[10]    Examples of such awards from other states include *In Re: Lithotripsy Antitrust Litigation*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D.Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits.); *In re: Medical X-Ray Film Antitrust Litigation*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888 at *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); *In*

fees in class action cases, the Arbitrator should likewise recognize that a one-third recovery in this case is reasonable.

## VI.   **CONCLUSION**

For the reasons set forth above, Claimants respectfully request that the Arbitrator grant approval of the Settlement Agreement as fair, reasonable, and adequate, certify the class described above for settlement purposes, appoint Claimants Skirchak and Aldrich as class representatives for the settlement class, and appoint Lichten & Liss-Riordan, P.C. and the Law Offices of Elayne Alanis as class counsel.  At the fairness hearing on November 1, 2010, Claimants will provide an updated report on the results of the notice process and request that the Arbitrator grant approval of the settlement.

Respectfully submitted,

Joseph Skirchak and Barry Aldrich,
By their attorneys,


__/s/  Shannon Liss-Riordan_____
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-580

Elayne N. Alanis
10 Tremont Street, 3rd Floor
Boston, MA 02108


October 26, 2010

---

re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); In re Franklin Nat'l Bank, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980) (34% of settlement fund); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund).

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2010, I caused a copy of this document to be served by electronic mail on counsel for the respondents.

_/s/  Shannon Liss-Riordan_____
Shannon Liss-Riordan, Esq.

# EXHIBIT 1

## AMERICAN ARBITRATION ASSOCIATION

<table>
<tr><td>

JOSEPH SKIRCHAK AND BARRY
ALDRICH, ON BEHALF OF
THEMSELVES AND ON BEHALF OF A
NATIONWIDE CLASS OF ALL OTHERS
SIMILARLY SITUATED,

        CLAIMANTS,

v.

DYNAMICS RESEARCH
CORPORATION,

        RESPONDENT.

</td><td>

AAA Case Number 11 160 01218 06

</td></tr>
</table>

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between respondent Dynamics Research Corporation ("DRC" or "Respondent"), claimants Joseph Skirchak and Barry Aldrich (the "Named Claimants"), and the collective action members they purport to represent in the above-referenced matter (collectively with the Named Claimants, the "Claimants"). DRC and the Claimants will hereinafter be referred to together as the "Parties".

### Recitals

A.      On or about June 28, 2005, attorneys representing the Named Claimants, who are former DRC employees, filed a complaint in the United States District Court for the District of Massachusetts, alleging, *inter alia*, that DRC failed to pay its exempt employees on a salary basis and, therefore, the exempt employees are entitled to overtime pursuant to the Fair Labor Standards Act (the "FLSA") and Massachusetts General Laws, c. 151, § 1B. The litigation was captioned "Joseph Skirchak and Barry Aldrich, on Behalf of Themselves and on Behalf of a

- 2 -

Nationwide Class of All Others Similarly Situated v. Dynamics Research Corporation, Civil

Action No. 05-11362-MEL" (the "District Court Action").  On or about May 26, 2006, attorneys

representing the Named Claimants commenced an arbitration at the American Arbitration

Association captioned, "Joseph Skirchak and Barry Aldrich, on Behalf of Themselves and on

Behalf of a Nationwide Class of All Others Similarly Situated v. Dynamics Research

Corporation, AAA Case No. 11 16001218 06" (the "AAA Action" and, together with the District

Court Action, the "Actions"), asserting the same claims as in the District Court Action.

      B.     DRC denies each and every allegation made by Claimants in the Actions.  It is

DRC's position that it paid its exempt employees on a salary basis and complied with applicable

law at all times.  Therefore, it is DRC's position that none of the Claimants are entitled to

overtime.

      C.     The Parties agreed on the Settlement Amount (as defined below) in part based on

their desire to avoid protracted and costly litigation, as well as Claimants' difficulties and costs

of prevailing at a hearing of the AAA Action in light of the defenses asserted by DRC.

      D.     The Named Claimants, on behalf of themselves and all of the other Claimants,

desire to fully and finally settle and completely resolve all claims and causes of action which

they and the Claimants have asserted, or could have asserted, in the Actions against DRC and

any of its past or present parent, subsidiary and affiliated institutions, predecessors, and

successors, and its and each of their respective past and present trustees, officers, directors,

agents, employees, heirs, spouses, insurers, administrators, executors, partners, assigns, affiliated

entities and all of their past and present representatives (the "Claims"), and to enter into a

permanent and binding resolution of the Actions on the terms hereinafter set forth.

- 3 -

E.    The Named Claimants and their experienced counsel have fully analyzed and evaluated the merits of the Claims and DRC's defenses thereto.  The Named Claimants and their counsel, after taking into account the foregoing, are satisfied that the terms of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Claims and the Actions on the terms hereinafter set forth is in the best interests of the Claimants.

F.    DRC, while continuing to deny all allegations of wrongdoing and disclaiming any liability to the Claimants in the Actions, considers it desirable to settle the Actions on the terms stated herein in order to avoid further litigation, and thus has determined that settlement of the Claims and the Actions on the terms set forth herein is in its best interest.

G.    This Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any Party of the truth or the validity of any substantive or procedural allegation, claim, or defense asserted in the Actions, including but not limited to, any allegation that DRC willfully violated any provision of applicable law, or of any fault, negligence, or breach of any alleged duty on the part of any Party, and all such allegations are expressly denied.

H.    This Agreement is subject to and its legal effectiveness is conditioned upon final approval of this Agreement by the arbitrator appointed in the AAA Action (the "Arbitrator"), an order of confirmation of the Arbitrator's approval by a court with jurisdiction to issue such an order, and the other conditions precedent specified in the Agreement Covenants, Paragraph 4, below.

NOW, THEREFORE, with no admission of any substantive or procedural fact, claim or liability by DRC, as a negotiated compromise, and in consideration of and in reliance upon the

13135995.8

- 4 -

definitions, recitals, promises, covenants, understandings and obligations set forth in this

Agreement, Claimants and DRC hereby agree as follows:

## Additional Definitions

The following terms shall have the following meanings:

1.    "Settlement Class Members" shall mean all individuals who worked for DRC at

any time between June 28, 2003 and October 1, 2004 (the "Settlement Class Period"), and who

DRC classified as exempt from state and federal overtime requirements.

2.    "Claimants' Counsel" shall mean: (i) Shannon Liss-Riordan and Hillary Schwab,

Lichten & Liss-Riordan, P.C., 100 Cambridge Street, 20th Floor, Boston, MA 02114; and (ii)

Elayne N. Alanis, Law Firm of Elayne N. Alanis, 10 Tremont Street, 3rd Floor, Boston, MA

02108.

3.    "DRC's Counsel" or "Respondent's Counsel" shall mean: (i) David Rosenthal

and Jeffrey Gilbreth, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110; and (ii)

Robert D. Cultice, Peter J. Kolovos, and Seth R. Ragosta, Wilmer Cutler Pickering Hale and

Dorr LLP, 60 State Street, Boston MA, 02109

## Agreement Covenants

1.    *Settlement Class Certification.*[1]  For purposes of this settlement only, the Parties

stipulate to certification of a settlement class consisting of all Settlement Class Members, subject

to the terms and conditions set forth herein.  If the Arbitrator does not approve this Agreement,

and/or a court with jurisdiction to confirm the Arbitrator's approval does not issue an Order

confirming the approval, then the stipulation to class certification contained herein shall be null

and void, and of no force and effect, and Claimants and DRC shall each retain all of their rights,

---

[1]    For purposes of this Agreement, the term "Class" shall mean and have the same effect as "Collective Action."

- 5 -

remedies, defenses, and contentions for and against class certification and the composition of any such class. The provisional stipulation to class certification contained in this Agreement is for the purpose of settlement only and shall not be used or argued by any of the Parties, nor considered by the Arbitrator or a court, in this or any other matter, in ruling on the class certification issue.

2.    *Settlement Payment.*

(a)    In full settlement of the Claims, DRC shall pay the gross sum of one million eight hundred and fifty thousand dollars ($1,850,000) to the Settlement Class Members (the "Settlement Amount"). Claimants' Counsel shall deduct from the Settlement Amount their attorneys' fees and costs in the Actions (which shall include the costs of administering the settlement of the Actions), the total amount of which is no more than one-third of the gross Settlement Amount. The Named Claimant Joseph Skirchak shall receive an incentive payment in the amount of $30,000, and the Named Claimant Barry Aldrich shall receive an incentive payment in the amount of $20,000, which shall also be deducted from the Settlement Amount. Claimants' Counsel shall then apply the Settlement Class Formula set forth below to the remaining amount to determine each Settlement Class Member's share of the Settlement Amount. DRC shall issue settlement checks (in the amount calculated by Claimants' Counsel for each Settlement Class Member's share of the Settlement Amount, minus any required tax withholdings) to each Settlement Class Member who makes a valid claim (as provided herein) for his/her share of the settlement proceeds. For the sake of clarity, the Parties agree that Claimants' Counsel's attorneys' fees and costs, the Named Claimants' incentive payments, and the settlement payments to the Settlement Class Members shall all be deducted from the

- 6 -

Settlement Amount, and DRC shall not be required to pay any amounts (other than its share of applicable F.I.C.A. taxes) in addition to the Settlement Amount.

(b)     Apart from the payments set forth herein, DRC shall not be liable, and shall make no additional payment, for the Claims for any reason including, but not limited to, pre or post judgment interest, liquidated damages or penalties, Claimants' attorneys fees, costs or expenses, class representative compensation, costs of class notice or settlement administration, satisfaction of any liens, and any taxes associated with the settlement payment, other than the employer's share of applicable F.I.C.A taxes.  All settlement payments (other than the attorneys' fees and incentive payments for the Named Claimants) shall be treated as wages for purposes of taxes or withholding.  An IRS form W-2 shall issue to each Settlement Class Member in connection with his/her settlement payment.  An IRS Form 1099 shall issue to Claimants' Counsel (for the payment for their attorneys' fees and costs) and the Named Claimants (for their incentive payments).  To the extent that any settlement payments hereunder are subject to IRS Form 1099 Miscellaneous reporting, Claimants and Claimants' Counsel agree that they are completely responsible for the payment of any federal, state, or local tax liability associated with such payments.  Claimants and Claimants' Counsel, with respect to attorneys' fees, shall be solely responsible for any tax liabilities arising from the settlement payment and for satisfaction of any liens, concerning which DRC shall have no liability.

3.     *Settlement Class Formula.*

(a)     The Settlement Class Formula shall be calculated as follows:  The share of the Settlement Amount to each Settlement Class Member shall be distributed in proportion to the amount of overtime pay that each Settlement Class Member would have been eligible to receive during the Settlement Class Period (had they been non-exempt employees), if any, less any overtime payments actually received for this period (the "Base Settlement Share").  The Base

- 7 -

Settlement Share shall be calculated solely by Claimants' Counsel based on the data provided by DRC in a spreadsheet entitled "Exempt Overtime From 7/14/02 to 7/31/04" and in other materials DRC will provide specific to employees of Impact Innovations Group LLC.  To the extent that DRC's records do not contain data for the period August 1, 2004 to October 1, 2004, Claimants' Counsel will extrapolate such data from the foregoing data provided by DRC. All Settlement Class Members who timely submit a Claim Form will receive a minimum payment of $50.

(b)     Claimants' Counsel shall be solely responsible for resolving any dispute regarding the calculation of the amount paid or to be paid to any Claimant pursuant to this settlement, and DRC shall not have any liability or obligation with respect to any such dispute or to pay any amounts other than those specifically provided for herein.

4.     *Conditions Precedent.*  The settlement of the Actions and payment of the settlement payments provided for herein are conditioned upon:

A.     The Parties' full execution of this Agreement;

B.     The Arbitrator approving (in all respects) the settlement of the AAA Action on the terms set forth in this Agreement, including, without limitation, the releases provided for herein, and dismissing with prejudice the AAA Action;

C.     The entry of an Order by a court of competent jurisdiction confirming (in all respects) the Arbitrator's approval of the settlement; and

D.     The legal finality of the Arbitrator's approval of this Agreement and the court's confirmation of such approval, as referenced above, after any and all appeals or the expiration of the time to appeal without such appeal having been filed.

5.     *Release.*  In consideration of DRC's agreements to pay the settlement payments set forth in Paragraph 2 above, and the other agreements set forth herein, the Claimants, and all

- 8 -

of their past and present respective agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and all of their past and present representatives and predecessors, hereby release and forever discharge DRC, and each of its past and present parent, subsidiary and affiliated entities, institutions, predecessors, and successors, and each of its and their past and present owners, members, managers, shareholders, officers, trustees, directors, agents, servants, employees, attorneys, independent contractors, insurers, affiliated entities, including benefit plans and their plan administrators, any entities presently or formerly within its and their corporate hierarchy, and all other persons acting on their behalf, including any persons acting on behalf of any pension or benefit plan maintained by DRC (collectively, "the Released Parties"), from any and all claims, causes of action, demands, rights, damages, requests for equitable relief, expenses, interest, penalties, and attorneys' fees arising under Federal, state, or local laws or regulations, which were or could have been asserted in the Actions, including but not limited to the Claims.

Claimants represent, agree, and acknowledge that the consideration to be provided under the terms of the Agreement is being made to settle, extinguish and release all of the Claimants' claims asserted in the Actions, and that except for the consideration provided under the terms of this Agreement, Claimants would not otherwise receive such relief and/or recovery under any of DRC's policies, plans, practices and/or procedures or pursuant to any prior agreement or contract (written or oral, express or implied).

Claimants expressly acknowledge and agree that the release contained in this Paragraph 5 shall extend to claims that the releasing parties do not know or suspect to exist at the time of the release, which, if known, might have affected the releasing parties' decision to enter into the release. Claimants shall be deemed to relinquish, to the extent applicable, and to the full extent

- 9 -

permitted by law, the provisions, right and benefits of Section 1542 of the California Civil Code,

which provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor.

Claimants are deemed to waive any and all provisions, rights and benefits conferred by

any law of any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to California Civil Code Section 1542.

6.    *Settlement payment checks.*  Following preliminary approval of this Settlement

Agreement and Release by the Arbitrator and the Parties' full execution of the same, Claimants'

Counsel shall send each of the Settlement Class Members a notice in the form of the document

attached hereto as Exhibit A.  The Settlement Class Members shall then have thirty (30) days

from the date the first such notice is mailed to claim their share of the settlement funds, object to

the settlement, or opt-out of the case by timely returning to Claimants' Counsel the Claim Form

annexed hereto as Exhibit B, as provided herein.  Following the end of the thirty (30) day claim

period, Claimants' Counsel shall direct DRC to hold a reasonable amount of the unclaimed funds

for Settlement Class Members who submit late claims.  Claimants' Counsel shall determine the

amount of the unclaimed funds DRC will hold for late claimants based on the following criteria

(as of the date of the determination): (i) the percentage of Settlement Class Members who have

not claimed their settlement shares: (ii) the total amount of the unclaimed funds; (iii) the overall

rate at which Settlement Class Members have submitted claims; and (iv) the Parties' desire for

the Settlement Class Members who properly claimed their settlement shares during the thirty

(30) day period to receive appropriate (and not inflated) settlement amounts.  The balance of the

unclaimed funds (i.e., the portion of the unclaimed funds not held for late claimants) shall be

- 10 -

added to the Base Settlement Shares of the Settlement Class Members who properly claimed

their settlement shares during the thirty (30) day claim period. The final amount of such class

members' settlement checks shall be referred to as the "Final Settlement Share." Claimants'

Counsel shall provide DRC's Counsel with a spreadsheet containing the names, addresses, and

Final Settlement Shares for each of the Settlement Class Members who properly and timely

claimed their share of the settlement funds during the thirty (30) day period. The parties shall

then cooperate to seek prompt final approval by the Arbitrator and confirmation by the court,

pursuant to Paragraph 4 above. Within thirty-three (33) days of court confirmation, provided no

appeals have been filed regarding the court's confirmation of the Arbitrator's approval of the

settlement, DRC shall issue settlement payment checks to the Settlement Class Members who are

listed on the spreadsheet, as well as checks to the lead claimants for incentive payments and to

Claimants' Counsel for fees. Claimants' Counsel shall follow-up on undeliverable notices and

deliver them to updated addresses when provided by the post office or reasonably locatable

through a change of address database. Following confirmation of the settlement, Claimants'

Counsel shall send a reminder notice to Settlement Class Members who have not yet submitted

Claim Forms. Additional Settlement Class Members shall continue to be entitled to claim a

share of the settlement funds by filing a Claim Form until the date that is one hundred and eighty

(180) days following the date the first notice of the settlement is sent to any Settlement Class

Member. Following the end of such one hundred and eighty (180) day period, Claimants'

Counsel shall provide DRC's counsel with a second spreadsheet, which shall contain the names,

addresses, and Final Settlement Shares for each of the Settlement Class Members who properly

and timely claimed their share of the settlement funds after the close of the initial thirty (30) day

period, but prior to the close of the one hundred and eighty (180) day period. Within thirty (30)

- 11 -

days of receiving this second spreadsheet, DRC shall issue settlement payment checks to the

Settlement Class Members who are listed on such second spreadsheet. If late claims are

submitted, the total Base Settlement Shares of which are more than the remaining settlement

funds, the remaining funds will be distributed to late claimants in pro rata proportion to the

amount of their Base Settlement Shares. In no event shall the amount of the Final Settlement

Share for any Settlement Class Member who properly and timely claimed his/her share of the

settlement funds after the close of the initial thirty (30) day period, but prior to the close of the

one hundred and eighty (180) day period, exceed the amount of that Settlement Class Member's

Base Settlement Share. The Parties agree that unclaimed settlement funds may be used, subject

to both Parties' assent, to resolve reasonable and legitimate disputes regarding the amounts of

Settlement Class Members' Base Settlement Shares and/or Final Settlement Shares. If late

claims do not exhaust the remaining settlement funds, then, after the one hundred and eighty day

(180) period, the remaining funds shall be distributed to the New England Center for Homeless

Veterans.

All of the settlement payment checks issued to the Settlement Class Members by DRC

shall, at DRC's discretion, bear the following statement: "I understand that I am bound by the

settlement of the action captioned 'Joseph Skirchak and Barry Aldrich, on behalf of themselves

and on behalf of a nationwide class of all others similarly situated, AAA Case No. 11 16001218

06." All Settlement Class Members shall be bound by the terms of this Agreement, including but

not limited to the general release in paragraph 5 of this Agreement, regardless of whether they

claim their share of the settlement funds and regardless of whether DRC elects to add the

statement above to the settlement payment checks. DRC will reissue a settlement check in a

reasonable amount of time if a Settlement Class Member reasonably requests a replacement

- 12 -

check. For any settlement check that is not cashed within the one-hundred and twenty (120) day period following the date on which the initial check was issued to the Settlement Class Member, DRC's Counsel will inform Claimants' Counsel of the uncashed check and allow Claimants' Counsel the opportunity to contact the Settlement Class Member who did not cash his/her check in order to obtain updated contact information, if necessary. The amount of any settlement check that remains uncashed within one-hundred and eighty (180) days following the date on which the initial check was issued to the Settlement Class Member shall be deemed abandoned property and turned over to the Commonwealth of Massachusetts.

7.      *Dismissal with Prejudice.* Immediately upon the Arbitrator's approval of this Agreement, the AAA Action shall be dismissed with prejudice in its entirety.

8.      *No Impact On Benefits.* Payments made under this Agreement are not intended to: (a) form the basis for additional contributions to, benefits under, or any other monetary entitlement under; (b) count as earnings or compensation with respect to; or (c) be considered to apply to, or be applied for purposes of, any of the Released Parties' bonus, pension, and retirement programs, 401(k) plans, or any other benefit plan. The amounts paid pursuant to this Agreement are not compensation or wages for hours worked, hours paid or any similar measuring term as defined by any plans and programs for purposes of eligibility, vesting, benefit accrual or any other purpose.

9.      *Termination of Settlement.* In the event that the conditions precedent set forth in Paragraph 4 above are not satisfied, or to the extent that the termination, cancellation or voiding of the Agreement is otherwise provided in this Agreement, the Parties shall preserve their claims, rights and defenses at that time as though no agreement had been entered into, and no payments shall be made by DRC to anyone in accordance with the terms of this Agreement, and the Parties

- 13 -

and any of the Claimants will bear their own costs and fees with regard to efforts to satisfy the conditions precedent, and this Agreement shall be deemed null and void with no effect on the AAA Action whatsoever. In such event, the terms and provisions of the Agreement shall have no further force and effect with respect to the Parties and shall not be used in the AAA Action or in any other proceeding for any purpose, and any Judgment or Order entered by the Arbitrator or a court in accordance with the terms of the Agreement shall be treated as vacated *nunc pro tunc*. This Agreement shall not constitute and shall not be deemed a waiver of any substantive or procedural defense or any argument DRC may have with respect to the payment of wages to the Claimants or the appropriateness of the Claimants to be certified as a class or collective action. This Agreement cannot and shall not be discoverable or used in evidence in any litigation, except in an action to enforce the terms of this Agreement.

10.     *Confidentiality and Return of Documents.* All of the following shall remain confidential and shall not be discussed or disclosed to the public, except in court filings to confirm the Arbitrator's approval of this Agreement, and in Claimants' Counsel's responses to relevant and appropriate inquiries by Settlement Class Members:

(a)     The existence and terms of this Agreement;

(b)     Any information, negotiations, data, documents, drafts and/or summaries exchanged between the Parties relating to the negotiation of this Agreement;

(c)     The facts at issue in the Actions, the allegations on which the Actions are based, and all information obtained by either Party from the discovery that occurred in the Actions or the pleadings submitted in the Actions; and

(d)     Any other documents and information related to the subject matter of the Actions.

The Named Claimants, DRC, and each of their Counsel will not advertise or discuss the settlement, including but not limited to on websites, in marketing materials, during speaking engagements, or in connection with any other litigation, arbitration, or dispute. The Named

- 14 -

Claimants will not discuss the existence or terms of this Agreement with anyone other than their attorneys. DRC's Counsel will not discuss the existence or terms of this Agreement with anyone other than DRC, except to the extent expressly provided herein. Claimants' Counsel will not discuss the existence or terms of this Agreement with anyone other than the Claimants, except to the extent provided herein. Claimants' Counsel will instruct their colleagues in their law firms and the Named Claimants to abide by these restrictions. If third parties not involved in the case (including but not limited to individuals who currently and/or formerly worked at DRC or an affiliated entity) ask the Named Claimants, DRC's Counsel, or Claimants' Counsel about the status of the AAA Actions and/or the Claims, they will respond only that "The case settled to the satisfaction of all parties." The Parties agree that DRC shall be permitted to make statements and disclosures about the settlement of the Actions to satisfy any disclosure/reporting obligations and/or contractual requirements it may have and that such statements and disclosures will not violate the terms of this paragraph 10. The Parties further agree that DRC shall not violate the terms of this paragraph 10 if it communicates with the Settlement Class Members who are current DRC employees for the purpose of encouraging such Settlement Class Members to submit a claim for their share of the Settlement Amount. The Named Claimants and Claimants' Counsel shall provide to DRC all documents and other materials (including but not limited to emails and memoranda sent or received by DRC's inside and/or outside counsel, or on which such counsel were copied) related to the Claims, provided however, the Named Claimants and Claimants' Counsel shall not be required to provide to DRC any documents or other materials that are subject to the attorney-client privilege existing between the Claimants and Claimants' Counsel. The Named Claimants and Claimants' Counsel shall not retain any copies (in hard

- 15 -

copy or electronic format) of the documents and other materials they provide to DRC pursuant to this Paragraph.

### General Terms Regarding Construction of Agreement, Etc.

11.   *No representations.*  This Agreement controls over prior communications regarding the matters contained herein between the signatories hereto or their representatives. Except as expressly stated in this Agreement, no Party hereto has made any statement or representation to any other Party regarding any fact relied upon by any other Party in entering into this Agreement, and each Party specifically does not rely upon any statement, representation or promise of any other Party in executing this Agreement.

12.   *Consent.*  This Agreement has been carefully read by all Parties and the contents hereof are known and understood by all Parties.  The Parties have each received independent legal advice from attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement.  Prior to the execution of this Agreement by each Party, each Party's attorney has reviewed the Agreement and each Party acknowledges that such Party has executed the Agreement after independent investigation and without fraud, duress or undue influence.

13.   *Successors.*  Subject to the provisions otherwise contained in this Agreement, this Agreement shall inure to the benefit of and be binding upon the heirs, successors, and assigns of the respective Parties.

14.   *No assignments.*  Each Party represents that he or she has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, his or her rights in the Action or any interest therein, or any other interest in any claim or claims arising out of any of the matters which are the subject of the recitals herein.

- 16 -

15.   *Negotiated Agreement.*   This Agreement and each of its terms constitute a negotiated contract and not merely a recital and are the result of negotiation among the Parties. In interpreting this Agreement, there shall not be a presumption of interpretation against any Party, and each Party expressly waives the doctrine of *contra proferentum.*

16.   *No Admissions.*   This Agreement is the result of a compromise among the Parties and nothing in this Agreement shall constitute an admission of liability by any Party with regard to the subject matter of the AAA Action or of this Agreement or with respect to the composition or certification of a class or collective action under the applicable rules of the American Arbitration Association, the Federal Rules of Civil Procedure, the Fair Labor Standards Act, or any other applicable laws/regulations.

17.   *Warranty of authority.*   Each of the signatories hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom he or she purports to sign it.

18.   *Evidentiary Privilege.*   This Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by: (i) Rule 408, Federal Rules of Evidence; and (ii) the applicable rule(s) of the American Arbitration Association.

19.   *Applicable law.*   This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the domestic laws of the Commonwealth of Massachusetts, without regard to conflicts of laws principles.

20.   *Further actions.*   The Parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm the agreements contained herein in the manner

- 17 -

contemplated hereby.  The Parties mutually agree to cooperate to ensure the expeditious approval and administration of the settlement reflected in this Agreement.

21.   *Breach of Agreement; Attorneys' fees.*  The Parties agree that if either Party initiates a litigation to enforce the terms of this Agreement, the prevailing party in such litigation shall have the costs it incurs (including, but not limited to attorneys' fees) in connection with such litigation paid by the other party.

22.   *No third party beneficiaries.*  The Parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the Parties hereto.

23.   *Written modifications.*  As approved by the Arbitrator and confirmed by a court with the requisite authority, this Agreement may not be modified in whole or in part except by an agreement in writing signed by all Parties, and executed in the same manner as this Agreement.

24.   *Execution.*  This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

25.   *Entire Agreement.*  This Agreement and the exhibits hereto embody the entire agreement and understanding of the Parties hereto in respect of the subject matter contained herein, and is a fully integrated contract.

[The remainder of this page has been left blank intentionally]

13135995.8

- 18 -

IN WITNESS WHEREOF, THE PARTIES HEREBY EXECUTE THIS AGREEMENT
AS OF SEPTEMBER _____, 2010

_____     _____
Joseph Skirchak, on behalf of     Date
himself and all others similarly
situated

_____     _____
Barry Aldrich, on behalf of     Date
himself and all others similarly
situated

Dynamics Research Corporation

_____     _____
By:     Date

DRC's Counsel:                              Plaintiffs' Counsel:

_____     _____
David S. Rosenthal                          Shannon Liss-Riordan
Jeffrey B. Gilbreth                          Hillary Schwab
Nixon Peabody LLP                          Lichten & Liss-Riordan, P.C.
100 Summer Street                          100 Cambridge Street
Boston, MA 02110                          20th Floor
617-345-1000                               Boston, MA 02114
                                            617-994-5800

                                            _____
                                            Elayne N. Alanis
                                            Law Firm of Elayne N. Alanis
                                            10 Tremont Street
                                            3rd Floor
                                            Boston, MA 02108
                                            617-263-1203

- 18 -

IN WITNESS WHEREOF, THE PARTIES HEREBY EXECUTE THIS AGREEMENT AS OF SEPTEMBER ___, 2010

_____     10/8/2010
Joseph Skirchak, on behalf of     Date
himself and all others similarly
situated

_____     10/5/2010
Barry Aldrich, on behalf of     Date
himself and all others similarly
situated


Dynamics Research Corporation

_____     October 5, 2010
By: Richard A. Covel     Date
Vice President and General Counsel


DRC's Counsel:                    Plaintiffs' Counsel:

_____     _____
David S. Rosenthal               Shannon Liss-Riordan
Jeffrey B. Gilbreth              Hillary Schwab
Nixon Peabody LLP                Lichten & Liss-Riordan, P.C.
100 Summer Street                100 Cambridge Street
Boston, MA 02110                 20th Floor
617-345-1000                     Boston, MA 02114
                                 617-994-5800

                                 _____
                                 Elayne N. Alanis
                                 Law Firm of Elayne N. Alanis
                                 10 Tremont Street
                                 3rd Floor
                                 Boston, MA 02108
                                 617-263-1203

13135995.10

# EXHIBIT 2

# LICHTEN & LISS-RIORDAN, P.C.

### ATTORNEYS AT LAW

100 CAMBRIDGE STREET, 20TH FLOOR
BOSTON, MASSACHUSETTS 02114

HAROLD L. LICHTEN[†]
SHANNON LISS-RIORDAN[◊]
HILLARY SCHWAB[◊]

TELEPHONE  617-994-5800
FACSIMILE  617-994-5801

WWW.LLRLAW.COM

IAN O. RUSSELL
BRANT A. CASAVANT
TIMOTHY L. BELCHER[▲†]
JOSEPH L. SULMAN

[▲]ALSO ADMITTED IN CONNECTICUT
[†]ALSO ADMITTED IN MAINE
[◊]ALSO ADMITTED IN NEW YORK

STEPHEN S. CHURCHILL
OF COUNSEL

## NOTICE OF SETTLEMENT OF CLASS ACTION LAWSUIT BROUGHT ON BEHALF OF EMPLOYEES OF DYNAMICS RESEARCH CORPORATION

### October 1, 2010

Dear Employee or Former Employee of Dynamics Research Corporation:

As counsel for the plaintiff employees I am writing to notify you that a proposed settlement has been reached on behalf of employees who worked at Dynamics Research Corporation ("DRC") between June 28, 2003, and October 1, 2004, whom DRC classified as exempt from overtime. A class action lawsuit and arbitration was brought by this firm and the Law Office of Elayne Alanis, Esq., against DRC.

Our suit contends that the company violated the Fair Labor Standards Act's (FLSA) "salary basis test", i.e. failing to pay exempt employees on a salaried basis, because of partial day deductions from the final paychecks of some exempt employees who had negative PTA balances at the time their employment with DRC terminated. Under our interpretation of the FLSA, such a practice would make all exempt employees non-exempt and entitled to overtime wages. DRC disagrees with that interpretation of the FLSA, and denies the claims that it violated the applicable laws, that it violated the salary basis test, and that as a result that it owes any overtime to exempt employees. DRC believes that it complied with all applicable laws and compensated all employees appropriately.

The case has been vigorously litigated for more than five years. The parties have now reached a proposed settlement in which DRC has agreed to pay a negotiated amount, without any admission of liability or wrongdoing, to settle these and any other claims which were or could have been asserted in the lawsuit.

The settlement, as all cases like this one, is conditioned upon approval by the arbitrator and confirmation by the Federal Court. There will be a hearing on November 1, 2010, at 1:00 p.m., at Lichten & Liss-Riordan, P.C., 100 Cambridge Street, 20th Floor, Boston, MA 02114, at which time the arbitrator presiding in this case will consider whether to approve this settlement.

# LICHTEN & LISS-RIORDAN, P. C.

DRC's records indicate that you worked as an employee during this time period and were classified as an exempt employee. In accordance with the proposed terms of this settlement, you may be entitled to a share of the settlement funds.

The total amount of the settlement is $1,850,000. Based upon my firm's analysis of the potential FLSA liability and damages that could be obtained at a trial in this case, and the merits of the defenses asserted by DRC, and the costs which will be incurred to litigate this case through trial and a likely appeal, I believe that this is a fair settlement. If approved by the arbitrator and court, the settlement proceeds will be distributed in an estimated proportion to the amount of overtime pay each eligible exempt employee, if classified as non-exempt, would have received during the period June 28, 2003, to October 1, 2004. DRC will pay the settlement shares directly to the class members, based on share calculations performed by my office from time records provided by DRC. Any settlement payment received is taxable as wages to you, and so state, federal, and FICA taxes will be withheld from any settlement payments.

Please be aware that, as customary in such class action cases, one-third of the total settlement funds will be used to pay the plaintiff's attorneys' fees and expenses for bringing and prosecuting the lawsuit. The lead employee plaintiffs who initiated this case will also receive an additional award, which will compensate them for their involvement and time in bringing this case forward on behalf of their co-workers.

Claim Forms. The settlement funds shall only be distributed to class members who submit a claim form (see the enclosed form), which is returned to my office by mail, facsimile, e-mail, or in person. **In order to receive a settlement payment this year (assuming timely approval of the settlement), you must submit your claim form no later than October 29, 2010.** Please note the following:

1. If you do not submit a claim form you will not receive a check, but you will still be bound by the terms of the settlement.

2. All class members who return their claim forms by October 29, 2010, will have their settlement checks mailed by the end of the year, assuming arbitrator and court approval of the settlement in a timely manner. All class members who timely submit a claim form will receive a settlement payment of at least $50.

3. You must cash your settlement check within six months of its issue date or it will be considered to have been abandoned, and the check funds will be turned over to the Commonwealth of Massachusetts as abandoned funds.

Filing an objection to the settlement. Under the rules of the American Arbitration Association, you may or may not submit a claim form and you also may submit an objection to the settlement. If you wish to object to the settlement, you must send a written objection to my office by October 29, 2010. I will give all objections to the arbitrator for the arbitrator's consideration.

# LICHTEN & LISS-RIORDAN, P.C.

Opting Out of the Settlement.  You may choose to "opt out" of the settlement:

1. If you choose to Opt Out of the settlement, you must submit a written statement to my office, at the address above, by October 29, 2010, stating your name and contact information and indicating that you choose to Opt Out of the settlement.

2. If you Opt Out you will not receive any payment from the settlement funds, but you will not release any claims in the settlement.  You should consider that any claims based on non-payment of overtime during the June 2003 through October 2004 period are likely time barred by the applicable statutes of limitations at this time.

3. If you Opt Out any portion of the settlement funds you may have been entitled to will be distributed to those who submit claim forms.

If You Do Nothing.  If you do nothing (i.e., you do not object, do not opt out, and/or you do not submit a claim form in a timely manner), you will be bound by the settlement and your share of the settlement funds will be distributed to charity as set forth below.

Unclaimed Settlement Funds.  Funds from the settlement that are unclaimed after six months will be donated to the New England Center for Homeless Veterans.

If the settlement is not approved, the arbitration will continue and may take additional months or years to reach a final judgment. You are also free to attend the hearing on October 29, 2010, but in order to raise an objection, you must submit it to me in writing by October 29, 2010.

**Again, in order to receive a settlement payment this year (assuming timely approval of the settlement), you must submit your claim form no later than October 29, 2010.**

If you have any questions, please feel free to contact my assistant, Meredith Horwitz, at (617) 994-5800 or mhorwitz@llrlaw.com.

Very truly yours,

Shannon Liss-Riordan

# EXHIBIT 3

In order to claim a share of the settlement proceeds from the lawsuit filed as a class action against Dynamics Research Corporation (<u>Skirchak et al. v. Dynamics Research Corporation</u>, AAA Case No. 11 160 01218 06), you must complete and return this form to the counsel for the plaintiff class at the following address. Claim forms may be submitted by mail, facsimile, or e-mail. <u>All class members who return the form by October 29, 2010, will receive their settlement distributions by the end of the year</u>, assuming timely arbitrator and court approval of the settlement.

Shannon Liss-Riordan, Esq.
Lichten & Liss-Riordan, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
www.llrlaw.com
Fax: (617) 994-5801
Assistant: Meredith Horwitz, mhorwitz@llrlaw.com

Name: _____

Address: _____

_____

Phone: _____

E-mail (optional): _____

## TO QUALIFY FOR A SHARE OF THE SETTLEMENT, YOU MUST SIGN ON THE LINE BELOW AND AGREE AS FOLLOWS:

In consideration of the settlement payment I will receive, and for other good and valuable consideration, I and all of my past and present respective agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and all of their past and present representatives and predecessors, hereby release and forever discharge Dynamics Research Corporation, and each of its past and present parent, subsidiary and affiliated entities, institutions, predecessors, and successors, and each of its and their past and present owners, members, managers, shareholders, officers, trustees, directors, agents, servants, employees, attorneys, independent contractors, insurers, affiliated entities, including benefit plans and their plan administrators, any entities presently or formerly within its and their corporate hierarchy, and all other persons acting on their behalf, including any persons acting on behalf of any pension or

*(PLEASE SEE REVERSE AND SIGN ON BACK)*

benefit plan maintained by Dynamics Research Corporation, from any and all claims, causes of action, demands, rights, damages, requests for equitable relief, expenses, interest, penalties, and attorneys' fees arising under Federal, state, or local laws or regulations, which were or could have been asserted in the action captioned "*Joseph Skirchak and Barry Aldrich on Behalf of Themselves and on Behalf of a Nationwide Class of All Others Similarly Situated v. Dynamics Research Corporation*, AAA Case No. 11 160 01218 06" and/or the action captioned "*Joseph Skirchak and Barry Aldrich, on Behalf of Themselves and on Behalf of a Nationwide Class of All Others Similarly Situated v. Dynamics Research Corporation*, Civil Action No. 05-11362-MEL" (together, the "Actions")

I represent, agree, and acknowledge that the settlement payment I will receive will settle, extinguish and release all of my claims that were or could have been asserted in the Actions, and that except for settlement payment I will receive pursuant to the terms of the settlement of the Actions, I would not otherwise receive such payment and/or recovery under any of DRC's policies, plans, practices and/or procedures or pursuant to any prior agreement or contract (written or oral, express or implied).

I expressly acknowledge and agree that the release set forth above shall extend to claims that I do not know or suspect to exist and that I shall be deemed to have relinquished, to the extent applicable, and to the full extent permitted by law, the provisions, right and benefits of Section 1542 of the California Civil Code, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

I understand and acknowledge that I have waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

_____

Signature

_____

Date